1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

8
9

10
11
12
13
14
15
16

**OBRIA GROUP, INC., and MY**
**CHOICES d/b/a OBRIA MEDICAL**
**CLINICS PNW**,

   *Plaintiffs*,

  v.

**ROBERT FERGUSON**, in his official
capacity as Attorney General for the
State of Washington,

   *Defendant(s).*

**VERIFIED COMPLAINT**
**FOR DECLARATORY AND**
**INJUNCTIVE RELIEF**

**Case No.** 3:23-cv-6093

17

## INTRODUCTION

18
19
20
21

  1. This action seeks to enjoin enforcement of unreasonable civil investigative demands (CIDs) that mandate disclosure of privileged or irrelevant materials to advance an investigation that is not based on a complaint or other reason to suspect unlawful activity, and which selectively and unlawfully target Plaintiffs.

22
23
24
25
26

  2. Plaintiffs are associated Christian pro-life medical nonprofits that provide medical, educational, and other services to meet the physical, mental, spiritual, and social needs of pregnant and new mothers, and the fathers of their babies, in a manner consistent with Plaintiffs' religious views that prenatal life is valuable and deserving of care and protection.

27
28

3. Defendant is the Attorney General of Washington, who is nationally prominent among elected officials in his fervent advocacy for abortion, and prolific in his pronouncements of hostility toward and suspicion of pregnancy resource centers like those operated by Plaintiffs.

4. Defendant has issued CIDs that demand, for a period now exceeding *thirteen years* well beyond any statute of limitations, answers to interrogatories and production of documents under the pretense of conducting a civil investigation into "possible" violations of Washington's Consumer Protection Act relating to the handling of patient data and statements they have made about Abortion Pill Reversal, a service they neither provide or profit from.

5. Defendant has never cited any complaint or other substantive evidence of wrongdoing to justify his demands but has launched an exploratory probe into the lawful activities, constitutionally protected speech, religious observance, constitutionally protected associations, and nonpublic internal communications and records of two entities that hold a view on a matter of public policy with which he disagrees.

6. The information and documentation demanded by Defendant's CIDs is so overbroad—and only limited in time by the arbitrary date of January 1, 2010— that they would sweep up massive amounts of information, confidential internal communications, and documents unrelated to Defendant's stated purpose for the investigation or beyond the statute of limitations for the Washington Consumer Protection Act.

7. Plaintiffs have been singled out as targets of Defendant's demands even though dozens of other organizations operating in Washington also advertise their provision of many similar services and similarly collect sensitive client information.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

2

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

8. These demands violate Plaintiffs' rights protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution and should be enjoined.

9. Plaintiffs have expended substantial time and financial resources in trying to comply with the unreasonable demands made by Defendant's CIDs.

10. To avoid further violation of Plaintiffs' constitutional rights and to limit additional time and resources that Plaintiffs are forced to spend to comply with unconstitutional investigative demands, Plaintiffs request that this Court enjoin enforcement of Defendant's CIDs so that Plaintiffs may freely speak their beliefs, exercise their faith, associate with like-minded individuals and organizations, and continue to provide services in a caring and compassionate environment to women and men facing difficult pregnancy circumstances.

## JURISDICTION AND VENUE

11. This civil rights action raises federal questions under the United States Constitution, particularly the First, Fourth, and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

12. This Court has subject matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. §§ 1331 and 1343.

13. This court can issue the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57; the requested injunctive relief under 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

14. Venue lies in this district pursuant to 28 U.S.C. § 1391 because all events giving rise to the claims detailed herein occurred within the Western District of Washington and Defendant resides and operates in the Western District of Washington.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

3

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

## PARTIES

**Plaintiffs**

15.    Plaintiff Obria Group, Inc., is a nonprofit faith-based entity organized under the laws of California, with a principal place of business in California.

16.    Plaintiff My Choices, d/b/a Obria Medical Clinics PNW, is a nonprofit faith-based entity organized under the laws of Washington, with a principal place of business in Washington.

**Defendant**

17.    Defendant Bob Ferguson is the Attorney General of the State of Washington, with a principal place of business in Olympia, Washington.

18.    Defendant Ferguson is sued in his official capacity as Attorney General of the State of Washington.

19.    All actions by Assistant Attorneys General in this complaint were taken on behalf of, and with the authority of, Defendant.

20.    All actions taken by Assistant Attorneys General, including the violations of Plaintiffs' constitutional rights, followed a policy or decision of Defendant and were taken under color of law.

## FACTUAL BACKGROUND

**The Obria Group, Inc.**

21.    The Obria Group is a faith-based 501(c)(3) organization originally incorporated in California under the name Birth Choice.

22.    The Obria Group began as a single pregnancy resource center.

23.    The Obria Group's Founder and Chief Executive Officer, Kathleen Eaton Bravo, had a personal experience with abortion as a single mother in 1980.

24.    The emotional pain that followed her abortion motivated her to get involved in the pro-life movement to help empower other women to choose life and avoid the tragic harms of abortion.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

4

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

25. After realizing that her pre-abortion counseling did not involve even a discussion of choosing life for her unborn child, Ms. Eaton Bravo decided to dedicate her life to educating men and women on this life-changing topic.

26. Ms. Eaton Bravo started volunteering at a pregnancy resource center in Oklahoma City later that year.

27. Several years later, Ms. Eaton Bravo moved back to Orange County, California, where she reopened a previously existing pregnancy center.

28. In 2014, as operations expanded, the organization was rebranded as The Obria Medical Clinics of Southern California.

29. In January 2017, the Obria Clinics' Board of Directors officially launched The Obria Group, Inc., which became the umbrella corporation under which all Obria clinic affiliates would come, and appointed Ms. Eaton Bravo as its Founder and CEO.

30. The organization became a network of life-affirming, licensed, health care clinics, united under a single trademarked brand—Obria—serving thousands of young women and men across the country each year.

31. Known for kindness and understanding as well as the non-judgmental manner with which every patient is treated, the Obria Group has flourished by providing compassionate care for those experiencing unplanned pregnancies and sexual health issues.

32. The Obria Group's medical services, education programs, and myriad of resources empower women and men to make healthier, life-affirming choices.

33. The mission of The Obria Group, Inc. is to create a unified national brand of pro-life clinics to effectively compete with major abortion providers and provide proactive, effective, life-affirming services to those in need.

34. The Obria Group now has twenty affiliated medical clinics and two mobile clinics in California, Oregon, Washington, Iowa, Texas, and Georgia.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

5

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

**Obria PNW**

35.    In 1984, the entity now known as Obria PNW received 501(c)(3) nonprofit status and began serving the North Olympic Peninsula of Washington through an office in Port Angeles, Washington.

36.    At that time, services included urine pregnancy testing, non-abortion community referrals, and non-medical maternal and infant resources.

37.    In 1998, Obria PNW opened a second office in Sequim, Washington.

38.    In 2008, with the addition of a licensed physician as Medical Director, Obria PNW began offering limited obstetrical ultrasounds to determine gestational age and viability. Registered Nurses were trained and passed competency in this procedure and performed limited ultrasound scans under the standing orders of the Medical Director.

39.    In 2014, Obria PNW was accredited by the American Ambulatory Association of Health Care ("AAAHC").

40.    AAAHC accredits health plans and ambulatory health care organizations such as ambulatory surgery centers.

41.    AAAHC accreditation mandates high patient safety and data security standards and permits healthcare organizations to qualify for Medicare and Medicaid certification without undergoing separate federal and state regulatory inspections.

42.    In 2016, Obria PNW expanded services to seven rural counties in Western Washington through use of a mobile medical center.

43.    In 2017, the organization completed the American Ambulatory Association of Health Care accreditation re-certification.

44.    In 2018, Obria PNW affiliated with Obria Medical Clinics.

45.    In 2019, Obria PNW opened a third office in Port Townsend, Washington.

46.    In 2021, Obria PNW received recertification accreditation from AAAHC.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

6

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

47.     Obria PNW's Organizational Manual states that the organization is a Christ-centered ministry whose mission is to empower individuals to make life-affirming choices.

**Plaintiffs' Religious Beliefs**

48.     Plaintiffs are Christian, faith-based, nonprofit organizations.

49.     Plaintiffs believe that all human life is sacred and should be valued and respected as a precious gift from God.

50.     It is out of this belief that Plaintiffs' ministries were born to help care for those needing their services.

51.     To be true to their beliefs, teaching, missions, and values, Plaintiffs abide by their Christian beliefs in how they operate, including in what they teach and how they treat others.

**Plaintiffs' Faith-Based Corporate Leadership**

52.     Plaintiffs' Board members and officers are required to be committed adherents to the Christian faith who actively participate in a local church fellowship.

53.     The Obria Group seeks Board members who are gifted in one or more of these areas of need: prayer, fundraising, public relations, planning, administration, public speaking, marketing, legal services, or vision.

54.     The Obria Group seeks to have Board membership comprised of a variety of Christian church denominations and affiliations, such that no single denomination or church dominates its Board membership, and to include men and women with a diversity of race, age, occupations, and experiences.

55.     The Obria Group seeks Board members who are respected and admired Christians, reasoning that success in one's field is an indication of leadership, but the Obria Group seeks leadership that is seen primarily as service.

56.     While seeking a Board composed of several individuals with different backgrounds, occupations, and experiences, the Obria Group also considers it

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

7

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

essential that the Board develop a spirit of unity and achieve a healthy spiritual environment.

57.    Members of both Plaintiffs' Boards of Directors are bound by a confidentiality agreement to maintain confidentiality with respect to information obtained in their role as Board members, including verbal presentations, written materials, discussions, and deliberations.

58.    The ability to share information and discuss issues openly is essential to quality Board work.

59.    Failure to keep confidentiality should result in removal of a member from Plaintiffs' Boards.

60.    Plaintiffs' Boards may authorize or direct staff to share certain information with their constituencies as appropriate to facilitate communication with members of the community; staff should not assume, however, that their role automatically allows them to share information without Board authorization.

61.    If confidentiality is breached, Board members and personnel are to be released and legal action could be started.

**Plaintiffs' Services**

62.    As pro-life medical centers, Plaintiffs provide a variety of services such as: pregnancy testing; pregnancy options counseling; sexually transmitted disease (STD)/sexually transmitted infection (STI) testing and referral; ultrasounds to confirm pregnancy, detect fetal heartbeat, determine fetal age, due date, and location of the pregnancy; prenatal care; well-woman examinations; fatherhood counseling; optimal health education and coaching; childbirth classes; postpartum, post-abortion, and miscarriage support; resources, material goods, and community support; and adoption referrals. All medical services are provided under the direction of a Medical Director, who is a licensed physician.

63.    As required by the Obria Group's Organizational Policy Manual:

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

8

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

a.      Plaintiffs serve patients without regard to age, race, income, nationality, religious affiliation, disability, or other arbitrary circumstances.

b.      Plaintiffs treat patients with kindness, compassion, and in a caring manner.

c.      Plaintiffs always give their patients honest and open answers.

d.      Plaintiffs administer pregnancy and sexually transmitted disease testing in accordance with all applicable laws.

e.      Plaintiffs provide patients with accurate information about pregnancy, fetal development, lifestyle issues, and related concerns.

f.      Plaintiffs do not offer, recommend, or refer for abortions or abortifacients, but are committed to offering accurate information about abortion procedures, contraception, and risks.

g.      All of Plaintiffs' advertising and communication is truthful and honest, and accurately describes the services they offer.

h.      Plaintiffs provide a safe environment by conducting criminal background checks for all volunteers and staff who interact with patients.

i.      Plaintiffs are each governed by their own Boards of Directors and operate in accordance with their own articles of incorporation, bylaws, and stated purpose and mission.

j.      Plaintiffs comply with applicable legal and regulatory requirements for employment, fundraising, financial management, taxation, and public disclosure, including the timely filing of all applicable government reports.

k.      Plaintiffs' medical services are provided in accordance with all applicable laws, and in accordance with pertinent medical standards, under the supervision and direction of a licensed physician.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

9

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

64.    Plaintiffs are open about the fact that they do not provide or refer patients for abortions, both in person at their clinics and on their website.

65.    Plaintiffs bill health plans for reimbursable services when available, but never charge patients for their services, and never limit their services to insured clients.

66.    Anonymous client surveys show very high levels of satisfaction with Obria PNW's services; nearly all clients say their questions were clearly answered, they were treated with courtesy and respect, their privacy was respected, they received the information they needed, and the facility was clean, comfortable, and professional.

67.    Nearly all surveyed clients indicate that they would recommend Obria PNW to a friend.

68.    Upon request from pregnant women who have taken mifepristone to begin chemical abortions but have changed their mind and wish to continue their pregnancies, Plaintiffs offer referrals to health care providers who can prescribe progesterone to counter the effects of mifepristone in a process often called Abortion Pill Reversal ("APR").

69.    Plaintiffs do not provide APR or profit from referrals for it.

70.    APR has become increasingly important after the reversal of *Roe v. Wade* and the widespread availability of mifepristone and is not prohibited by federal law or the laws of Washington.

**Patient Data Handling by Pregnancy Centers and Abortion Providers**

71.    Because of their status as an ambulatory health care provider, Plaintiffs are subject to the patient information handling requirements of the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

72.    Plaintiffs hold patient information in strict and absolute confidence and obtain patient releases and permissions where appropriate.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

10

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

73.     Plaintiffs post on the Obria Group's website a notice about their legal duties, uses of, and disclosures of, patients' health information, and policies to protect patients' health information and maintain their privacy.[1]

74.     This notice includes the enumeration of patients' rights regarding their health information, including, but not limited to, the right to obtain copies of their information, the right to limit the use of their information, and the right to confidential care.[2]

75.     This notice also advises Plaintiffs' patients of the potential uses and disclosures of patients' health information, including to provide treatment, to bill patients' health plans, to comply with the law and respond to lawsuits and legal actions, and to contact and provide information to the patient.[3]

76.     This notice includes advice that patients may exercise any of their rights under federal or state law and provides instructions on how to file a federal complaint if patients believe their privacy rights have been violated or if they have questions about the notice.[4]

77.     Abortion providers in Washington routinely collect sensitive health information from clients, as well as data from information voluntarily provided by individuals.

78.     Planned Parenthood Federation of America, in particular, has had several large, recent, and well-publicized exposures of consumer data without their clients' consent, causing sensitive patient information such as abortion method used

---

[1] HIPAA NOTICE, OBRIA MEDICAL CLINICS, obria.org/terms-of-use/hipaa-notice/ (last visited Oct. 31, 2023).

[2] *Id.*

[3] *Id.*

[4] *Id.*

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

11

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

and the specific Planned Parenthood clinic where an appointment was booked to be shared with some of the largest technology companies in the world.[5]

**Defendant's Promotion of Abortion and Hostility Toward Pro-Life Pregnancy Resource Centers.**

79. Plaintiffs have no reason to believe that they possess information relevant to a violation of WASH. REV. CODE ANN. § 19.86.020.

80. Defendant, however, has a long and well-documented zeal for abortion, strong antipathy toward organizations that protect pregnant women and unborn children from the harms of abortion, and a particular animus toward pregnancy resource centers like those operated by Plaintiffs.

81. Defendant is in his third term as Attorney General of Washington.

82. Defendant has made the liberalization of laws and regulations relating to abortion a central focus of his policy advocacy and political persona while in office.

83. Defendant has been transparent in his affinity for organizations such as Planned Parenthood that perform abortions and share his expansive views on abortion policy.

84. In 2015, nearly three dozen Washington legislators asked Defendant to investigate Planned Parenthood after the emergence of undercover video of a Planned Parenthood Federation of America executive discussing prices for delivering tissue from aborted fetuses to researchers.[6]

---

[5] *See, e.g.*, Tatum Hunter, *You scheduled an abortion. Planned Parenthood's website could tell Facebook*, WASHINGTON POST (June 29, 2022), https://www.washingtonpost.com/technology/2022/06/29/planned-parenthood-privacy/; Gregory Yee & Christian Martinez, *Hack exposes personal information of 400,000 Planned Parenthood Los Angeles patients*, L.A. TIMES (Dec. 1, 2021), https://www.latimes.com/california/story/2021-12-01/data-breach-planned-parenthood-los-angeles-patients; and Brittany Renee Mayes, *D.C.'s Planned Parenthood reports data was breached last fall*, WASHINGTON POST (Apr. 16, 2021), https://www.washingtonpost.com/dc-md-va/2021/04/16/data-breach-planned-parenthood-dc/.

[6] Jim Brunner, *GOP lawmakers want state to investigate Planned Parenthood*, SEATTLE TIMES (July 27, 2015), www.seattletimes.com/seattle-news/politics/gop-lawmakers-want-state-to-investigate-planned-parenthood/.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

12

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

85.    In response, Defendant said that he found no evidence to support the allegations and added his concern about "unfounded allegations" against Planned Parenthood.[7]

86.    In a press conference on August 22, 2019, Defendant described his office as having "worked very closely, obviously, with Planned Parenthood" in abortion-related litigation in the U.S. District Court for the Eastern District of Washington and before the Ninth Circuit.[8]

87.    Defendant has advocated for federal legislation to mandate abortion coverage by insurance policies, establish a federal program using taxpayer dollars to fund organizations that perform abortions, preempt even modest state regulation of abortion, and repeal federal statutory limits on abortion.[9]

88.    Defendant has been vocal about his contempt for the U.S. Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*,[10] which reversed *Roe v. Wade*[11] and *Planned Parenthood of Se. Pennsylvania v. Casey*,[12] calling the decision

---

[7] Associated Press, *Washington finds no evidence against Planned Parenthood*, COLUMBIAN (Nov. 16, 2015), https://www.columbian.com/news/2015/nov/16/washington-finds-no-evidence-against-planned-parenthood/.

[8] *Gov. Inslee and AG Bob Ferguson on their fight to protect Planned Parenthood*, KING-TV (Aug. 22, 2019), https://www.king5.com/video/news/gov-inslee-and-ag-bob-ferguson-on-their-fight-to-protect-planned-parenthood/281-184f1733-c5ee-476a-996b-3891e2cf20e5.

[9] Letter from Washington Attorney General Bob Ferguson to Speaker of the House Nancy Pelosi and House Majority Leader Chuck Schumer (June 9, 2022), https://agportal-s3bucket.s3.amazonaws.com/Pelosi-Schumer%20Ltr%20Re%20Dobbs%206.9.22.pdf.

[10] 142 S. Ct. 2228, 213 L. Ed. 2d 545 (2022).

[11] 410 U.S. 113, 93 S. Ct. 705, L. Ed. 2d 147 (1973).

[12] 505 U.S. 833, 112 S. Ct. 2791, 120 L. Ed. 2d 674 (1992).

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

13

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

"outrageous"[13] and "awful"[14] and pledging to "look for opportunities to bring or support legal efforts to overturn this shameful and radical Opinion [sic]."[15]

89.    Contrary to the plain language of the U.S. Supreme Court decision in *Dobbs*, the U.S. Constitution, and Washington law, Defendant calls abortion a "fundamental right," and describes the policies of states that have moved to regulate abortion post-*Dobbs* as "persecution."[16]

90.    Defendant strategically works to thwart legislative efforts to provide legal protections for the unborn, even in other states.[17]

91.    Defendant has publicly listed among his New Year resolutions his resolve to "fight" for abortion.[18]

92.    Defendant is often praised by organizations that advocate for advocacy for expansive abortion policy, such as Planned Parenthood of Greater Washington

---

[13]   Emily Blume (@emilyblume_kxly), TWITTER (Jan. 24, 2023, 2:54 PM), https://twitter.com/emilyblume_kxly/status/1617989311672258562/photo/1.

[14]   Bob Ferguson (@BobFergusonAG), TWITTER (July 5, 2022, 12:47 PM), https://twitter.com/BobFergusonAG/status/1544377490889535490.

[15]   Bob Ferguson (@BobFergusonAG), TWITTER (June 24, 2022, 10:31 AM), https://twitter.com/BobFergusonAG/status/1540356944535293952

[16]   Bob Ferguson (@BobFergusonAG), TWITTER (Jan. 22, 2023, 6:42 PM), https://twitter.com/BobFergusonAG/status/1617321773011460097; Bob Ferguson (@BobFergusonAG), TWITTER (June 24, 2022, 10:30 AM), https://twitter.com/BobFergusonAG/status/1540356699311091712.

[17]   Shauna Sowersby, *Attorney General Ferguson signs on in support of DOJ lawsuit against Idaho abortion ban*, THE OLYMPIAN (August 17, 2022), www.theolympian.com/news/state/washington/article264567961.html.

[18]   Bob Ferguson (@BobFergusonAG), TWITTER (Jan. 1, 2023, 5:03 PM), https://twitter.com/BobFergusonAG/status/1609686726565580800.

---

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

14

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

and North Idaho, for being a "champion for abortion access"[19] and a "true reproductive health champion."[20]

93.   Defendant has publicized on his official social media profile the misleading assertion that chemical abortion drug "Mifepristone is associated with fewer serious side effects and deaths than common drugs like Tylenol or Viagra."[21]

94.   Defendant recently marked "Abortion Provider Appreciation Day" by participating in a public forum with "Planned Parenthood, local abortion providers, and abortion advocates to discuss the current landscape of reproductive health care."[22]

95.   After a draft of the *Dobbs* decision was leaked to the press, but before the decision was handed down, Defendant coordinated with President Biden's administration on abortion policy.[23]

96.   Defendant then led a coalition of state attorneys general in a federal lawsuit in the U.S. District Court for the Eastern District of Washington, nominally against President Biden's Food and Drug Administration, for not being aggressive

---

[19] Planned Parenthood of Greater Washington and North Idaho (@PPGWNI), TWITTER (Feb. 24, 2023, 5:47 PM), https://twitter.com/PPGWNI/status/1629266790273683458.

[20] Planned Parenthood of Greater Washington and North Idaho (@PPGWNI), TWITTER (Mar. 28, 2023, 4:27 PM), https://twitter.com/PPGWNI/status/1640827880782561281.

[21] Attorney General Bob Ferguson (@AGOWA), TWITTER (Feb. 24, 2023, 12:19 PM), https://twitter.com/AGOWA/status/1629184234694000640.

[22] Press Release, Senator Patty Murray, On Abortion Provider Appreciation Day, Murray, Cantwell, AG Ferguson Outline Path Forward in Fight to Protect Reproductive Health Care (Mar. 10, 2023), www.murray.senate.gov/on-abortion-provider-appreciation-day-murray-cantwell-ag-ferguson-outline-path-forward-in-fight-to-protect-reproductive-health-care/.

[23] Press Release, White House, Readout of Vice President Kamala Harris's Meeting with State Attorneys General on Reproductive Rights (June 23, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/06/23/readout-of-vice-president-kamala-harriss-meeting-with-state-attorneys-general-on-reproductive-rights/.

---

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

15

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

enough in removing their Risk Evaluation and Mitigation Strategies for the abortifacient drug mifepristone.[24]

97.    Defendant's suit was strategically timed as a "counter move" to mifepristone-related litigation being vigorously contested by the FDA in the U.S. District Court for the Northern District of Texas.[25]

98.    In collaboration with several progressive legal organizations, Defendant established the Abortion Defense Network, a pro bono legal assistance office for abortion "providers, seekers, and helpers."[26]

99.    Defendant is campaigning for election as Governor of Washington and is making abortion advocacy a primary feature of his campaign.

100.    On Defendant's campaign website, he lists his stances on various issues; the first issue listed—ahead of "Standing up for Workers," "Fighting for Consumer Rights," "Protecting our Environment," etc.—is "Fighting for Reproductive Freedom."[27]

**Defendant's Civil Investigative Demands**

101.    On May 19, 2022, Defendant issued separate but similar CIDs to Plaintiffs.

---

[24] Kelci Mosely-Morris, *In Washington, FDA lawsuit is part of larger strategy to preserve abortion access*, IDAHO CAPITAL SUN (April 17, 2023), https://idahocapitalsun.com/2023/04/17/in-washington-fda-lawsuit-is-part-of-larger-strategy-to-preserve-abortion-access/.

[25] Perry Stein, Robert Barnes, and Ann E. Marimow, *In a divided nation, dueling decisions on abortion pill: Conflicting rulings set up extraordinary legal clash and could reshape abortion access*, WASHINGTON POST (April 9, 2023), https://www.washingtonpost.com/politics/2023/04/09/abortion-ruling-texas-washington-clash/.

[26] Press Release, Washington Attorney General, New website available for Washingtonians seeking pro bono legal services regarding their reproductive rights (Feb. 23, 2023), www.atg.wa.gov/news/news-releases/attorney-general-alert-new-website-available-washingtonians-seeking-pro-bono.

[27] Issues, BOB FERGUSON EXPLORATORY CAMPAIGN FOR GOVERNOR, www.bobferguson.com/issues (last visited October 27, 2023).

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

16

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

102.   The CIDs state that they pertain to an investigation into "possible past or current violations" of Washington's Consumer Protection Act, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

103.   The CIDs state that they pertain to "unfair or deceptive acts and practices with respect to the marketing, advertising, and other representations concerning services provided to Washington consumers, including, without limitation, representations relating to Abortion Pill Reversal," and "unfair acts or practices related to the collection and use of consumer data."

104.   The CIDs demand that Plaintiffs answer interrogatories and produce materials for a "relevant time period" extending from January 1, 2010, to the present.

105.   The CIDs demand, among many other things, during the "relevant time period," disclosure of (italics added):

a.   "relationships with *any* parent, affiliate, sister, licensee, franchisee, subsidiary, predecessor, or successor assignee(s)";

b.   identities of *every* auditor, accountant, bookkeeper, and tax preparer;

c.   deposit and credit accounts; and

d.   identities of "*all* directors, officers, principals, agents, members, employees, contractors, and *volunteers*" associated with Plaintiffs.

106.   The CIDs also demand, *inter alia*, during the "relevant time period," production of (capital lettering in original, italics added):

a.   "articles of incorporation, any original, amended or restated articles, bylaws, and operational/internal policies (e.g., whistleblower policies, conflict of interest policies, non-fraternization policies, etc.) *and any and all past iterations thereof*";

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

17

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

b.     "*all* notices, agendas, and MINUTES for *every meeting* of YOUR Board of Directors (and any subcommittees thereof), YOUR Medical Advisory Board (and any subcommittees thereof), and/or general meetings of YOUR executive and/or operations team(s) (and any subcommittees thereof)";

c.     "copies of *all* tax forms and related schedules or attachments prepared for YOU or on YOUR behalf that are not publically [sic] available through the Internal Revenue Service's Tax Exempt Organization Search feature (https://apps.irs.gov/app/eos/) during the Relevant Time Period. For purposes of this Request, the State seeks *any and all* DOCUMENTS filed with the Internal Revenue Service, California Department of Revenue, and any other taxing authority or revenue-collecting agency, regardless of whether YOU paid taxes to the agency (e.g. all IRS forms 990, including, without limitation, Schedule B; 1120; 1099, 1040, W2, etc.)";

d.     *all* documents "relating to draft and final financial statements, balance sheets, general ledger(s), and other financial disclosures, from 2010 to the present, including, *without limitation*, documents and calculations relied upon in creating such documents and/or provided to auditors, lenders, grantors, and/or donors";

e.     *all* documents relating to operating expenses;

f.     *all* plans, policies, and procedures related to compensation, including pensions and retirement account contributions; and

g.     "*all* DOCUMENTS reflecting payments or other transfers of value, including, without limitation, in-kind transfers to or from any affiliate organizations and/or their respective parent, subsidiaries, and/or affiliate ENTITIES."

107.   Many of these interrogatories and requests for documents far exceed the scope of any reasonable investigation into "possible . . . . unfair or deceptive acts and

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

18

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

practices with respect to the marketing, advertising, and other representations concerning services . . . including . . . Abortion Pill Reversal" or "unfair acts or practices related to the collection and use of consumer data."

108.  The CIDs do not reflect the existence of a complaint or any factual basis for suspecting a violation of the Washington Consumer Protection Act.

109.  Obria PNW provided its first response to its CID on July 8, 2022, and the Obria Group on July 18, 2022, providing hundreds of pages of documents but each objecting to several interrogatories and requests because they seek information or documents not discoverable under the Washington Rules of Civil Procedure, and on privilege grounds, arbitrariness, vagueness, overbreadth, undue burden and oppressiveness, relevance, unreasonableness, exceeding the scope of the investigation, and First Amendment privilege concern that other individuals would be subject to harassment or professional pressure because of their association with Plaintiffs, among others.

110.  Plaintiffs provided their first supplemental responses to the CIDs on July 22, 2022, again providing hundreds of pages of responsive documents and again restating many of the same objections. Obria PNW provided a second supplemental response on August 2, 2022.

111.  After receiving Plaintiffs' responses, Defendant issued *additional* CIDs to individuals and entities identified in Plaintiffs' responses to the original CIDs.

112.  Upon information and belief, after receiving Plaintiffs' responses, Defendant issued related CIDs to organizations associated with Plaintiffs, including a company that provides marketing services to women-led companies and nonprofit organizations; a business that provides clients with website design and search engine optimization; and a Christian marketing agency.

113.  Upon receiving the CIDs, representatives from certain of these companies reached out to Plaintiffs and expressed their dismay and displeasure

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

19

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

about having to pay attorneys' fees after getting caught up in a government investigation because of their association with Plaintiffs, and as a result, Plaintiffs have not used the services of certain of those organizations since.

114.    Despite over fifteen hundred pages of responsive documents provided, Defendant issued separate deficiency letters dated April 19, 2023, to Plaintiffs, alleging several failures to provide "full and complete responses" to the CIDs.

115.    On June 16, 2023, the Obria Group provided its second supplemental response, and Obria PNW its third supplemental response, to try to satisfy Defendant's CIDs.

116.    Plaintiffs have produced a total of more than 1,500 pages of documents in response to Defendant's CIDs.

117.    Despite well-publicized incidents of data breaches at Planned Parenthood locations, Defendant has not issued a single CID relating to "unfair or deceptive acts and practices with respect to the marketing, advertising, and other representations" or "unfair acts or practices related to the collection and use of consumer data" to Planned Parenthood, its Washington affiliates, any of the 46 abortion clinics in Washington,[28] or any individual or entity that refers for abortions or advocates for increased availability of abortions.

**Effect of Defendant's CIDs on Plaintiffs**

118.    Obria PNW has never received a request or referred a client for APR but has made preparations to do so if a pregnant woman who changed her mind after beginning a chemical abortion sought their assistance.

119.    Obria PNW has previously spoken about APR and would like to more prominently publicize their availability to assist pregnant women who wish to stop a chemical abortion and continue their pregnancies.

---

[28] *Abortion*, WASHINGTON STATE DEPARTMENT OF HEALTH, https://doh.wa.gov/you-and-your-family/sexual-and-reproductive-health/abortion (last visited Nov. 17, 2023).

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

20

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

120.    Now that Defendant is investigating Plaintiffs' provision of APR, Obria PNW has not made any further public statements about APR due to fear of reprisal from Defendant, and but for Defendant's investigation, Plaintiffs would prepare a brochure of materials on the safety and efficacy of APR to be distributed on social media, at its clinics, and elsewhere.

121.    In addition, in an effort to limit their potential exposure to reprisal from Defendant for advertising their services, including APR, Obria PNW has discontinued operating its own website.

122.    It instead relies upon the Obria Group to host a website listing its services.

123.    As a result of outsourcing their website needs to the Obria Group, Obria PNW has reduced or eliminated its contracts with vendors who provide their website hosting, search engine optimization, and other marketing-related services.

## FIRST CAUSE OF ACTION

### First Amendment: Retaliatory Discrimination

124.    Plaintiffs repeat and reallege each allegation in paragraphs 1–123 of this complaint.

125.    The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for speaking out.

126.    A plaintiff is subject to unlawful retaliation if (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct.

127.    If a Plaintiff proves these elements, the burden shifts to the government to show that it would have taken the same action even in the absence of the protected conduct.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

21

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

128.   Plaintiffs have engaged in constitutionally protected speech advancing a pro-life message, including providing information about APR.

129.   By subjecting Plaintiffs to extensive and invasive investigations of that speech, Defendant has engaged in conduct that would chill a person of ordinary fitness from continuing to engage in protected speech.

130.   Defendant's animus for Plaintiffs' pro-life messaging and pro-life organizations was a substantial or motivating factor in his decision to issue the CIDs.

131.   Defendant cannot show that he would have investigated Plaintiffs anyway, since he has ignored well-established violations by pro-abortion groups while investigating Plaintiffs without any stated evidentiary support.

132.   Accordingly, Defendant is liable to Plaintiffs for unlawful retaliation against Plaintiffs for exercise of their First Amendment rights.

## SECOND CAUSE OF ACTION

### First Amendment: Selective Enforcement/Viewpoint Discrimination

133.   Plaintiffs repeat and reallege each allegation in paragraphs 1–123 of this complaint.

134.   The First Amendment to the Constitution protects Plaintiffs' rights to speak and to be free from content and viewpoint discrimination.

135.   Laws and regulations must not only be facially neutral but also enforced in a non-discriminatory and viewpoint neutral manner.

136.   Defendant may not exercise enforcement discretion based upon viewpoint, targeting for investigative demands only organizations expressing one particular point of view on a controversial topic. Such action threatens and chills First Amendment rights.

137.   Upon information and belief, Defendant has not investigated any of dozens of similarly situated reproductive health-related clinics in Washington to examine the truthfulness of their marketing or their handling of consumer data.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

22

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

138.   Plaintiffs are similar to these other entities in that they serve similar clientele—*i.e.*, women and men seeking reproductive health services—and offer many of the same services—*e.g.*, pregnancy testing, STD/STI testing, breast and pelvic examinations and cancer screenings, and adoption referrals.

139.   The most significant difference between Plaintiffs and any of the dozens of abortion providers in Washington is that Plaintiffs do not provide or refer for abortions, but this is not a legitimate basis upon which to single out for investigation Plaintiffs' provision of *other* services or their marketing and handling of consumer data.

140.   The similarities between services provided by Plaintiffs and Planned Parenthood, along with reports that Planned Parenthood has repeatedly failed to safeguard patient data, while Plaintiffs have not had such breaches, evinces viewpoint discrimination.

141.   Defendant's public statements also demonstrate that Defendant is intentionally targeting Plaintiffs with unreasonable, intrusive, overbroad, and unduly burdensome CIDs based on their speech and views on abortion.

142.   For years Defendant has repeatedly come to the defense of, allied himself with, and spoken favorably toward organizations that perform abortions or advocate for the elimination of restrictions on abortion, while persistently and aggressively impugning the motives of pro-life entities like Plaintiffs and accusing them of misleading their clients.

143.   Defendant issued CIDs based on the viewpoint of Plaintiffs' speech, including specifically targeting Plaintiffs' protected speech about Abortion Pill Reversal.

144.   Defendant's refusal to exercise his authority against similar entities who share his views on abortion while targeting Plaintiffs, who hold a disfavored

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

23

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

view, violates Plaintiffs' First Amendment right to be free from viewpoint discrimination.

145. Viewpoint-based enforcement of the Consumer Protection Act on the basis of views on abortion would having a chilling effect on a reasonable person's willingness to engage in protected activities.

146. Investigating Plaintiffs for engaging in constitutionally protected speech does not further any legitimate, rational, substantial, or compelling interest.

147. Accordingly, Defendant's CIDs are unconstitutional selective enforcement and viewpoint discrimination that violate Plaintiffs' constitutional rights.

### THIRD CAUSE OF ACTION

### First Amendment: Free Exercise

148. Plaintiffs repeat and reallege each allegation in paragraphs 1–123 of this complaint.

149. Plaintiffs' pro-life statements and beliefs, including their statements in support of APR, are sincere and rooted in their Christian faith.

150. The Free Exercise clause forbids government action that is not neutral toward religion unless it satisfies strict scrutiny.

151. Defendant's service of the CIDs on Plaintiffs is not neutral to religion for several reasons.

152. First, Defendant's discretion to decide where and when to serve CIDs shows that his actions are not neutral to religion.

153. Second, Defendant's actions are not neutral to religion because he treats comparable secular activity—the operations of abortion facilities such as Planned Parenthood—more favorably than Plaintiffs, having declined to serve CIDs on them despite their well-known failures in data security.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

24

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

154.    Third, Defendant's actions are not neutral to religion because he has shown direct hostility toward Plaintiffs' Christian pro-life mission and their speech in support of that mission.

155.    Defendant lacks a compelling state interest to justify his action against Plaintiffs' religion, since the Washington Consumer Protection Act does not apply here due to the absence of any "trade or commerce" by Plaintiffs and Defendant seeks to investigate a service that Plaintiffs do not provide or profit from.

156.    Defendant's actions are not narrowly tailored because he has not served CIDs on Planned Parenthood, despite its well-established data breaches.

157.    Accordingly, Defendant's CIDs fail to satisfy strict scrutiny and thus violate Plaintiffs' First Amendment right to the free exercise of religion.

## FOURTH CAUSE OF ACTION

### First Amendment: Free Association

158.    Plaintiffs repeat and reallege each allegation in paragraphs 1–123 of this complaint.

159.    An investigation that unjustifiably targets individuals and entities with whom Plaintiffs' associate violates Plaintiffs' First Amendment freedom of association.

160.    The First Amendment protects the right of people to associate with others in pursuit of many political, social, economic, educational, religious, and cultural ends.

161.    The First Amendment also prohibits the government from prohibiting or discouraging people from associating with others in an association expressing messages.

162.    Plaintiffs are involved in an expressive association because people with like-minded beliefs, including those on staff and volunteers at its facilities, are joining

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

25

to serve and educate pregnant women and the fathers of their babies, and to express their beliefs about the value of unborn human life.

163.   Plaintiffs' directors, donors, staff, and volunteers, and many other people and organizations with whom Plaintiffs associate advocate the view that unborn human life has value and deserves dignity and respect.

164.   Plaintiffs likewise engage in expressive association when their staff and volunteers partner with each other and with pregnant mothers and expectant fathers to discuss these values.

165.   In offering services and education to those who seek their services, Plaintiffs expressively associate with pregnant women and the fathers of their babies to communicate desired messages to those individuals.

166.   Defendant's CIDs demand, without limitation, disclosure of Plaintiffs' "business structure, including all relationships with any parent, affiliate, sister, licensee, franchisee, subsidiary, predecessor, or successor assignee(s)."

167.   Defendant's CIDs demand, without limitation, disclosure of the identities of "all directors, officers, principals, agents, members, employees, contractors, and volunteers associated with" Plaintiffs.

168.   Individuals identified in Plaintiffs' responses to the CIDs have received CIDs relating to Defendant's unfounded investigation of Plaintiffs.

169.   By investigating Plaintiffs without a basis in a complaint or other factual basis, Defendant may cause individuals and entities who associate with Plaintiffs to understandably infer that Plaintiffs have engaged in wrongdoing, thereby discouraging those individuals and entities from associating with Plaintiffs.

170.   When Defendant similarly issues CIDs to parties named in Plaintiffs' responses to the CIDs—as has happened with at least three associated contractual partners—those parties have communicated their reasonable belief that they are

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

26

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

being targeted by a government investigation *because of* their association with Plaintiffs.

171.   These entities reasonably attribute the burden of responding to their own CIDs to their prior association with Plaintiffs.

172.   As a result, Plaintiffs have diminished the work they do with these other organizations because of the strain caused by Defendant's CIDs.

173.   In addition, by issuing CIDs to individuals or entities associated with Plaintiffs, Defendant may cause those and other individuals or entities to end or limit their association with Plaintiffs to avoid such government scrutiny.

174.   Further, by issuing CIDs to volunteers, employees, directors, and other pro-life organizations for no reason other than their association with Plaintiffs, Defendant subjects them to the same harassment and discourages the willingness of such persons and entities to associate with Plaintiffs, and are harming these relationships.

175.   Accordingly, Defendant's CIDs violate Plaintiffs' right of free association guaranteed by the First Amendment to the United States Constitution, as incorporated and applied to the States through the Fourteenth Amendment.

## FIFTH CAUSE OF ACTION

### First Amendment: Privilege

176.   Plaintiffs repeat and reallege each allegation in paragraphs 1–123 of this complaint.

177.   The First Amendment freedom to associate concerns the ability of persons and groups to retain privacy in their associations.

178.   The First Amendment protects Plaintiffs' freedom to engage in broad and uninhibited internal, nonpublic communications to advance their shared operational and political goals.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

27

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

179. Compelled disclosure of associations adversely affects protected speech and association by inducing members to withdraw from the association and dissuading others from joining it for fear of exposure of their beliefs.

180. First Amendment protections extend not only to organizations, but also to their staff, members, and others who affiliate with them.

181. Government actions that have a deterrent effect on the exercise of First Amendment rights are subject to rigorous scrutiny.

182. The chilling effect on First Amendment rights is not diminished simply because disclosure of private information is compelled by government process.

183. Defendant's CIDs demand, without limitation, disclosure of vast swathes of Plaintiffs' sensitive and confidential information, communications, and policies such as—to name just a few examples—personal employee and volunteer information; wholly unrelated personnel policies, including all previous iterations; and the notices, agendas, and minutes for every meeting of the Board of Directors and Medical Advisory Board, including any subcommittees; among many others.

184. These unreasonable demands harass Plaintiffs and may result in withdrawal or discouragement of individuals and entities from associating with Plaintiffs.

185. Defendant has no substantive evidence that Plaintiffs have engaged in any violation of Washington's Consumer Protection Act, much less any grounds to suggest that the disclosures of private information he seeks justify the deterrent effect on the free exercise of Plaintiffs' constitutionally protected right of association.

186. Accordingly, Defendant's CIDs violate Plaintiffs' First Amendment privilege.

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

## SIXTH CAUSE OF ACTION

## Fourth Amendment: Unreasonable Search and Seizure

187.   Plaintiffs repeat and reallege each allegation in paragraphs 1–123 of this complaint.

188.   The demands for information unrelated to an investigation authorized by law violate Plaintiffs' Fourth Amendment protection against unreasonable government searches and seizures.

189.   The Fourth Amendment to the United States Constitution—made applicable to the states through the Fourteenth Amendment—protects Plaintiffs from unreasonable searches and seizures and imposes on Defendant the obligation to state with particularity the place to be searched and the things to be seized.

190.   Defendant's investigative demands must be reasonably related to legitimate investigative inquiries, and based on more than mere speculation, or worse, animus toward Plaintiffs' views, speech, and lawful activities.

191.   Upon information and belief, Defendant's CIDs are not based on a complaint or any reason to suspect that Plaintiffs have information relating to a violation of Wash. Rev. Code Ann. § 19.86.020.

192.   Many interrogatories and requests for documentation and materials in the CIDs have no rational relation to an investigation into "possible past or current . . . . unfair or deceptive acts and practices with respect to the marketing, advertising, and other representations concerning services provided to Washington consumers, including, without limitation, representations relating to Abortion Pill Reversal," or "unfair acts or practices related to the collection and use of consumer data."

193.   The thirteen-year "relevant time period" for documents and information demanded by the CIDs—from January 1, 2010, to the present—is more than three times the four-year statute of limitations to initiate a cause of action under Washington's Consumer Protection Act.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

29

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

Case 3:23-cv-06093-TMC   Document 1   Filed 11/29/23   Page 30 of 35

194.   Defendant served CIDs on Plaintiffs with no substantial evidence of any colorable violation of the Washington Consumer Protection Act.

195.   The Washington Consumer Protection Act does not apply to Plaintiffs because they are not engaged in relevant trade or commerce subject to the Act, and the statements that Defendant seeks to investigate concerning APR relate to a treatment that Plaintiffs do not provide and do not profit from.

196.   Defendant has made statements before and after he issued the CIDs showing his disdain for organizations that seek to protect unborn human life in general, and for pregnancy resource centers like those operated by Plaintiffs in particular.

197.   Defendant is engaging in an intrusive, oppressive, unnecessary, unjustified, and irrelevant investigation of Plaintiffs' organizational structure, finances, tax history, personal information of volunteers and personnel, associations, Board meetings, whistleblower and non-fraternization policies, and other lawful aspects of Plaintiffs' operations.

198.   Defendant's many unspecific demands for "any" and "all" information or materials, "without limitation," are not particular, as required by the Fourth Amendment.

199.   The overbreadth of this investigation and its overlong "relevant time period" are unreasonable.

200.   Defendant's CIDs harass Plaintiffs and cause Plaintiffs to spend time and money in responding to them for no apparent reason other than their disfavored views.

201.   Defendant has threatened sanctions against Plaintiffs under WASH. REV. CODE ANN. § 19.86.110 to coerce them into complying with his unconstitutional demands.

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

30

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

202.    Thus, Defendant's CIDs constitute an unreasonable search and seizure under the Fourth Amendment.

### SEVENTH CAUSE OF ACTION

### Fourteenth Amendment: Equal Protection

203.    Plaintiffs repeat and reallege each allegation in paragraphs 1–123 of this complaint.

204.    Singling out Plaintiffs for these investigative burdens, while not burdening organizations who have similar interactions with similar clients, but which share Defendant's political views on abortion, constitutes selective enforcement of the Consumer Protection Act and violates Plaintiffs' Fourteenth Amendment right to equal protection of the law.

205.    Under the Equal Protection Clause, the government may not treat similarly situated persons disparately when such disparate treatment burdens the exercise of a fundamental right.

206.    Plaintiffs have a fundamental right to free speech and free association.

207.    Plaintiffs are similarly situated to other entities in Washington in that they provide pregnancy-related medical services to pregnant women and collect sensitive client information necessary to provide those services.

208.    Defendant has intentionally singled out Plaintiffs for disparate treatment by favoring similarly situated entities that share Defendant's views on abortion and by infringing on Plaintiffs' freedoms of speech and association.

209.    As shown by the lengthy and consistent record of supporting abortion providers and advocates of unregulated abortion in both word and deed, Defendant has a well-deserved reputation with these entities as their champion.

210.    After Planned Parenthood executives were recorded negotiating terms to transfer body parts of aborted fetuses, Defendant acquitted Planned Parenthood of

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

31

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

any wrongdoing, and warned against leveling "unfounded allegations" against the abortion provider.

211. Defendant has made unregulated abortion a central feature of his political career and policy advocacy, and it is a primary issue in his latest quest for higher office.

212. In his speeches, writings, and social media posts, Defendant makes no attempt to hide his contempt for the authority of the United States Supreme Court's decision in *Dobbs*.

213. Defendant has publicly asserted—without naming the entities to which he was referring or citing any evidence—that pro-life medical centers such as those operated by Plaintiffs deceive pregnant women by marketing themselves as abortion providers.

214. Defendant has also publicly asserted—without naming the entities to which he was referring or citing any evidence—that pro-life medical centers such as those operated by Plaintiffs misuse patient data.

215. In his public statements, writings, and social media posts, Defendant frequently expresses his support for unregulated abortion and entities that perform abortions, while consistently portraying the motives of those with different views as sinister and malevolent.

216. Plaintiffs have *never* implied that they perform abortions in any of their marketing or public statements, and state unequivocally in writing at their facilities and in multiple places on their website that they do not perform or refer for abortions.

217. While the world's largest provider of abortions—which performs abortions in Washington—has had multiple massive and well-documented data breaches, Plaintiffs have *never* had a breach of consumer data.

218. Defendant has nevertheless imposed unreasonable and burdensome investigative demands on Plaintiffs which are clearly aimed at manufacturing an

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

32

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

enforcement action against them for deceptive marketing and mishandling patient data, and which also hope to expose nonpublic communications and processes that have no bearing on those matters.

219. Defendant does not serve any legitimate, rational, substantial, or compelling interest in treating Plaintiffs differently than similarly situated agencies based solely on Plaintiffs' exercise of their fundamental rights.

220. Defendant does not exercise legitimate enforcement discretion by singling Plaintiffs out for enforcement from among other similarly situated entities based on their viewpoint.

221. Defendant has alternative, less restrictive mechanisms available to serve any legitimate interests he may possess, such as limiting the initiation of investigations and the issuance of CIDs to instances in which there is a bona fide complaint or other substantive evidence of wrongdoing.

222. Accordingly, Defendant's CIDs violate the Equal Protection Clause of the Fourteenth Amendment.

**PRAYER FOR RELIEF**

Plaintiffs respectfully pray for judgment against Defendant and request the following relief:

A. A preliminary injunction enjoining enforcement of Defendant's civil investigative demands in their entirety, or, in the alternative, to modify the same to eliminate those provisions which infringe on the constitutional protections of Plaintiffs and their agents;

B. A final injunction granting the same relief;

C. A declaratory judgment that Defendant's civil investigative demands violate Plaintiffs' constitutional rights;

D. An award of Plaintiffs' costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988; and

VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

33

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

1        E.     Any other relief that the Court deems equitable and just in the

2 circumstances.

3

4 Respectfully submitted this 29th day of November, 2023.

5

6                   */s/ Lincoln Davis Wilson*

7                   Kristen K. Waggoner, Wa. Bar No. 27790

8                   Lincoln Davis Wilson, Wa. Bar No. 53764

                   Timothy A. Garrison, Mo. Bar No. 51033*

9                   ALLIANCE DEFENDING FREEDOM

                   440 First Street NW, Suite 600

10                   Washington, DC 20001

                   Telephone: (202) 393-8690

11                   Facsimile: (202) 347-3622

                   kwaggoner@ADFLegal.org

12                   lwilson@ADFLegal.org

                   tgarrison@ADFLegal.org

13

14                   Nathaniel L. Taylor, Wa. Bar No. 27174

                   Abigail St. Hilaire, Wa. Bar No. 48194

15                   ELLIS, LI, & McKINSTRY, PLLC

                   1700 7th Ave Suite 1810

16                   Seattle, WA 98101

                   Telephone: 206-682-0565

17                   ntaylor@elmlaw.com

18                   asthilaire@elmlaw.com

19

20                   *Counsel for Plaintiffs*

                   **Motion for pro hac vice admission*

                     *filed concurrently*

21

22

23

24

25

26

27

28 VERIFIED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF

            34

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

1

**VERIFICATION OF COMPLAINT**

2     I, Janice "River" Sussman, a citizen of the United States and a resident of Port

3  Angeles, Washington, declare under penalty of perjury under 28 U.S.C. § 1746 that I

4  have read the foregoing Verified Complaint and the factual allegations therein, and

5  the facts as alleged are true and correct.

6     Executed this 29th day of November, 2023, at Port Townsend, Washington.

7

8

9

10                    Janice "River" Sussman

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  VERIFIED COMPLAINT
    FOR DECLARATORY AND
    INJUNCTIVE RELIEF

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690