**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
TACOMA DIVISION**

| | |
|---|---|
| **OBRIA GROUP, INC., and MY CHOICES d/b/a OBRIA MEDICAL CLINICS PNW,** | Civil No.: 3:23-cv-06093 |
| *Plaintiffs,* | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT** |
| v. | NOTE ON MOTION CALENDAR: |
| **ROBERT FERGUSON**, in his official capacity as Attorney General for the State of Washington, | **December 22, 2023** |
| *Defendant(s).* | ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... ii

INTRODUCTION ............................................................................ 1

FACTUAL BACKGROUND ............................................................ 3

    The Obria Ministry ................................................................... 3

    Obria Services ........................................................................... 4

    Patient Data Handling by the Obria Ministry and Abortion Providers ........... 6

    AG Ferguson's Abortion Advocacy and Hostility to Pregnancy Centers .......... 7

    AG Ferguson's Unreasonable Civil Investigative Demands ........................... 9

ARGUMENT ................................................................................. 12

I.    The Obria Ministry is likely to succeed on its constitutional claims. ............. 13

    A.    AG Ferguson's demands violate the First Amendment. ...................... 13

        1.    The CIDs violate the Ministry's freedom of speech. ................... 13

        2.    The CIDs violate the Ministry's freedom of religion. ................. 17

        3.    The CIDs violate the Ministry's freedom of association. ........... 20

        4.    The CIDs violate the Ministry's First Amendment privilege. ............................................................................. 21

    B.    AG Ferguson's demands violate the Fourth Amendment. .................. 24

        1.    The CIDs far exceed the scope of what the Fourth Amendment permits. ................................................... 24

        2.    The CIDs demand information for a period of time far exceeding what the Fourth Amendment permits. ..................... 26

II.    The CIDs will cause irreparable harm without an injunction. ....................... 26

III.    The balance of equities and public interest favor the Obria Ministry. ........... 27

CONCLUSION ............................................................................. 28

CERTIFICATE OF SERVICE ....................................................... 30

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

i

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

1

2

**TABLE OF AUTHORITIES**

3

<u>Cases</u>

4

*American Beverage Ass'n v. City & County of San Francisco,*
    916 F.3d 749 (9th Cir. 2019) .............................................................................. 32

5

6

*Bella Health & Wellness v. Weiser,*
    115 Fed. R. Serv. 3d 690 (D. Colo. Apr. 15, 2023) ............................................ 6

7

*Bella Health & Wellness v. Weiser,*
    No. 123CV00939DDDSKC, 2023 WL 6996860 (D. Colo. Oct. 21, 2023) ....... 6, 7

8

9

*Branch Ministries v. Rossotti,*
    211 F.3d 137 (D.C. Cir. 2000) .......................................................................... 17

10

11

*Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO,*
    860 F.2d 346 (9th Cir. 1988) ........................................................................ 24, 25

12

*Browne v. Avvo Inc.,*
    525 F. Supp. 2d 1249 (W.D. Wash. 2007) ................................................ 15, 22, 29

13

14

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
    508 U.S. 520 (1993) ...................................................................................... 20, 22

15

16

*Dedication & Everlasting Love to Animals v. Humane Soc. of U.S., Inc.,*
    50 F.3d 710 (9th Cir. 1995) .............................................................................. 29

17

18

*Dobbs v. Jackson Women's Health Org.,*
    142 S. Ct. 2228 (2002) ...................................................................................... 32

19

20

*Drakes Bay Oyster Co. v. Jewell,*
    747 F.3d 1073 (9th Cir. 2014) .......................................................................... 14

21

*Federal Election Commission v. Wisconsin Right to Life, Inc.,*
    551 U.S. 449 (2007) .......................................................................................... 26

22

23

*Fellowship of Christian Athletes v. San Jose Unified School District Board of
    Education,*
    82 F.4th 664 (9th Cir. 2023) ...................................................................... 20, 21, 22

24

25

*Foti v. City of Menlo Park,*
    146 F.3d 629 (9th Cir. 1998) .......................................................................... 17

26

27

28

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

ii

*Frederick Douglass Foundation, Inc. v. District of Columbia,*
    82 F.4th 1122  (D.C. Cir. 2023) ............................................ 16, 17, 18

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021) .................................................. 20, 21

*Garrison v. Louisiana,*
    379 U.S. 64 (1964) ............................................................ 14

*Groves v. State of Wash.,*
    863 F.2d 886 (9th Cir. 1988) ............................................. 28

*Hartman v. Moore,*
    547 U.S. 250 (2006) .......................................................... 15

*Hernandez v. C.I.R.,*
    490 U.S. 680 (1989) .......................................................... 22

*Hernandez v. Sessions,*
    872 F.3d 976 (9th Cir. 2017) ............................................. 31

*Hoye v. City of Oakland,*
    653 F.3d 835 (9th Cir. 2011) ...................................... 17, 18

*In re McVane,*
    44 F.3d 1127 (2d Cir. 1995) .............................................. 28

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & its Locs. 1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.,*
    590 F.2d 1139 (D.C. Cir. 1978) ........................................ 23

*Kennedy v. Bremerton School District,*
    142 S. Ct. 2407 (2022) ...................................................... 19

*Klein v. City of San Clemente,*
    584 F.3d 1196 (9th Cir. 2009) ...................................... 31, 32

*Lacey v. Maricopa County,*
    693 F.3d 896 (9th Cir. 2012) ............................................. 18

*Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.,*
    5 F.3d 1508 (D.C. Cir. 1993) ............................................ 28

*Malik v. Brown,*
    16 F.3d 330 (9th Cir. 1994) .............................................. 20

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

iii

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission,*
    138 S. Ct. 1719 (2018) ................................................................. 20, 22

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ........................................................... 32

*National Institute of Family and Life Advocates v. Becerra,*
    138 S. Ct. 2361 (2018) ................................................................. 14, 17

*O'Brien v. Welty,*
    818 F.3d 920 (9th Cir. 2016) ....................................................... 15, 16

*Perry v. Schwarzenegger,*
    591 F.3d 1147 (9th Cir. 2010) ......................................................... 25

*Planned Parenthood of Central & Northern Arizona v. Arizona,*
    718 F.2d 938 (9th Cir. 1983) ........................................................... 15

*Reich v. Montana Sulphur & Chem. Co.,*
    32 F.3d 440 (9th Cir. 1994) ............................................................ 28

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ....................................................................... 23

*Romero v. Northwest Area Foundation,*
    129 F. App'x 337 (9th Cir. 2005) .................................................... 29

*See v. City of Seattle,*
    387 U.S. 541 (1967) ....................................................................... 28

*State v. TVI, Inc.,*
    524 P.3d 622 (Wash. 2023) ............................................................. 18

*State v. TVI, Inc.,*
    No. 17-2-32886-3 SEA (Wash. Super. Aug. 9, 2023) ..................... 19

*Tandon v. Newsom,*
    141 S. Ct. 1294 (2021) ................................................................. 21, 22

*United States v. Goldman,*
    637 F.2d 664 (9th Cir. 1980) ....................................................... 30, 31

*Wayte v. United States,*
    470 U.S. 598 (1985) ....................................................................... 16

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ......................................................... 16

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND    iv
MEMORANDUM IN SUPPORT

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................... 13

**Statutes**

WASH. REV. CODE ANN. § 19.86.020 ............................................................. 25

WASH. REV. CODE ANN. § 19.86.085 ............................................................. 25

WASH. REV. CODE ANN. § 19.86.110 ............................................................. 25

WASH. REV. CODE ANN. § 19.86.120 ............................................................. 26

**Other Authorities**

*Abortion*, WASHINGTON STATE DEPARTMENT OF HEALTH ............................... 6

Blake M. Autry & Roopma Wadhwa, Mifepristone, LIBRARY OF MEDICINE,
    NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION (May 8, 2022) .............. 5

Errol R. Norwitz & Aaron B. Caughey, *Progesterone Supplementation and the
    Prevention of Preterm Birth*, 4 REVIEWS IN OBSTET. & GYNECOL. 60, 61
    (2011) ............................................................................................... 5

George Delgado, et al., *A case series detailing the successful reversal of the
    effects of mifepristone using progesterone*, 33 ISSUES IN LAW &
    MEDICINE 21, 21-31 (2018) ..................................................................... 5

*HIPAA Notice*, OBRIA MEDICAL CLINICS ..................................................... 6

Mitchell D. Creinin, et al., *Mifepristone Antagonization With Progesterone to
    Prevent Medical Abortion: A Randomized Controlled Trial*, OBSTETRICS
    & GYNECOLOGY 135(1), 158-165 (2020) ................................................... 8

*Our Services*, PLANNED PARENTHOOD OF GREATER WASHINGTON AND NORTH
    IDAHO ................................................................................................ 6

*Reproductive Rights Complaint Form*, Office of the Attorney General ...................... 8

Tatum Hunter, *You scheduled an abortion. Planned Parenthood's website
    could tell Facebook*, WASHINGTON POST (June 29, 2022) ................................. 7

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

v

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

**INTRODUCTION**

Plaintiffs Obria Group, Inc. and My Choices d/b/a Obria Medical Clinics PNW (together, the "Obria Ministry") are Christian pro-life medical non-profits that serve pregnant mothers, mothers of newborns, and fathers. Defendant Robert Ferguson openly opposes such organizations, having aligned himself with Planned Parenthood's pro-abortion mission. While he is entitled to those personal views, he is not entitled to use the authority of his office to harm those who disagree with him. Yet he has selectively targeted the Obria Ministry based on its religious speech and pro-life views by serving the ministry with wide-ranging, unfounded, and burdensome civil investigative demands (CIDs) that have caused it substantial injury. This is an offense to the Constitution, and the Court should issue a preliminary injunction to stop it.

Attorney General Ferguson has invoked the Washington Consumer Protection Act (WCPA) to serve the Obria Ministry with civil investigative demands that require extensive answers to interrogatories and production of documents on pain of judicial sanctions. He barely even attempts to show that statements of these nonprofits, which provide free services to their patients, concern "trade or commerce" subject to the WCPA. In fact, his demands span a period of *more than thirteen years*, far exceeding the WCPA's four-year statute of limitations. Nor does he identify any false or misleading statements by the Obria Ministry. He purports to be concerned with "possible" deceptive marketing about Abortion Pill Reversal (APR)—a treatment the Obria Ministry does not even provide—and unfair collection and use of consumer data. But he cites nothing to show any basis for suspicion on those topics, and he demands information and documents wholly unrelated to them. And even though the Obria Ministry has produced 1,500 pages of documents, that has not stopped AG Ferguson. He has gone on to serve similar demands on other organizations who work

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

1

ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, Arizona 85260
(480) 444-0020

with the Obria Ministry, burdening them with discovery obligations solely because they chose to associate with the ministry.

AG Ferguson's exorbitant demands are calculated to leverage the threat of sanctions under the WCPA to frustrate the Obria Ministry's Christian, pro-life mission. He has already obtained that predictable result and caused great harm to the Obria Ministry: he has chilled its speech, quashed its religious message, disrupted its relationships, and drained its resources. This unlawful enterprise violates the First and Fourth Amendments, and the Court should put a stop to it.

First, AG Ferguson's demands violate bedrock guarantees of the First Amendment: freedom of speech, freedom of religion, freedom of association, and the First Amendment privilege. He has chilled the Obria Ministry's speech about APR by serving it with retaliatory demands and by selectively enforcing the WCPA against the Ministry based on disagreement with his views on abortion. He has injured the Obria Ministry's free exercise of religion by using his discretionary enforcement authority to single out the ministry's religious views about abortion for hostile action. He has injured the Obria Ministry's freedom of association by harming its relationships with others. And he wrongly demands production of internal communications and documents from the Ministry that are protected by the First Amendment privilege. These actions all infringe on the Obria Ministry's First Amendment liberties and the Court should enjoin them.

Second, AG Ferguson's wildly expansive demands harm the Obria Ministry's rights under the Fourth Amendment, which prohibits the government from conducting unreasonable searches and seizures. The CIDs purportedly pertain to "possible past or current . . . unfair or deceptive acts and practices with respect to the marketing, advertising, and other representations [and] collection and use of consumer data." Yet the CIDs demand information that bears no relation to such

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

2

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

unnamed "possible past or current violations" and span a period three times the applicable statute of limitations. This is unreasonable and unconstitutional.

These constitutional violations irreparably harm the Obria Ministry and warrant an injunction against the demands.

## FACTUAL BACKGROUND

### *The Obria Ministry*

The Obria Group, Inc., began as a nonprofit pregnancy resource center founded in 1981 in California. Compl. ¶ 22. Its founder Kathleen Eaton Bravo had a painful experience with abortion that compelled her to dedicate her life to helping others facing unplanned pregnancies. *Id*. ¶¶ 23-24. Ms. Eaton Bravo reopened an existing pregnancy center, and as operations expanded, the organization became The Obria Group, Inc., *id*. ¶ 27-29, a network of licensed health clinics that serves thousands of women and men every year. *Id*. ¶ 30. The clinics have flourished by caring for those experiencing sexual health issues and unplanned pregnancies. *Id*. ¶ 31. The Obria Group's medical services, education programs, and myriad resources empower young women and men to make healthy, life-affirming choices. *Id*. ¶ 32. The Obria Group now has twenty affiliated medical clinics in California, Oregon, Washington, Iowa, Texas, and Georgia, and two mobile clinics. *Id*. ¶ 34.

Obria Medical Clinics PNW is an affiliate of the Obria Group. *Id*. ¶ 44. It began in 1984 as Crisis Pregnancy Center of Port Angeles. *Id*. ¶ 35. Services included pregnancy testing, non-abortion community referrals, and non-medical maternal and infant resources. *Id*. ¶ 36. In 2008, with the addition of a physician as Medical Director, the organization began to provide ultrasounds to determine gestational age and viability. *Id*. ¶ 38. In 2014, the organization was certified by the Accreditation Association for Ambulatory Health Care (AAAHC). *Id*. ¶ 39. AAAHC accredits healthcare organizations such as ambulatory surgery centers and health plans. *Id*. ¶ 40. AAAHC accreditation indicates high patient safety standards and permits

organizations to qualify for Medicare and Medicaid certification without separate federal and state regulatory inspections. *Id*. ¶ 41.

The Obria Ministry believes all human life is sacred and should be valued and respected as a gift from God. *Id*. ¶ 49. Obria Group Board members and officers are required to be committed Christians who actively participate in a local church. Ex. C at OG000026-29. The Obria Group's Board of Directors takes the confidentiality of its internal affairs seriously. All Board members are bound by a confidentiality agreement regarding information obtained in their role as Board members, including verbal presentations, written materials, discussions, and deliberations; failure to keep confidentiality should result in removal of a member from the Board. *Id*. at OG000033.

### *Obria Services*

All Obria Ministry medical services such as, pregnancy testing, sexually transmitted disease and infection (STD/STI) testing, ultrasounds, well-woman examinations and cancer screenings, when provided, are provided under the direction of a Medical Director. Compl. ¶ 62. The ministry serves patients without regard to age, race, income, nationality, religious affiliation, or disability. Ex. C at OG000017. It is committed to treating patients with kindness, compassion, and in a caring manner, and to providing honest and open answers to their patients' questions. *Id*. As part of its mission, the ministry provides all services at no cost to the patient and waive co-payments that would be required for services billed to insurance. Compl. ¶ 65.

The Obria Ministry websites clearly state it does not provide or refer patients for abortions. *Id*. ¶ 63f. The ministry does, however, provide accurate information about abortion procedures and risks. Ex. C at OG000017. All of its advertising and communication accurately describe the services it offers. *Id*. The ministry works to provide a safe environment by conducting criminal background checks for all

volunteers and staff who interact with patients. Compl. ¶ 63h. And the ministry complies with applicable legal and regulatory requirements for employment, financial matters, public disclosure., and medical standards, under the supervision of a licensed physician. Ex. C at OG000017.

The Obria Ministry does not currently provide APR. Compl. ¶ 69. Instead, the Obria Ministry stands ready to refer pregnant women who have taken the abortion drug mifepristone and changed their mind to healthcare providers who offer APR by administering progesterone to stop the abortion process. *Id*. ¶ 118. Progesterone is a hormone naturally produced by pregnant women and is commonly administered to address a variety of pregnancy-related concerns in women at risk of miscarrying. *See, e.g.*, Errol R. Norwitz & Aaron B. Caughey, *Progesterone Supplementation and the Prevention of Preterm Birth*, 4 REVIEWS IN OBSTET. & GYNECOL. 60, 61 (2011). Mifepristone, the first drug in the two-drug medication abortion regime, is a progesterone antagonist that can cause hemorrhaging and is meant to kill the developing fetus by starving it. Blake M. Autry & Roopma Wadhwa, Mifepristone, LIBRARY OF MEDICINE, NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION (May 8, 2022), https://www.ncbi.nlm.nih.gov/books/NBK557612/. If APR is begun quickly after taking mifepristone, it can counter mifepristone's effects. Indeed, one study showed that approximately two-thirds of pregnancies were successfully continued after APR, with no apparent risk of birth defects. George Delgado et al., *A case series detailing the successful reversal of the effects of mifepristone using progesterone*, 33 ISSUES IN LAW & MED. 21, 21-31 (2018). APR "does not appear to pose severe health risks to patients who receive it." *Bella Health & Wellness v. Weiser*, 115 Fed. R. Serv. 3d 690 (D. Colo. Apr. 15, 2023). The treatment is legal in forty-eight states, including Washington, and a law against it in Colorado has been enjoined. *See Bella Health &*

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

5

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Wellness v. Weiser*, No. 123CV00939DDDSKC, 2023 WL 6996860, at *1 (D. Colo. Oct. 21, 2023).[1]

### Patient Data Handling by the Obria Ministry and Abortion Providers

The Obria Ministry is subject to the patient information handling requirements of HIPAA. Compl. ¶ 71. The Obria Ministry holds patients' information in strict confidence and obtains patient releases and permissions where appropriate. *Id.* ¶ 72. It discloses patient information only as required by law. *Id.* ¶ 73. The Obria Group's website lists its legal duties concerning, uses of, and disclosures of patients' health information, and policies to protect patients' health information and maintain their privacy.[2]

In contrast, handling of patient data has been a repeated issue for the abortion providers that espouse views opposite to those of the Obria Ministry. Of the forty-six abortion clinics in Washington,[3] eleven are operated by Planned Parenthood,[4] which offers chemical and surgical abortions, STD testing, pregnancy testing, physical exams, adoption referral, and other functions related to reproduction.[5] Planned Parenthood has been criticized for negligent data practices that caused patient information—including abortion method, IP address, the specific Planned Parenthood clinic for the appointment, zip codes, phone type, and internet browser

---

[1] Vermont recently passed a bill to include "[p]roviding or claiming to provide services or medications that are purported to reverse the effects of a medication abortion" in its list of "Unprofessional Conduct" for healthcare providers. VT. STAT. ANN. tit. 3, § 129a(29).

[2] *HIPAA Notice*, OBRIA MEDICAL CLINICS, obria.org/terms-of-use/hipaa-notice/ (last visited Oct. 31, 2023).

[3] *Abortion*, WASHINGTON STATE DEPARTMENT OF HEALTH, https://doh.wa.gov/you-and-your-family/sexual-and-reproductive-health/abortion (last visited Oct. 31, 2023).

[4] PLANNED PARENTHOOD OF GREATER WASHINGTON AND NORTH IDAHO, https://www.plannedparenthood.org/planned-parenthood-greater-washington-north-idaho (last visited Oct. 31, 2023).

[5] *Our Services*, PLANNED PARENTHOOD OF GREATER WASHINGTON AND NORTH IDAHO, https://www.plannedparenthood.org/planned-parenthood-greater-washington-north-idaho/get-care/our-services (last visited Aug. 16, 2023).

| PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT | 6 | ALLIANCE DEFENDING FREEDOM<br>440 First Street NW, Suite 600<br>Washington, DC 20001<br>(202) 393-8690 |

version—to be shared with major tech companies.[6] In 2021, there was a breach of the "names, addresses, dates of birth, diagnoses, treatments and prescription information[, and] Social Security and financial information" of Planned Parenthood clients.[7] That same year, another Planned Parenthood failed to secure the personal information of 400,000 patients.[8]

### AG Ferguson's Abortion Advocacy and Hostility to Pregnancy Centers

AG Ferguson has made no secret of whose side he takes on these questions. He is open about his support for Planned Parenthood, having warned in 2015 against "unfounded allegations" against the abortion provider.[9] In 2019, AG Ferguson said his office "worked very closely, obviously, with Planned Parenthood" in abortion litigation.[10] Planned Parenthood calls him a "champion for abortion access"[11] and "reproductive health."[12] He recently celebrated "Abortion Provider Appreciation Day"

---

[6] Tatum Hunter, *You scheduled an abortion. Planned Parenthood's website could tell Facebook*, WASHINGTON POST (June 29, 2022), https://www.washingtonpost.com/technology/2022/06/29/planned-parenthood-privacy/.

[7] Brittany Renee Mayes, *D.C.'s Planned Parenthood reports data was breached last fall*. WASHINGTON POST (Apr. 16, 2021), https://www.washingtonpost.com/dc-md-va/2021/04/16/data-breach-planned-parenthood-dc/.

[8] Gregory Yee & Christian Martinez, *Hack exposes personal information of 400,000 Planned Parenthood Los Angeles patients*. L.A. TIMES (Dec. 1, 2021), https://www.latimes.com/california/story/2021-12-01/data-breach-planned-parenthood-los-angeles-patients.

[9] Press Release, Office of the Attorney General, AG Ferguson: No evidence to support allegations against Planned Parenthood in Washington (Nov. 16, 2015), https://www.atg.wa.gov/news/news-releases/ag-ferguson-no-evidence-support-allegations-against-planned-parenthood-washington.

[10] *Gov. Inslee and AG Bob Ferguson on their fight to protect Planned Parenthood*, KING-TV (Aug. 22, 2019), www.king5.com/video/news/gov-inslee-and-ag-bob-ferguson-on-their-fight-to-protect-planned-parenthood/281-184f1733-c5ee-476a-996b-3891e2cf20e5.

[11] Planned Parenthood of Greater Washington and North Idaho (@PPGWNI), TWITTER (Feb. 24, 2023, 5:47 PM), twitter.com/PPGWNI/status/1629266790273683458.

[12] Planned Parenthood of Greater Washington and North Idaho (@PPGWNI), TWITTER (Mar. 28, 2023, 4:27 PM), twitter.com/PPGWNI/status/1640827880782561281

---

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

7

by participating in a forum with Planned Parenthood, local abortion providers, and abortion advocates.[13]

In contrast, AG Ferguson has shown open animus to organizations like the Obria Ministry that provide pregnancy services without performing abortions. Through an online form, he invites the public to report that they "[e]xperienced deception, harassment, or other misconduct at a crisis pregnancy center."[14] But he offers no invitation for patients to inform him if they experience "deception, harassment, or other misconduct" at an abortion clinic. And on October 23, 2023, he joined a letter with fifteen other state attorneys general that made sweeping accusations about pregnancy centers.[15] He criticized all centers that do not offer abortion[16] and specifically targeted APR as "an unproven and potentially risky medical protocol."[17]

---

[13] Press Release, Sen. Patty Murray, On Abortion Provider Appreciation Day, Murray, Cantwell, AG Ferguson Outline Path Forward in Fight to Protect Reproductive Health Care (Mar. 10, 2023) (www.murray.senate.gov/on-abortion-provider-appreciation-day-murray-cantwell-ag-ferguson-outline-path-forward-in-fight-to-protect-reproductive-health-care/).

[14] *Reproductive Rights Complaint Form*, Office of the Attorney General, https://fortress.wa.gov/atg/formhandler/ago/reproductiverights.aspx (last visited Oct. 31, 2023).

[15] Open Letter from Attorneys General Regarding CPC Misinformation and Harm (Oct. 23, 2023), https://oag.ca.gov/news/press-releases/attorney-general-bonta-leads-coalition-16-attorneys-general-open-letter.

[16] *Id*.

[17] *Id*. The letter implied that the mere study of APR sent three study participants by ambulance to the hospital for "severe vaginal bleeding." *Id*. This itself is misleading: in the actual study, two of the three women who needed emergency treatment for hemorrhaging received a placebo, not APR—mifepristone caused massive hemorrhaging, not progesterone. Mitchell D. Creinin, et al., *Mifepristone Antagonization With Progesterone to Prevent Medical Abortion: A Randomized Controlled Trial*, OBSTETRICS & GYNECOLOGY 135(1), 158-165 (2020), https://journals.lww.com/greenjournal/abstract/2020/01000/mifepristone_antagonization_with_progesterone_to.21.aspx.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

8

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

In all of this, AG Ferguson never identified any instance of a pregnancy center failing to secure consumer data, or mentioned Planned Parenthood's recent, large, and well-documented patient data failures. St. Hilaire Decl. ¶ 8. Neither has he served WCPA demands on Planned Parenthood, its affiliates, or any other abortion provider. Instead, he has focused on pregnancy centers expressing a Christian, pro-life message.

### AG Ferguson's Unreasonable Civil Investigative Demands

Amid this one-sided hostility to pregnancy resource centers, AG Ferguson served CIDs on the Obria Ministry to investigate "possible past or current violations" of the WCPA, which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Ex. A at 1; Ex. B at 1. The CIDs state that AG Ferguson is investigating "unfair or deceptive acts and practices . . . concerning services provided to Washington consumers, including . . . Abortion Pill Reversal," and "unfair acts or practices related to the collection and use of consumer data." Ex. A at 1; Ex. B at 1. They cite no basis for this suspicion. The CIDs require that the Obria Ministry answer interrogatories for a "relevant time period" of January 1, 2010, to the present, Ex. A at 6; Ex. B at 6, *inter alia*:

     a.    "relationships with *any* parent, affiliate, sister, licensee, franchisee, subsidiary, predecessor, or successor assignee(s)," Ex. A at 10; Ex. B at 10;

     b.    identities of *every* person who provided "accounting, book keeping, payroll, or tax preparation services," Ex. A at 11; Ex. B at 11;

     c.    all deposit and credit accounts, including the name of the institution, authorized signors, account numbers, Ex. A at 11; Ex. B at 11; and

     d.    identities, dates of association, health profession licensures, duties, pay status, and any familial relationship of "*all* directors, officers,

principals, agents, members, employees, contractors, and *volunteers*" associated with" the ministry, Ex. A at 11; Ex. B at 11 (italics added). They also demand, *inter alia*, production of:

a. "articles of incorporation, any original, amended or restated articles, bylaws, and operational/internal policies (e.g., whistleblower policies, conflict of interest policies, non-fraternization policies, etc.) *and any and all past iterations thereof*," Ex. A at 19; Ex. B at 18;

b. "*all* notices, agendas, and MINUTES for *every meeting* of YOUR Board of Directors . . . YOUR Medical Advisory Board . . . and/or general meetings of YOUR executive and/or operations team(s) (and any subcommittees thereof)," Ex. A at 19; Ex. B at 18;

c. "copies of *all* tax forms and related schedules or attachments prepared for YOU or on YOUR behalf that are not publically [sic] available through the Internal Revenue Service's Tax Exempt Organization Search feature (https://apps.irs.gov/app/eos/) *during the Relevant Time Period*." In addition, "the State seeks *any and all* DOCUMENTS filed with the Internal Revenue Service, [State] Department of Revenue, and any other taxing authority or revenue-collecting agency," Ex. A at 20; Ex. B at 20;

d. "*all* DOCUMENTS relating to draft and final financial statements, balance sheets, general ledger(s), and other financial disclosures, *from 2010 to the present*, including, *without limitation*, documents and calculations relied upon in creating such documents and/or provided to auditors, lenders, grantors, and/or donors," Ex. A at 20; Ex. B at 20;

e. *all* documents relating to operating expenses, Ex. A at 21; Ex. B at 20;

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

10

f. "*all* plans, policies, and procedures related to COMPENSATION . . . [including] *pension(s) or retirement account contributions*," Ex. A at 21; Ex. B at 21; and

g. "*all* DOCUMENTS reflecting payments or other transfers of value, including, *without limitation*, in-kind transfers to or from any affiliate organizations and/or their respective parent, subsidiaries, and/or affiliate ENTITIES," Ex. A at 25; Ex. B at 24 (capital lettering in originals, italics added).

While these demands purport to seek information about APR and data handling, many have nothing to do with those topics. In addition, while AG Ferguson invokes his authority under the WCPA to issue these requests, he seeks information going back to 2010—nearly a decade past the operative statute of limitations.

Counsel for the Obria Ministry conferred with AG Ferguson's office about the breadth of the CIDs. St. Hilaire Decl. ¶ 4. The ministry also provided hundreds of pages of responsive documents while also objecting to some interrogatories and requests because they seek information or documents not discoverable under the Washington Rules of Civil Procedure, and based on privilege, arbitrariness, vagueness, overbreadth, undue burden, relevance, unreasonableness, exceeding the scope of the demands, and infringement of free association. Exs. D and E. They also served supplemental responses restating many of the same objections and providing additional documents and information. Exs. F, G, and H. At no time during this correspondence has AG Ferguson identified a complaint or any other basis for his demands. St. Hilaire Decl. ¶ 8.

Still, the ministry's document production did not satisfy AG Ferguson. Instead, he issued CIDs to individuals and entities associated with the Obria Ministry and identified in its responses to the original CIDs, including one of the ministry's contractual partners. Exs. D and I. He has issued related CIDs to other parties

associated with and identified in the ministry's disclosures. He then issued letters to the ministry alleging failures to provide "full and complete responses" to the CIDs. Exs. J and K. The ministry served more supplemental responses, now totaling more than 1,500 pages of documents, to try to satisfy his demands. Exs. L and M.

These unfounded demands have harmed—and continue to harm—the Obria Ministry in several ways. Apart from the burden of responding to oppressive CIDs and successive deficiency letters, the demands have chilled the ministry's speech about APR. In particular, Obria PNW previously has spoken about APR, and would like to publish a brochure about it for social media and its clinics, but it has not said anything further publicly amid AG Ferguson's demands. Compl. ¶ 119-120. The demands have also harmed the ministry's speech and associational relationships with its contractual partners, and has diminished its use of those services because of the strain caused in those relationships. *Id.* ¶ 172. The demands have thus chilled both the ministry's current relationships with other groups and its ability to form new relationships to advance its mission. *Id.* ¶ 113. So the Obria Ministry filed this lawsuit—and this motion—to lift the cloud of AG Ferguson's unlawful CIDs.

## **ARGUMENT**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). The Obria Ministry meets this standard here.

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

12

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

**I.      The Obria Ministry is likely to succeed on its constitutional claims.**

**A.      AG Ferguson's demands violate the First Amendment.**

**1.      The CIDs violate the Ministry's freedom of speech.**

AG Ferguson has violated the First Amendment's speech protections by serving the CIDs on the Obria Ministry to burden its speech based solely on its pro-life content and viewpoint, including its discussion of APR, a matter of public policy that has grown even more salient in the wake of *Dobbs*. "[S]peech concerning public affairs is . . . the essence of self-government," *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964), and it is "fundamental . . . that governments have no power to restrict expression because of its message, its ideas, its subject matter, or its content," *NIFLA v. Becerra*, 138 S. Ct. 2361, 2371 (2018) (quotation omitted). Regulating the content of speech "poses the inherent risk that the Government seeks not to advance a legitimate regulatory goal, but to suppress unpopular ideas or information." *Id.* at 2374 (quotation omitted). That is exactly what AG Ferguson has achieved here: the enforcement threat of those CIDs and the burden imposed in responding to them has chilled the Obria Ministry's speech about APR. Compl. ¶ 120. And that is particularly troubling because the Washington Consumer Protection Act does not even apply to the free services that this non-profit ministry offers. *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007). AG Ferguson's content- and viewpoint-based enforcement action is a double violation of the First Amendment's speech protections, both as unlawful retaliation and as selective enforcement.

First, AG Ferguson's actions are unlawful retaliation against protected speech. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). A plaintiff is subject to unlawful retaliation if "(1) he was engaged in a constitutionally protected activity, (2)

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

13

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quotation omitted). If a plaintiff proves these elements, "the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *Id*.

These elements are met here. The Obria Ministry has engaged in constitutionally protected speech advancing a pro-life message, including providing information about APR. Compl. ¶ 119; *see Planned Parenthood of Cent. & N. Ariz. v. Arizona*, 718 F.2d 938, 944 (9th Cir. 1983). So by subjecting the ministry to extensive and invasive investigations of that speech about a treatment it doesn't even perform, much less profit from, AG Ferguson has engaged in conduct that would chill a person of ordinary firmness from continuing to engage in protected speech—in fact, it *has* chilled that speech. Compl. ¶¶ 120-23; *see White v. Lee*, 227 F.3d 1214, 1228–29 (9th Cir. 2000) (holding HUD investigation into plaintiffs who vocally opposed multi-family housing facility chilled plaintiffs' speech). And the Obria Ministry's pro-life messaging "was a substantial or motivating factor" in AG Ferguson's decision to issue the CIDs. *O'Brien*, 818 F.3d at 932. He has referred to pro-life pregnancy centers as "insidious," Compl. ¶ 80, and has placed opposition to the pro-life cause as a central agenda item for his office, *id*. ¶¶ 90–100. Not only that, but he ignores well-established data breaches by pro-abortion groups while investigating the ministry without any stated evidentiary support. *Id.* ¶ 140. The Obria Ministry is thus likely to succeed on its retaliation theory.

Second, AG Ferguson has selectively enforced the law based upon viewpoint. "[A]lthough prosecutorial discretion is broad, it is not unfettered." *Wayte v. United States*, 470 U.S. 598, 608 (1985) (cleaned up). In a selective enforcement claim, "a plaintiff must demonstrate (1) he was similarly situated in material respects to other

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

14

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

1    individuals against whom the law was not enforced, and (2) the selective enforcement

2    infringed a constitutional right." *Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th

3    1122, 1136  (D.C. Cir. 2023); *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir.

4    2011).

5          Regarding the first element, parties "are similarly situated when their

6    circumstances present no distinguishable legitimate prosecutorial factors that might

7    justify making different prosecutorial decisions with respect to them." *Branch*

8    *Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quotation omitted). Here,

9    AG Ferguson overlooks dozens of reproductive health-related organizations while

10   targeting the Obria Ministry. The similarities these organizations share with the

11   ministry include clientele—*i.e.*, women and men seeking reproductive health

12   services—and many services they provide—*e.g.*, pregnancy testing, STD testing,

13   breast and pelvic examinations, adoption referrals, etc. They also handle similar

14   data. Yet AG Ferguson declines to investigate reproductive health-related

15   organizations that share his view on abortion, despite multiple recent and significant

16   exposures of patient data, while imposing unfounded and overbroad demands on the

17   ministry, which does not share his view. As with California's action in *NIFLA*, AG

18   Ferguson's action here "covers a curiously narrow subset of speakers." 138 S. Ct.

19   2361, 2377 (2018).

20         Regarding the second element, AG Ferguson's selective enforcement of the

21   WCPA "amounts to viewpoint discrimination in violation of the First Amendment."

22   *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998), *as amended on denial of*

23   *reh'g* (July 29, 1998). "[G]overnment favoritism in public debate is so pernicious to

24   liberty and democratic decisionmaking that viewpoint discrimination will almost

25   always be rendered unconstitutional." *Frederick Douglass Found.*, 82 F.4th at 1141

26   (quotation omitted). AG Ferguson has declared his hostility toward pro-life pregnancy

27   centers and does not hide his affinity for abortion providers; this is a central feature

28   PLAINTIFF'S MOTION FOR
     PRELIMINARY INJUNCTION AND          15
     MEMORANDUM IN SUPPORT

of his political persona. This suffices to establish discriminatory intent. *See Hoye*, 653 F.3d at 854-55. Such intent can also be inferred from the fact that Defendant has singled out from among similarly situated entities only those promoting a pro-life point of view. *Frederick Douglass Found.*, 82 F.4th at 1140.

These actions have injured the Obria Ministry. Proving a First Amendment violation does not require a plaintiff to "show his speech was actually inhibited or suppressed" if "an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (quotation omitted). Nevertheless, the Obria Ministry has already suffered that harm here. AG Ferguson's actions have chilled the ministry's current speech about APR and hampered its ability to speak further about APR in the way it otherwise would. Compl. ¶ 120. This has also chilled the ministry's speech through its contractual partners. *Id.* ¶ 123.

Notably, this is not the first time AG Ferguson issued CIDs that violate the First Amendment. He recently sued a for-profit solicitor of charitable contributions, alleging that the business was deceiving consumers into believing it was a nonprofit organization. *State v. TVI, Inc.*, 524 P.3d 622, 628 (Wash. 2023). In a unanimous ruling, the Washington Supreme Court held that "[c]ompanies have a First Amendment right to advertise their 'lawful activity'" and that AG Ferguson's WCPA claims infringed on TVI's First Amendment rights. *Id.* at 634. Because of this, the trial court granted attorneys' fees and costs to TVI. *See State v. TVI, Inc.*, No. 17-2-32886-3 SEA, slip op. at 6–7 (Wash. Super. Aug. 9, 2023). AG Ferguson had repeatedly—and falsely—asserted in public that TVI "'deceived' Washington consumers," *id.* at 9, which raised "concerns about government overreach" and "heavy-handedness." *Id.* at 16-17. He even went so far as to publicly state that TVI "can't hide behind the 1st Amendment to deceive customers," taking a "dismissive stance" towards a litigant "who raised constitutional challenges to the considerable

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

16

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

power the State wields" under the WCPA. *Id.* at 18–19. Though it should have been "fair to assume that the Attorney General, the State's chief legal officer, would view adherence to the Constitution as a paramount duty," *id.* at 23, he "fail[ed] to heed the First Amendment rights of those Washington entities." *Id.* at 21.

The Obria Ministry has every reason to believe that AG Ferguson will be even more aggressive against it, especially when he has publicly singled out pregnancy resource centers with open animus. The Court should nip these unlawful demands in the bud and issue a preliminary injunction against them.

### 2.    The CIDs violate the Ministry's freedom of religion.

Just as AG Ferguson's content- and viewpoint-based demands violate the ministry's freedom of speech, they also violate the First Amendment's Free Exercise clause, which "work[s] in tandem" with its protection of speech. *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022). There is no question that the Obria Ministry's pro-life beliefs are sincere and "rooted in religious belief," and its statements in support of APR are directly related to that belief. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994), *supplemented*, 65 F.3d 148 (9th Cir. 1995). AG Ferguson has violated the Free Exercise clause by singling out these religious beliefs and statements about them for unfavorable treatment.

The Free Exercise clause forbids "governmental hostility" to religion, whether it be "overt" or "masked." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993). Thus, when government action "targets religious conduct for distinctive treatment," it cannot be "shielded by mere compliance with the requirement of facial neutrality." *Id.* "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021); *Masterpiece Cakeshop, Ltd. v. Colorado C.R. Comm'n*, 138 S. Ct. 1719, 1731 (2018).

As the Ninth Circuit recently explained in a landmark en banc ruling, government action that is not neutral to religion will be upheld only if it "satisfies strict scrutiny." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023) (en banc). AG Ferguson's actions fail to pass the test of neutrality for three reasons set forth by the Ninth Circuit in *Fellowship of Christian Athletes*.

"First, a purportedly neutral 'generally applicable' policy may not have 'a mechanism for individualized exemptions,'" *id.*, that allows the government "to decide which reasons for not complying with the policy are worthy of solicitude on an ad hoc basis." *Fulton*, 141 S. Ct. at 1879 (internal quotations omitted). "[T]he mere existence of a discretionary mechanism to grant exemptions can be sufficient to render a policy not generally applicable, regardless of the actual exercise." *Fellowship*, 82 F.4th at 687-88. That is exactly what AG Ferguson has exercised here: discretionary authority under the WCPA to target organizations that make statements with which he disagrees. He has invoked that authority against those whose views he dislikes, and left alone the others.

Second, government action is not neutral if it "treat[s] any comparable secular activity more favorably than religious exercise." *Fellowship*, 82 F.4th at 686 (citing *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021)). "[W]hether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id*. Here, Planned Parenthood and the Obria Ministry are similarly situated in their clientele and in many of the services they provide, save for abortion. Yet AG Ferguson has looked the other way with regard to Planned Parenthood's well-documented data breaches while singling out the ministry for investigation without any evidence of such a failure. And he has threatened enforcement against the Obria Ministry over its mere statements about APR—a service it does not even provide.

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

18

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

Third, the government may not act in a manner "hostile to . . . religious beliefs" or inconsistent with the Free Exercise Clause's bar on even "subtle departures from neutrality." *Masterpiece Cakeshop*, 138 S. Ct. at 1731 (citation omitted); *Lukumi*, 508 U.S. at 534. AG Ferguson's campaign to investigate the Obria Ministry's religious messaging—divorced from any actual services it provides, much less a consumer relationship—evinces "hostility" that is "neither subtle nor covert." *See Fellowship*, 82 F.4th at 690. Here, hostility is readily apparent from AG Ferguson's many statements above showing overt animus to pregnancy care centers.

Thus, AG Ferguson's hostile actions are subject to strict scrutiny, a stringent standard they cannot survive. AG Ferguson's threat of civil sanctions places a substantial burden on the Obria Ministry's religious speech, which arises directly out of its Christian belief that all life is sacred and created by God. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). AG Ferguson lacks a compelling state interest to investigate that speech. Even if the WCPA's pro-consumer purposes were compelling, that law does not even apply, since there is no relevant "trade or commerce" here, *Browne*, 525 F. Supp. 3d at 1254, and the Obria Ministry's statements about APR concern a treatment that it does not even provide to patients, much less profit from. Compl. ¶ 69. Nor are AG Ferguson's demands narrowly tailored—he cannot "show that measures less restrictive of the First Amendment activity could not address its interest." *Tandon*, 141 S. Ct. at 1296-97. Because AG Ferguson "permits other activities" by Planned Parenthood despite its well-established data breaches, he cannot show that any such concerns he has about the Obria Ministry—for which he has cited no evidence—make it somehow "more dangerous than those activities" he allows from Planned Parenthood. *Id*. at 1297. AG Ferguson's targeting of the ministry's religious speech cannot survive strict scrutiny and the Court should enjoin his unlawful CIDs.

### 3.   The CIDs violate the Ministry's freedom of association.

AG Ferguson's groundless demands have also harmed the Obria Ministry's freedom of association by damaging its working relationships. "[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). These First Amendment associational rights apply "not only to the organization itself, but also to its staff, members, contributors, and others who affiliate with it." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., & its Locs. 1093, 558 & 25 v. Nat'l Right to Work Legal Def. & Ed. Found., Inc.*, 590 F.2d 1139, 1147 (D.C. Cir. 1978). Unconstitutional actions that infringe on the freedom of association "can take a number of forms." *Roberts*, 468 U.S. at 622. These include penalizing individuals for membership in a disfavored group and interfering with the group's internal affairs. *Id.* at 622-23.

Thus, the government infringes on free association when it issues baseless investigative process. A plaintiff can establish a violation of its free association right in this context by showing "enforcement of the subpoenas will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988). The "evidence offered need show only a reasonable probability that the compelled disclosure . . . will subject [associates] to threats, harassment, or reprisals from either Government officials or private parties." *Id.* at 350 n.1.

Again, those consequences have already occurred. The Obria Ministry identified certain of its partners and vendors, but objected that AG Ferguson's demands for disclosure of its "volunteers, staff, donors[,] and others (both individuals

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

20

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

and entities)" would stifle the First Amendment's "guaranty of freedom of association." Exs. D and E. And that is exactly what happened. AG Ferguson then served oppressive demands on the ministry's vendors and other organizational partners. That has damaged the Obria Ministry's relationships with these other organizations, who know that they must now respond based solely on the fact that they have done business with the ministry. Several of those organizations have expressed displeasure at coming under investigation for associating with the Obria Ministry, which has diminished the work it does with those organizations as a result. Compl. ¶¶ 112-13. The stigma of these CIDs jeopardizes both the ministry's ability to associate with those organizations and its ability to associate with others for the same purpose.

In addition, AG Ferguson demands that the Obria Ministry identify names, relationship to the ministry, business and home addresses, telephone numbers, and email addresses of *all* auditors, bookkeepers, payroll service providers, tax preparers, directors, officers, principals, members, employees, agents, contractors, *and volunteers*. Requiring identification of persons and entities with no relation to the stated subject of his demands both discourages new associations with the Obria Ministry and encourages withdrawal from existing relationships.

### 4. The CIDs violate the Ministry's First Amendment privilege.

Even further, much of what AG Ferguson demands regarding the Obria Ministry's other associational memberships is protected by First Amendment privilege. Invoking that privilege requires a showing "that enforcement of the [discovery requests will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Brock*, 860 F.2d at 350. Once that showing is made, the burden shifts to the government to "demonstrate

that the information sought . . . is rationally related to a compelling governmental interest . . . [and] the 'least restrictive means' of obtaining the desired information." *Id.* (quotation omitted).

"The question is therefore whether the party seeking the discovery 'has demonstrated an interest in obtaining the disclosures it seeks . . . which is sufficient to justify the deterrent effect . . . on the free exercise . . . of [the] constitutionally protected right of association." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1161 (9th Cir. 2010) (quotation omitted). The government "must show that the information sought is *highly relevant* to the claims or defenses in the litigation—a more demanding standard of relevance than that under [FED. R. CIV. P. 26]." *Id.* (emphasis added). "The request must also be carefully tailored to avoid unnecessary interference with protected activities, and the information must be otherwise unavailable." *Id.* In close cases, "[w]here the First Amendment is implicated, the tie goes to the speaker." *Fed. Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 474 (2007).

With remarkable boldness, AG Ferguson demands a slew of internal, nonpublic information about the Obria Ministry's relationships with others:

- agreements with healthcare providers who lawfully provide APR;
- training provided to persons "*employed* by, *volunteering* for, *contracting* with, or *otherwise associated* with" the ministry;
- the identities of the trainers and employees, volunteers, and contractors who received the training;
- current and previous iterations of governing documents, "including, *without limitation*," articles, bylaws, and "operational/internal polices" like whistleblower, conflict of interest, and non-fraternization policies; *all* notices, agendas, and minutes for *every* meeting of the ministry's boards of directors, medical advisory boards, and "general meetings of YOUR executive and/or operations team(s), and any subcommittees thereof";

- "all DOCUMENTS relating to certificates and licenses held or maintained by HEALTH CARE PROVIDERS employed by, contracting with, volunteering for, providing services on [the ministry's] behalf, and/or affiliated with [the ministry], without limitation [sic] any applications and corresponding documents submitted during the [thirteen-year] Relevant Time Period";

- "*all* DOCUMENTS relating to *draft and final* financial statements, balance sheets, general ledger(s), and other financial disclosures, *from 2010 to the present*, including, *without limitation*, documents and calculations relied upon in creating such documents and/or provided to auditors, *lenders*, grantors, and/or *donors*."

(Italics added.)[18]  Hardly narrow, AG Ferguson casts his net to catch as many of the ministry's associations as possible without any relationship to the purported topics of his CIDs, much less to the "trade or commerce" the WCPA regulates.

The Obria Ministry has shown both the "harassment" and "chilling" elements of the tests above. First, AG Ferguson has already served investigative demands on associates identified in the ministry's disclosures. Ex. I. In deficiency letters, he reasserts demands for the identities of and information about individuals and organizations with whom the ministry have associated throughout its lawful activities. Exs. J and K. These demands extend not only to directors and paid executives, employees, and contractors, but also donors and unpaid volunteers who give money and time to serve clients in difficult circumstances, and have no involvement with the ministry's public statements or its handling of consumer data.

---

[18] Besides the overarching First Amendment objections referred to in Section I.A., *supra*, the Obria Group specifically asserted the First Amendment privilege in response to Interrogatories 1, 3–6, 11, 12, 14, and 18, and to RFP 5, 11, and 22. Ex. E. Obria PNW asserted the privilege in response to Interrogatories 1, 3–6, 11–13, 15, and 23, and RFP 5, 6, 8, 12, 14, and 18–21. Ex. D.

And AG Ferguson has already begun investigations into entities identified in the ministry's responses to his CIDs. So it is reasonable to infer from his persistence in seeking more information about more people and entities that he intends to similarly target others. And as explained above, complying with his demands has had, and will continue having, a chilling effect on the Obria Ministry's associations. None of this is relevant—much less "highly relevant"—to a legitimate claim. The Court should enjoin it.

### B.   AG Ferguson's demands violate the Fourth Amendment.

AG Ferguson's demands also violate the Fourth Amendment, which "requires that [a] subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome." *See v. City of Seattle*, 387 U.S. 541, 544 (1967). "The relevance of the sought-after information is measured against the general purposes of the agency's investigation, 'which necessarily presupposes an inquiry into the permissible range of investigation under the statute.'" *In re McVane*, 44 F.3d 1127, 1135–36 (2d Cir. 1995) (quoting *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resol. Tr. Corp.*, 5 F.3d 1508, 1516 (D.C. Cir. 1993)). AG Ferguson's CIDs abuse his authority under the WCPA and vastly exceed the limits of the Fourth Amendment.

### 1.   The CIDs far exceed the scope of what the Fourth Amendment permits.

Legal process such as a civil investigative demand "will not be enforced if the party being investigated proves it is overbroad or unduly burdensome." *Reich v. Montana Sulphur & Chem. Co.*, 32 F.3d 440, 448 (9th Cir. 1994). A subpoena is enforceable only if "the agency possesses the investigative authority" and "the evidence sought is relevant and material to the investigation." *Groves v. State of Wash.*, 863 F.2d 886 (9th Cir. 1988) (table). Here, the WCPA does not provide that

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

24

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

authority, since it requires a connection "trade or commerce," which does not apply to the services that the Obria Ministry provides here without any charge to patients. WASH. REV. CODE ANN. § 19.86.020. For example, the court in *Browne* held the WCPA did not apply to an information clearinghouse and ratings service that collected data and then provided that data to consumers free of charge, since "[n]o assets or services are sold to people who visit the site" and "no charge is levied against attorneys or references who choose to provide information." 525 F. Supp. 2d at 1254; *see also Romero v. Nw. Area Found.*, 129 F. App'x 337 (9th Cir. 2005) (noting there is "no sense in which [a constructive charitable trust] is generally engaged in commercial activities contemplated by the statute."); *Dedication & Everlasting Love to Animals v. Humane Soc. of U.S., Inc.*, 50 F.3d 710, 712 (9th Cir. 1995) ("[S]olicitation of contributions by a nonprofit organization is not trade or commerce."). Here too, the Obria Ministry does not charge patients for their services, Compl. ¶ 65, and the statements that AG Ferguson investigates concern a treatment that the ministry does not even offer. His demands thus exceed the scope permitted by the Fourth Amendment.

The scope of the CIDs is also vastly overbroad in the materials they reach. That is true under both the Fourth Amendment and under Washington law, which forbids "unreasonable or improper" demands, WASH. REV. CODE ANN. § 19.86.085, and does not require "disclosure of any documentary material which would be privileged" or otherwise not required "by a subpoena duces tecum issued by a [Washington] court," *id*. § 19.86.110(3). The stated purpose of the CIDs is to investigate "possible . . . unfair or deceptive . . . marketing, advertising, and other representations concerning services provided to Washington consumers . . . as well as unfair acts or practices related to the collection and use of consumer data." But it strains credulity to believe that the CIDs' demands for the identities of the ministry's accountants, employees, and *volunteers*; "all past iterations" of its articles of incorporation, whistleblower

25

policies, and bylaws; complete minutes of every board and subcommittee meeting; obscure tax schedules; employee pension and retirement account contributions; and documents provided to lenders and donors, *inter alia*, are relevant to the stated subject of his demands. And that is even more concerning with the expansive definition of "YOU" in the CIDs, which purports to reach not just Plaintiffs, but all of their affiliates. The Fourth Amendment does not permit fishing expeditions.

### 2. The CIDs demand information for a period of time far exceeding what the Fourth Amendment permits.

AG Ferguson's demands are also overbroad in the period of time they embrace. The CIDs demand information for a period spanning thirteen years—three times the WCPA's four-year statute of limitation. *See* WASH. REV. CODE ANN. § 19.86.120. Untethered to any allegation of wrongdoing—much less one he could reach with an enforcement action so far beyond the statutory limit—the period covered by these demands is the antithesis of a limited scope or a specific directive, and thus violates the Fourth Amendment. In *United States v. Goldman*, the Ninth Circuit affirmed a refusal to enforce a subpoena demanding tax records preceding the years that the government was investigating. 637 F.2d 664, 666 (9th Cir. 1980). The lack of a "reference to any transaction which might possibly afford a realistic expectation necessary to obtain the [earlier] documents" justified the district court's conclusion that the government had not met its burden. *Id.* at 667. The period of time encompassed by AG Ferguson's demands far exceeds any cause of action authorized by the WCPA.

## II. The CIDs will cause irreparable harm without an injunction.

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (cleaned up). This includes "[t]he loss of First Amendment

freedoms, for even minimal periods of time[.]" *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (cleaned up). As set forth above, AG Ferguson's unlawful demands have chilled the Obria Ministry's protected speech, discriminated against their viewpoint and their religious exercise, harmed their protected First Amendment association rights and damaged their working relationships with others, and burdened them with unwarranted production of documents in violation of the Fourth Amendment. Deprivation of those constitutional rights is an irreparable injury, and only an injunction can stop it from continuing.

## III.    The balance of equities and public interest favor the Obria Ministry.

Ninth Circuit "caselaw clearly favors granting preliminary injunctions to a plaintiff . . . likely to succeed on the merits of [its] First Amendment claim." *Klein*, 584 F.3d at 1208. "The balance of equities and the public interest thus tip sharply in favor of enjoining" these unlawful demands. *Id*. AG Ferguson faces no legitimate hardship in being denied an opportunity at selective harassment of speech and religion through fishing expedition into records and activities predating the statute of limitations by nearly a decade. The Obria Ministry, however, faces very real hardship. It must choose between risking sanctions, on one hand, or submitting to discriminatory and burdensome demands for sensitive information for which AG Ferguson's appetite has proved insatiable. To submit would be to alienate directors, employees, donors, volunteers, and vendors, while draining the ministry's resources through extensive responses to discovery requests. The Obria Ministry has shown it "likely will suffer irreparable harm if" AG Ferguson can proceed with his demands under these circumstances. *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights," *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation omitted), particularly "the 'significant public interest' in

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND          27
MEMORANDUM IN SUPPORT

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

upholding free speech principles" both as to the ministry and for "other people subjected to the same [demands]," *Klein*, 584 F.3d at 1208 (cleaned up).

## CONCLUSION

*Dobbs* returned "the authority to regulate abortion . . .  to the people and their elected representatives," 142 S. Ct. at 2279, to be determined through "the democratic process," *id*. at 2265. Yet AG Ferguson has worked to stifle that process with threats of enforcement calculated to silence one side of the debate. His actions violate the Obria Ministry's free expression, free religion, free association, and First Amendment privilege and constitute unreasonable searches. The Court should grant a preliminary injunction to protect these rights from irreparable harm and further the public's interest in avoiding constitutional violations.

\* \* \* \*

I certify that this memorandum contains 8,361 words, in compliance with the Local Civil Rules.

Respectfully submitted this 29th day of November, 2023.

*/s/ Lincoln Davis Wilson*

Kristen K. Waggoner, Wa. Bar No. 27790
Lincoln Davis Wilson, Wa. Bar No. 53764
Timothy A. Garrison, Mo. Bar No. 51033*
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
kwaggoner@ADFLegal.org
lwilson@ADFLegal.org
tgarrison@ADFLegal.org

Nathaniel L. Taylor, Wa. Bar No. 27174
Abigail St. Hilaire, Wa. Bar No. 48194
ELLIS, LI & MCKINSTRY PLLC
1700 7th Ave Suite 1810
Seattle, WA 98101

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

28

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone: 206-682-0565
ntaylor@elmlaw.com
asthilaire@elmlaw.com

*Counsel for Plaintiffs*
 **Motion for pro hac vice admission*
  *filed concurrently*

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

29

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that on November 29, 2023, I caused a true and correct copy of the foregoing document to be served via U.S. Mail upon the following:

    Robert Ferguson
    Office of the Attorney General
    1125 Washington Street SE
    PO Box 40100
    Olympia, WA 98504-0100

DATED: November 29, 2023.        */s/ Lincoln Davis Wilson*
                            Lincoln Davis Wilson

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION AND
MEMORANDUM IN SUPPORT

30

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690