The Honorable Tiffany M. Cartwright

1

2

3

4

5

6

7 **UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
8 **AT TACOMA**

9 OBRIA GROUP, INC. and MY CHOICES
d/b/a/ OBRIA MEDICAL CLINICS PNW, | NO. 3:23-cv-06093-TMC

10 Plaintiffs, | DEFENDANT'S MOTION TO DISMISS
AND OPPOSITION TO PLAINTIFFS'
11 | MOTION FOR PRELIMINARY
v. | INJUNCTION
12
ROBERT FERGUSON, in his official | NOTED FOR: February 29, 2024 at
13 capacity as Attorney General for the State of | 9:30 a.m.
Washington,
14 | WITH ORAL ARGUMENT
Defendant.
15

16

17

18

19

20

21

22

23

24

25

26

## TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................... 1

II.  BACKGROUND .......................................................................................... 2

     A.   Statutory Background ........................................................................ 2

     B.   Factual Background ........................................................................... 3

     C.   Procedural Background ...................................................................... 5

III. LEGAL STANDARD ................................................................................ 6

IV.  ARGUMENT ............................................................................................... 6

     A.   Obria Cannot Establish Standing or Ripeness ................................ 7

          1.   Obria has not alleged an injury in fact to support standing or constitutional ripeness ................................................................ 7

          2.   Obria's suit is not prudentially ripe ........................................ 11

     B.   The Complaint Does Not Plead a Constitutional Violation ........... 14

          1.   Obria's First Amendment claims fail ...................................... 15

               a.   Obria fail to allege a violation of their freedom of speech through non-self-enforcing CIDs ................................ 15

                    (1)   Obria's First Amendment retaliation claim falls short .................. 15

                         (a)   Obria fail to demonstrate they have been chilled by non-self-enforcing CIDs ..................................... 16

                         (b)   Obria's allegation of retaliatory motive is utterly unsupported by facts ............................................ 17

                    (2)   Obria's selective enforcement claim fails to show discriminatory effect and purpose ................................ 19

               b.   There is no violation of the First Amendment's Free Exercise Clause because the investigatory provisions of the CPA are facially neutral and generally applied ................ 22

               c.   Obria's freedom of association claims are unsupported ......................... 25

               d.   Obria's First Amendment privilege claim fails for the same reason as their association claim .......................................................... 29

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

e. Obria's selective enforcement Equal Protection claim must be dismissed for the same reasons as their selective enforcement First Amendment claim .................................................................................. 29

2. Obria's Fourth Amendment claim fails ............................................. 30

C. Obria Are Not Entitled to a Preliminary Injunction ................................. 31

1. Obria have not established a likelihood of success on the merits .................. 31

2. Obria cannot show irreparable harm in the absence of a preliminary injunction ............................................................................................... 31

3. The balance of equities and public interest weigh strongly against a preliminary injunction ............................................................................... 33

D. The Court Should Award the AGO Attorney Fees .................................... 34

V. CONCLUSION ............................................................................................ 35

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

# I.    INTRODUCTION

As Washington's chief law enforcement officer, the Attorney General safeguards the public by enforcing Washington's laws, including the Washington Consumer Protection Act (CPA). The Attorney General's Office (AGO) has broad authority to investigate potential violations of the CPA, including through the issuance of Civil Investigative Demands (CIDs). In May 2022, the Consumer Protection Division of the AGO began investigating Plaintiffs (collectively Obria) for potential CPA violations, serving them each a CID. Obria objected to the CIDs on various grounds and asked for additional time to move to modify them. The AGO agreed. Ultimately, Obria decided *not* to move to modify the CIDs and to instead cooperate with the investigation. Now, almost two years later, Obria claim the CIDs are causing them irreparable injury, and ask this Court to enjoin any future hypothetical state-court CID enforcement action. This is untenable as a matter of law and policy.

As court after court has found while rejecting lawsuits just like this one—including two federal district courts in the last month—targets cannot use the federal courts to attack ongoing state civil investigations, particularly when they have an effective alternative means to challenge non-self-enforcing state CIDs. *See, e.g.*, *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022); *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016); *Second Amend. Found. v. Ferguson*, No. 2:23-cv-01554-MJP, 2024 WL 97349 (W.D. Wash. Jan. 9, 2024); *First Choice Women's Resource Ctrs., Inc. v. Platkin*, No. 23-23076 (MAS) (TJB), 2024 WL 150096 (D.N.J. Jan. 12, 2024), *appeal filed*, No. 24-1111 (3d Cir.). Like these prior lawsuits, Obria's Complaint is long on unsupported theories but short on cognizable claims.

First, Obria fail to allege a concrete injury stemming from their voluntary compliance with the CIDs, which are not self-executing and which the AGO has not moved to enforce. Second, the case is prudentially unripe because Obria challenge an AGO investigation that remains ongoing, rests on hypotheticals and an incomplete factual record, and is not fit for judicial review at this time. Third, the Complaint fails because it does not allege facts sufficient

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

to show that the AGO violated Obria's constitutional rights. Finally, Obria have established none of the elements warranting the extraordinary relief of a preliminary injunction (PI). Ultimately, this is a case in search of a controversy. Obria's attempts to manufacture a cognizable injury from nearly two-year-old CIDs that they have substantially complied with should be rejected. The Attorney General's motion to dismiss should be granted and Obria's PI motion should be denied.

## II. BACKGROUND

### A. Statutory Background

Consumer protection law has long been "a field traditionally regulated by the states." *General Motors Corp. v. Abrams*, 897 F.2d 34, 41 (2d Cir. 1991). State "[l]aw-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). To that end, most state Attorneys General can investigate potential consumer protection violations by issuing a CID or subpoena. Anthony P. Dunbar, *Consumer Protection: The Practical Effectiveness of State Deceptive Trade Practices Legislation*, 59 Tul. L. Rev. 427, 466 (1984). Washington's CPA has authorized the Attorney General (AG) to issue CIDs since 1961. 1961 Wash. Sess. Laws, ch. 216, § 11, 1959.

Specifically, the CPA authorizes the issuance of CIDs "[w]henever the attorney general believes that any person (a) may be in possession, custody, or control of any [materials], which he or she believes to be relevant to the subject matter of an investigation of a possible violation of [the CPA] . . . , or (b) may have knowledge of any information which the attorney general believes relevant to the subject matter of such an investigation." RCW 19.86.110(1). The Washington CPA is to be "liberally construed" in service of its purpose "to protect the public and foster fair and honest competition." RCW 19.86.920.

While the CPA grants the AG broad enforcement authority, the Act includes procedural safeguards to ensure that investigations are justified and reasonable. The CID statute requires

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   the AGO to "[s]tate the statute" under which it is investigating, "the alleged violation of which

2   is under investigation," and "the general subject matter of the investigation[.]" RCW

3   19.86.110(2)(a). The AGO cannot make any request that would be "unreasonable or improper if

4   contained in a subpoena duces tecum, a request for answers to written interrogatories, or a

5   request for deposition upon oral examination[,]" nor may a CID "[r]equire the disclosure of any

6   documentary material which would be privileged, or which for any other reason would not be

7   required by a subpoena duces tecum." RCW 19.86.110(3)(a)–(b). The AGO is also generally

8   prohibited from disclosing CID responses absent consent or court order, ensuring that

9   investigatory materials remain confidential. *See* RCW 19.86.110(7). Any recipient may also

10  contest the CID by filing a petition in a Washington superior court to modify or set aside the

11  CID for "good cause[,]" generally within twenty days of receiving the CID. RCW 19.86.110(8).

12  And importantly here, CIDs are not self-executing; the AGO must file an enforcement petition

13  if the recipient fails to respond or cooperate and the state superior court has "jurisdiction to hear

14  and determine the matter so presented and to enter such order or orders as may be required to

15  carry into effect the provisions of this section." RCW 19.86.110(9). Thus, the AGO cannot

16  enforce a CID without state court review and approval.

17       If the AGO determines there has been a violation of the CPA based on its investigation,

18  it may bring an enforcement action. There is no statute of limitations for CPA actions brought

19  by the State. *See* RCW 4.16.160 ("except as provided in RCW 4.16.310, there shall be no

20  limitation to actions brought in the name or for the benefit of the state, and no claim of right

21  predicated upon the lapse of time shall ever be asserted against the state, including actions

22  asserting a claim for civil penalties under RCW 19.86.140").

23  **B.    Factual Background**

24       In May 2022, the AGO issued CIDs to Obria regarding potential CPA violations. Dkt. # 1

25  (Compl.) ¶¶ 101–02. The CIDs pertained to, among other things, "unfair or deceptive acts and

26  practices with respect to the marketing, advertising, and other representations concerning

services provided to Washington consumers, including, without limitation, representations relating to Abortion Pill Reversal," and "unfair acts or practices related to the collection and use of consumer data." *Id.* ¶ 103; *see* RCW 19.86.110(6).

As defined in these CIDs, Abortion Pill Reversal (APR) "means the administration of progesterone after the patient takes the mifepristone but before the misoprostol is taken." Dkt. # 4-2 at p. 3; *see also generally* Sara K. Redd, PhD, MSPH et al., *Medication Abortion "Reversal" Laws: How Unsound Science Paved the Way for Dangerous Abortion Policy*, Am J Public Health 113(2): 202–12 (Feb. 2023), https://www.ncbi.nlm.nih.gov/pmc/articles /PMC9850634/ (defining APR as "an experimental procedure involving the administration of a high dose of progesterone following the initial dose of mifepristone should a patient who is using [medication abortion] choose to continue their pregnancy"). According to the American College of Obstetricians and Gynecologists (ACOG), the nation's leading association of physicians providing health care for women with more than 60,000 members, "[c]laims regarding abortion 'reversal' treatment are not based on science and do not meet clinical standards." ACOG, *Facts Are Important: Medication Abortion 'Reversal' Is Not Supported by Science*, https://www.acog.org/advocacy/facts-are-important/medication-abortion-reversal-is-not-supported-by-science (last visited Jan. 18, 2024). ACOG explains that APR procedures "are unproven and unethical," because the limited studies into the procedures have had serious scientific flaws, "including no ethics approval, no control group, under-reporting of data, and no reported safety outcomes." *Id.*[1]

The CIDs sought interrogatory responses and the production of certain materials. Compl. ¶ 104. While Obria objected to the CIDs—including on First Amendment grounds—they did not seek to have the CIDs modified or set aside as permitted by state law, even after requesting and

---

[1] While the AGO disagrees with Obria's discussion of APR and the studies they rely upon, this Court need not make any determinations regarding the science or efficacy of APR to resolve this motion. Further, Obria provides no support for their contention that APR is "legal" in Washington as there is no statutory or regulatory guidance on this issue, nor have Obria cited any pertinent state medical authority determining that APR meets the standard of care. Dkt. # 4 (PI Mot.) at p. 5.

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

receiving additional time from the AGO to do so. *See* Dkt. # 5-1 at pp. 2–17; *see also* RCW 19.86.110(8). Instead, Obria objected but voluntarily responded. Compl. ¶¶ 109–10. And in April 2023, after the AGO reached out to Obria regarding certain deficiencies in their CID responses, they again voluntarily responded while reiterating certain objections. *Id.* ¶¶ 114–16. Obria do not allege that the AGO has requested any additional documents or information from them since they sent their supplemental responses and objections to the April 2023 deficiency letters, nor do they allege that the AGO has threatened an enforcement action to compel production of any objected-to materials. *See generally id.*

The AGO also issued third-party CIDs to entities providing marketing, website design, and search engine optimization services to Obria. *Id.* ¶ 111. Obria allege that these entities "reached out to Plaintiffs and expressed their dismay and displeasure" after they received the CIDs. *Id.* ¶ 113. Notably, however, Obria do not allege that any of these entities stopped doing business with them because of the CIDs. *See generally id.* ¶¶ 111–13. Instead, the Complaint alleges that *Obria* stopped using the services of those entities. *Id.* ¶ 113 ("*Plaintiffs* have not used the services of certain of those organizations since").

## C.    Procedural Background

After choosing not to move to modify or set aside the CIDs (despite the AGO giving additional time to do so), and after having substantially complied with the CIDs, Obria now come to this Court seeking a PI to halt any future hypothetical enforcement of the May 2022 CIDs in state court. The crux of the Complaint is Obria's belief that AG Ferguson wrongfully targeted them based on the AG's pro-choice beliefs. *See* Compl. ¶¶ 3, 79–100. Claiming that the AGO's investigation chilled their speech on APR and strained their relationships with third-party CID recipients, Obria request the Court declare that the AGO's CIDs violate the U.S. Constitution and issue a preliminary and permanent injunction against a future hypothetical enforcement action.

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### III.    LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a complaint must be dismissed if its allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Because Obria must demonstrate that this Court possesses Article III jurisdiction to hear their claims, the Court may consider all evidence on this issue. *See Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020) (requiring a "clear showing" of jurisdiction at the PI stage).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts supporting this theory. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 965 (9th Cir. 2018). Although the Court must accept as true the Complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021). The Court may consider "matters of public record" without converting the motion into one for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) (citation omitted).

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (cleaned up). Obria must make a "clear showing" that: (1) they are likely to succeed on the merits; (2) in the absence of a PI, they would likely suffer irreparable harm; (3) the balance of equities tips in their favor; and (4) a PI is in the public interest. Fed R. Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Where the government is a party, the balance of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

### IV.    ARGUMENT

Obria's complaint fails on multiple grounds. First, Obria cannot establish standing or ripeness. Second, even if they could, Obria's claims are legally and factually deficient. Third,

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Obria fails to make the clear showing necessary to warrant a PI. For these reasons, the AGO's

2   motion to dismiss should be granted and Obria's PI motion denied.

3   **A.      Obria Cannot Establish Standing or Ripeness**

4          Obria's Complaint does not meet the threshold requirements of standing and ripeness,

5   which limit federal jurisdiction to actual "cases" and "controversies." U.S. Const. art. III, § 2.

6   Obria allege no legally cognizable injury that meets Article III's concreteness and particularity

7   standards. Obria's suit is also unfit for judicial review on prudential ripeness grounds.

8   Accordingly, this case should be dismissed for lack of standing, insufficient ripeness, or both.

9          **1.      Obria has not alleged an injury in fact to support standing or constitutional
               ripeness**

10         Whether framed as a question of standing or ripeness, Article III mandates that federal

11  courts only exercise jurisdiction over cases or controversies involving a sufficient "injury in

12  fact." *Twitter, Inc.*, 56 F.4th at 1174. To meet this burden, a plaintiff must show an injury that

13  "involve[s] 'an invasion of a legally protected interest that is (a) concrete and particularized[,]

14  and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* at 1173 (quoting *Lujan v. Defs.*

15  *of Wildlife*, 504 U.S. 555, 560 (1992)). "In the First Amendment context, 'the injury-in-fact

16  element is commonly satisfied by a sufficient showing of self-censorship, which occurs when a

17  claimant is chilled from exercising his right to free expression.'" *Id.* at 1174 (quoting *Edgar v.*

18  *Haines*, 2 F.4th 298, 310 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 2737 (2022)). However, "[m]ere

19  allegations of a subjective chill are not . . . adequate . . . ." *Id.* (quoting *Lopez v. Candaele*,

20  630 F.3d 775, 787 (9th Cir. 2010)). Rather, any claim of self-censorship resulting from chilled

21  speech must be objectively reasonable. *Id.* at 1178 n.3 (recognizing that a plaintiff may suffer

22  injury "in the form of objectively reasonable chilling of its speech"); *see also Edgar*, 2 F.4th at

23  310 (self-censorship must be objectively reasonable to satisfy injury-in-fact requirement in First

24  Amendment cases). Obria's illusory injuries do not meet this standard.

25

26

1    First, Obria's lawsuit does not satisfy the "injury-in-fact" requirement because the CIDs

2  they challenge are not self-enforcing. *Twitter*, 56 F.4th at 1176 ("Twitter has not suffered an

3  Article III injury because the CID is not self-enforcing"); *see also Google*, 822 F.3d at 228

4  ("[N]either the issuance of the non-self-executing administrative subpoena nor the possibility of

5  some future enforcement action created an imminent threat of irreparable injury ripe for

6  adjudication."). In *Twitter*, the company sought to enjoin the Texas AG from investigating

7  Twitter's content-moderation policies and enforcing a CID. 56 F.4th at 1172. Twitter alleged the

8  investigation was unlawful retaliation for protected speech. *Id.* The Ninth Circuit found Twitter's

9  claims constitutionally unripe because "Twitter's allegations [did] not show that the issuance of

10 the CID [was] chilling its speech or causing it other cognizable injury that the requested

11 injunction would redress." *Id.* at 1179.[2] In particular, the Court reasoned that Twitter had not

12 suffered an adequate injury in fact because "[p]re-enforcement, Twitter never faced any penalties

13 for its refusal to comply with the CID," and enforcement was "no rubber stamp." *Id.* at 1176.

14 Under Texas law, the AG was required to petition for a court order to enforce the CID. *Id.*

15 Accordingly, the court reasoned "to the extent Twitter argues that any actions it has taken in

16 response to the CID create an Article III injury, those injuries are self-inflicted because the

17 actions were voluntary." *Id.*

18    The same constitutional defect is present here. As in *Twitter*, Obria claim injury based

19 on non-self-enforcing CIDs. Under Washington's CPA, only a court can require CID

20 compliance. Wash. Rev. Code § 19.86.110(9). Obria voluntarily complied with the CIDs over

21 the last year and a half and the AGO has not threatened to enforce any portions of the CID to

22 which Obria objected. While the AGO could theoretically still seek to compel this information,

23 the AGO would have to file an enforcement action to do so, at which time Obria could raise its

24 objections in state court. *Id.* In short, Obria is challenging "[a] non-self-executing CID that can

25

26    [2] The Ninth Circuit initially affirmed dismissal on prudential ripeness grounds, but on reconsideration, held Twitter's claims unripe on constitutional grounds. *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1173 (9th Cir. 2022).

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    be challenged when enforced (and could have been challenged before enforcement)[.]" *Twitter*,

2    56 F.4th at 1178. Thus, for Obria "to complain about the CID in this posture is to speculate about

3    injuries that have not and may never occur." *Id.* at 1176 (citation omitted); *see also First Choice*

4    *Women's Resource Ctrs.*, 2024 WL 150096 (sua sponte dismissing constitutional challenge to a

5    non-self-enforcing AGO CID for lack of subject matter jurisdiction and explaining that the

6    plaintiff's claims "would ripen only after the contingent future event that forms the basis of its

7    alleged injury occurs, i.e., if and when the state court enforces the Subpoena in its current form"

8    and that "were the Court to consider Plaintiff's claims prior to the state court enforcing the

9    Subpoena as written, the Court could only speculate as to whether the state court would, in fact,

10   find the Subpoena enforceable").

11       Nor have Obria alleged a legally cognizable pre-enforcement harm from the CIDs. First,

12   standing alone, Obria's conclusory statements that their speech has been chilled by the AGO's

13   investigation are plainly too vague to show injury in fact. PI Mot. at 2; *Twitter*, 56 F.4th at 1175

14   ("Twitter's naked assertion that its speech has been chilled is 'a bare legal conclusion' upon

15   which it cannot rely to assert injury-in-fact."). In an attempt to muster factual support, Plaintiff

16   Obria PNW (but, tellingly, not Obria Group) claims that it has discontinued operating its own

17   website following receipt of the CID and would have prepared a brochure on "the safety and

18   efficacy of APR" but for the CIDs. Compl. ¶¶ 120–21; PI Mot. at 2, 12. While complaining that

19   their speech has been chilled, Plaintiffs nevertheless concede that Obria PNW now relies on the

20   Obria Group website. Compl. ¶ 122; *see* Obria Medical Clinics, Obria Pacific Northwest,

21   https://obria.org/washington/ (last visited Jan. 22, 2024). What the Complaint fails to

22   acknowledge, however, is that an Obria Group "Washington" webpage includes a lengthy "APR

23   Fact" page which asserts, among other things, that "[a]n antidote is available to work to stop the

24   effects of the abortion pill" and explains that "[a]t Obria Medical Clinics we can help you learn

25   everything you need to know about the Abortion Pill Reversal procedure and where you can get

26   the help you need in your local community," and includes the local number for a Obria PNW

1    Clinic at the bottom of the webpage along with an exhaustive FAQ on APR. Fraas Decl. Ex. A,

2    Obria Medical Clinics, APR FAQ, https://obria.org/washington/faq-abortion-pill-reversal/ (last

3    visited Jan. 22, 2024). A second APR fact page is available from Obria PNW's site by clicking

4    "Learn" and "Abortion Pill Reversal." *See* Fraas Decl. Ex B. This directly undercuts Plaintiffs'

5    claim that the CIDs have chilled their APR speech. "A concrete injury need not be tangible but

6    'must actually exist.'" *Twitter*, 56 F.4th at 1175 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330,

7    340 (2016)).

8         Second, even if Obria had engaged in actual self-censorship following receipt of the

9    CIDs, their self-censorship was not objectively reasonable because the CIDs are not

10   self-executing. *See id.* at 1174, 1178 n.3. As the *Twitter* Court explained in distinguishing *White*

11   *v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000), where the Ninth Circuit found a retaliatory

12   investigation sufficiently chilled the targets' speech, there, "the plaintiffs would have had no

13   opportunity to challenge any aspect of the investigation until formal charges were brought, at

14   which point they could have faced a large fine." 56 F.4th at 1177 (citing *White*, 227 F.3d at

15   1222). By contrast, the Ninth Circuit found that there was no analogous harm to Twitter because

16   it could raise its First Amendment defense if the Texas AG moved to enforce its CID. *Id.* The

17   same distinction applies here, as Obria could have challenged the CIDs following their receipt

18   and could still raise constitutional objections if the AGO ever moves to enforce the CIDs. Thus,

19   the non-self-executing nature of the CIDs belies Obria's claim that they engaged in objectively

20   reasonable self-censorship.

21        Finally, Obria's claims that they "expended substantial time and financial resources in

22   trying to comply" with the CIDs and suffered injury to their relationships with certain third-party

23   vendors are illusory. Compl. ¶¶ 9, 113. Financial harm due to voluntary compliance with a

24   non-self-enforcing CID is not a cognizable injury. *Twitter*, 56 F.4th at 1176–77 (Twitter's claim

25   that the CID forced it to incur financial costs was not a legally cognizable harm because "the

26   enforceability of the CID remains an open question, so Twitter incurred these costs voluntarily");

*see also Second Amend. Found.*, 2024 WL 97349, at *4 (finding the court lacked subject matter jurisdiction over a challenge to the constitutionality of Washington CIDs and holding *Twitter* dispositive where "[a]ll of the costs and burdens associated with Plaintiffs' compliance with the CIDs do not evidence an injury in fact because they voluntarily chose to assume them").[3] And a close read of Obria's Complaint reveals that it was Obria's own decision to "diminish[] the work they do with . . . other organizations because of the strain caused by [the AGO's] CIDs." *Compare* Compl. ¶ 113 *with* Compl. ¶ 172. Obria's choice to discontinue work with certain vendors upon receipt of non-self-executing CIDs is a patently self-inflicted injury that cannot support Article III standing or ripeness.

**2. Obria's suit is not prudentially ripe**

Alternatively, Obria's claims should be dismissed because they are not prudentially ripe. *See, e.g.*, *Second Amend. Found.*, 2024 WL 97349, at *6 (alternatively dismissing a challenge to the constitutionality of Washington CIDs on prudential ripeness grounds). Separate from Article III considerations, courts may decline to exercise jurisdiction for prudential ripeness reasons. *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1142 (9th Cir. 2000). Prudential ripeness turns on (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Tingley v. Ferguson*, 47 F.4th 1055, 1080–81 (9th Cir. 2022) (citations omitted).

As to the first prudential ripeness factor, "[a] claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citation omitted). Courts considering suits by parties seeking to interfere with ongoing investigations routinely dismiss them on prudential ripeness grounds because they fail this standard. *See, e.g.*, *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 781 (9th Cir. 2000) ("[U]ncertainties" in whether an

---

[3] Additionally, as in *Twitter*, Obria does not seek damages, so "any past financial harm is not redressable by the injunctive relief it seeks and therefore provides no independent basis for jurisdiction." 56 F.4th at 1176.

1   investigation will result in findings or enforcement "render plaintiffs' action unfit for judicial

2   resolution at this time."); *Ammex, Inc. v. Cox*, 351 F.3d 697, 709 (6th Cir. 2003) ("Enforcement

3   of the [Michigan Consumer Protection Act] against [Plaintiff] is . . . tentative and subject to

4   agency reconsideration"); *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery*

5   *Bd. Serving Belmont, Harrison & Monroe Cntys.*, 150 Fed. Appx. 389, 397–98 (6th Cir. 2005)

6   ("Without knowledge of what that form [of any enforcement action] will be, this court does not

7   have the concrete context necessary for judicial review. Nor should this court deprive the

8   defendants of the opportunity to develop procedures and processes to handle any future

9   [enforcement actions]."); *Univ. of Med. & Dentistry of N.J. v. Corrigan*, 347 F.3d 57, 69 (3d Cir.

10  2003) (holding action to enjoin an investigation was not ripe because "an investigation is the

11  beginning of a process that may or may not lead to an ultimate enforcement action"); *Portland*

12  *Gen. Elec. Co. v. Myers*, No. Civ. 03-CV-1641-HA, 2004 WL 1722215, at *2 (D. Or. July 30,

13  2004); *Tex. State Troopers Ass'n*, No. A-13-CA-974-SS, 2014 WL 12479651, at *3 (W.D. Tex.

14  Apr. 16, 2014); *CBA Pharma, Inc. v. Harvey*, No. 3:21-cv-00014-GFVT, 2022 WL 983143, at

15  *3 (E.D. Ky. Mar. 30, 2022), *aff'd sub nom. CBA Pharma, Inc. v. Perry*, No. 22-5358, 2023 WL

16  129240 (6th Cir. Jan. 9, 2023). Recently, Judge Pechman granted the AGO's Motion to Dismiss

17  in a factually analogous case where the Second Amendment Foundation sought to challenge an

18  ongoing AGO investigation in federal court, claiming that the investigation was retaliatory.

19  *Second Amend. Found.*, 2024 WL 97349, at *6. There, the court found plaintiffs' First and Fourth

20  Amendment claims prudentially unripe because "the CID investigation remains ongoing" so

21  "[a]ny determination of whether the investigation is improper or the CIDs are unenforceable

22  relies on an incomplete factual record . . . which satisfies the first [prudential ripeness]

23  consideration." *Id.* This case is no different.

24          As Obria's Complaint acknowledges, the AGO's investigation is ongoing. As a result,

25  Obria's requested relief rests on contingencies, as the AGO may never seek to enforce the CIDs

26  given that Obria have substantially complied with them. *See Ass'n of Am. Med. Colls.*, 217 F.3d

1   at 781 ("An investigation, even one conducted with an eye to enforcement, is quintessentially

2   non-final as a form of agency action."); *CBA Pharma*, 2022 WL 983143, at *3 ("The

3   investigation in this matter has not concluded, which means that the Department has not even

4   decided whether it will, in fact, take any action . . . ."). The Court should find Obria's attempts

5   to seek relief from a hypothetical CID enforcement action associated with an ongoing AGO

6   investigation unripe for judicial review.

7         As to the second prudential ripeness factor, Obria will not face any hardship if it is denied

8   federal judicial review, much less a "direct and immediate hardship" that will require "an

9   immediate and significant change in the plaintiff's conduct of their affairs with serious penalties

10  attached to noncompliance." *Stormans*, 586 F.3d at 1126 (cleaned up). First, as discussed above,

11  Washington's CIDs are non-self-executing. Thus, Obria cannot be compelled to comply with the

12  CIDs absent a judicial order following a hypothetical CID enforcement action, and Obria "could

13  raise its objections to the [CIDs] if [the AGO] ever brings" such an action. *Google*, 822 F.3d at

14  225; RCW 19.86.110(9); *accord Second Amend. Found.*, 2024 WL 97349, at *6 (claims

15  prudentially unripe where plaintiffs could "simply cease voluntarily complying with the

16  investigation" and could bring their claims in a subsequent enforcement action). And second, if

17  the AGO brings an enforcement action against Obria, Obria can litigate their alleged grievances

18  then. Because Obria will have a judicial forum to litigate its claims if the AGO brings an

19  enforcement action, they cannot establish a direct and immediate hardship warranting federal

20  court review at this juncture.

21        In contrast, the AGO will be severely prejudiced if Obria's suit proceeds. *See Colwell v.*

22  *Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1129 (9th Cir. 2009) (finding claims unripe

23  where hardships to the court and the defendant outweighed alleged hardships to the plaintiffs);

24  *Thomas*, 220 F.3d at 1142 (same). This lawsuit seeks to force the AGO to litigate issues

25  substantially overlapping the merits of its investigation when the investigation is still ongoing.

26  Allowing Obria to proceed here—after declining to move to set aside or modify the CIDs in state

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    court, when state law provides for state judicial review if the AGO ever moves to enforce its

2    CIDs, and with no threatened enforcement action—is unnecessary and untenable. Allowing this

3    case to proceed would open the floodgates for state CID challenges in federal court, even when

4    robust procedural protections are available in state court. *Cf. First Choice Women's Resource*

5    *Ctrs.*, 2024 WL 150096, at *4 (noting that "principles of 'comity should make [federal courts]

6    less willing to intervene when there is no *current* consequence for resisting the subpoena and the

7    same challenges raised in the federal suit could be litigated in state court'" (quoting *Google*,

8    822 F.3d at 226 (emphasis and bracketed language added by district court))). The Court should

9    find Obria's attempts to enjoin a non-self-enforcing CID from a future, hypothetical state-court

10   enforcement action unripe and grant the AG's motion to dismiss.

11   **B.      The Complaint Does Not Plead a Constitutional Violation**

12           Obria are also unlikely to succeed on the merits because they fail to allege facts showing

13   how the AGO's issuance of non-self-enforcing CIDs violates their First or Fourth Amendment

14   rights. Notably, a CID does not regulate or burden speech; "merely investigating the

15   circumstances" of potentially unlawful conduct "violates no constitutional rights." *Ohio Civil*

16   *Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 628 (1986); *see also Secs. & Exch.*

17   *Comm'n v. McGoff*, 647 F.2d 185, 190 (D.C. Cir. 1981) (government subpoena did not regulate

18   speech).[4] If there comes a time when the AGO seeks to enforce the CIDs or files a CPA

19   enforcement action, Obria can raise their constitutional claims and defenses at that time.

20

21

---

22           [4] Obria's APR-related speech may also be commercial, which receives less protection under the First
     Amendment. *See First Resort v. Herrera*, 860 F.3d 1263, 1273–74 (9th Cir. 2017) (concluding that speech by CPCs
23   "related to the provision of certain medical services" is a "classic example[] of commercial speech"); *Cent. Hudson
     Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980). And as reflected in the CIDs, the AGO
     undertook its investigation to determine whether Obria made false, deceptive, or misleading statements. If they did,
24   this type of commercial speech is unprotected by the First Amendment. *First Resort*, 860 F.3d at 1271 (citing *Cent.
     Hudson*, 447 U.S. at 563) (the "Constitution affords no protection" to commercial speech that is "false or
25   misleading"). But given the AGO's ongoing investigation, this fact-based determination is premature—another
     reason why this case is unripe. *See Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 390 (2d Cir. 2022) (explaining how
     the superior court "declined to consider" free speech claim in CID challenge where the AG was still investigating
26   whether the target's statements were misleading or deceptive).

But even if this Court were to consider Obria's claims now, they must be dismissed because (i) Obria fail to allege a violation of their freedom of speech through the non-self-enforcing CIDs; (ii) there is no free exercise of religion violation because the investigatory provisions of the CPA are facially neutral and generally applicable; (iii) Obria's freedom of association and First Amendment privilege is not implicated; (iv) there is no equal protection violation because Obria have not plausibly alleged discriminatory purpose and effect; and (v) the non-self-enforcing CIDs do not run afoul of the Fourth Amendment. Accordingly, Obria are unlikely to succeed on the merits for these reasons as well and their claims must be dismissed.

### 1. Obria's First Amendment claims fail

#### a. Obria fail to allege a violation of their freedom of speech through non-self-enforcing CIDs

Obria boldly claim that AG Ferguson served CIDs "to burden [Obria's] speech *based solely* on its pro-life content and viewpoint" and argue that the issuance of CIDs was "a double violation of the First Amendment's free speech protections" claiming both (i) unlawful retaliation and (ii) selective enforcement. PI Mot. at 13 (emphasis added). Both of these arguments fail. Not only are Obria's arguments entirely unsupported, but they fundamentally misconstrue the AG's duty to investigate potential violations of state law, including potential misrepresentations to consumers. Because Obria fail to show that the issuance of a non-self-executing CID would chill an objective person, fail to identify an appropriate similarly situated entity, and fail to plausibly allege that their pro-life content and viewpoint substantially motivated the AGO's investigation, their freedom of speech claims are unlikely to succeed and should be dismissed.

#### (1) Obria's First Amendment retaliation claim falls short

To bring a First Amendment retaliation claim, the plaintiff must allege that (1) they "engaged in constitutionally protected activity"; (2) the defendant's actions would "chill a person of ordinary firmness from continuing to engage in the protected activity"; and (3) the protected

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    activity was a "substantial or motivating factor in [the d]efendant's conduct." *Sampson v. County*

2    *of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020) (citation omitted). A plaintiff must also

3    "establish that Defendants' retaliatory animus was the but-for cause of injury, meaning that the

4    adverse action against them would not have been taken absent the retaliatory motive." *Id.*

5    (cleaned up); *see also Lacey v. Maricopa County*, 693 F.3d 896, 917 (9th Cir. 2012).

6                                  **(a)    Obria fail to demonstrate they have been chilled by
                                            non-self-enforcing CIDs**

7

8             Obria PNW alleges its constitutionally-protected speech has been chilled, causing it to

9    discontinue operating its own website and rely on the Obria Group's website, stop making

10   "further public statements about APR," and avoid "prepar[ing] a brochure of materials on the

11   safety and efficacy of APR." Compl. ¶¶ 120–22. These purported harms are speculative and fail

12   to demonstrate a chilling of APR speech. *Supra* at 10-11 (explaining how Obria PNW continues

13   to provide information and advice to potential patients on APR through the Obria Group's

14   website including "frequently asked questions from the Abortion Pill Reversal website"); *see*

15   *also* Fraas Decl. Exs. A, B.

16           Nor, in any event, would the issuance of a non-self-executing CID chill a person of

17   ordinary firmness, given a CID recipient's ability to seek judicial review of the CID. *See*

18   RCW 19.86.110(8)–(9); *supra* at 10–11. This is fatal to Obria's retaliation claim. When courts

19   have found that a government investigation chilled a party's speech it involved much more

20   severe consequences than the issuance of non-self-enforcing CIDs. *See, e.g.*, *Ariz. Students'*

21   *Assoc. v. Ariz. Board of Regents*, 824 F.3d 858, 868 (9th Cir. 2016) (citations omitted)

22   (discussing cases where government chilled speech by "threatening or causing pecuniary harm";

23   "withholding a license, right, or benefit"; "prohibiting the solicitation of charitable donations";

24   "detaining or intercepting mail"; and "conducting covert surveillance of church services");

25   *White*, 227 F.3d at 1222, 1227, 1229 (government officials demanded plaintiffs cease their

26   speech and litigation efforts, advised them they had broken the law, threatened legal action and

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    exorbitant fines, and publicly claimed in news media that plaintiffs had violated the law);

2    *Twitter, Inc. v. Paxton*, No. 21-cv-01644-MMC, 2021 WL 1893140, at *4 (N.D. Cal. May 11,

3    2021) (9th Cir. 2022) (distinguishing *White* and other cases where "the potential consequences

4    of the [government] investigation were serious," such as "imposition of a substantial fine,"

5    "arrest," or "loss of custody of a child"), *aff'd*, 56 F.4th 1170. The CIDs issued to Obria are a far

6    cry from those cases. As discussed above, "the Office of the Attorney General has no authority

7    to impose any sanction for a failure to comply with its investigation," rather its only option in

8    such a circumstance is "to go to court." *Twitter*, 2021 WL 1893140 at *4. Thus, the receipt of a

9    non-self-executing CID would not chill a person of ordinary firmness. *See* RCW 19.86.110.

10                **(b)     Obria's allegation of retaliatory motive is utterly
                            unsupported by facts**

11

12        Nor has Obria pled facts from which this Court could plausibly infer that retaliating

13   against its "pro-life messaging" was the "substantial motivating factor," or even any factor, in

14   the investigation. *See Lacey*, 693 F.3d at 917 (plaintiff must allege facts establishing "'the

15   elements of retaliatory animus as the cause of injury,' with causation being 'understood to be

16   but-for causation.'") (quoting *Hartman v. Moore*, 547 U.S. 250, 260 (2006)). Courts presume

17   that a prosecutor has legitimate grounds for the actions they take, *Hartman*, 547 U.S. at 263, and

18   Obria's attempts to demonstrate otherwise are lacking.

19        First, Obria complain that the AGO had no "stated evidentiary support" for its

20   investigation. PI Mot. at 14. But the AGO is not required to provide targets with the evidentiary

21   basis for their investigations; Washington law only requires the AGO to state "the alleged

22   violation…under investigation" and "the general subject matter of the investigation."

23   RCW 19.86.110(2)(a). A target who believes there is no basis for the investigation may move to

24   have it set aside or may refuse to comply. RCW 19.86.110(8)–(9). Here, the AGO provided the

25   statutory basis and general grounds for its investigation in the CIDs, *see* Dkt. # 4-2 at p. 2,

26   Dkt. # 4-3 at p. 2, and Obria chose not to challenge them, *see* RCW 19.86.110(8).

1    Second, Obria complains about the AGO investigating its handling of patient data while

2    ignoring "data breaches by pro-abortion groups." PI Mot. at 14. But the CIDs do not inquire

3    about data breaches. Instead, they seek information regarding Obria's collection and treatment

4    of patient data including whether patient data was shared, sold, or exchanged with third parties.

5    *See* Dkt. # 4-3 at pp. 15–17 (Interrogatory Nos. 15–19). Unlike abortion-care providers which

6    are covered entities under the Health Insurance Portability and Accountability Act (HIPAA),

7    many crisis pregnancy centers (CPCs) are not. *See generally* Washington State Department of

8    Health,   *Abortion*,   https://doh.wa.gov/you-and-your-family/sexual-and-reproductive-health/

9    abortion (last visited Jan. 19, 2024) (warning Washingtonians that CPCs "[g]enerally . . . are not

10   required to keep your information private or follow HIPAA"). Thus, as reflected in the CID, the

11   AGO sought to understand how Obria treated patient or potential-patient information and

12   whether that information was shared with any third parties. Inquiries into such issues fall well

13   within the ambit of the AGO's investigatory authority.

14   Third, Obria PNW complains that the AGO wrongfully issued it a CID "about a treatment

15   it doesn't even perform." PI Mot. at 14. But Obria do not allege that the AGO knew prior to

16   issuing its CIDs that Obria PNW does not provide those services. *See generally* Compl. The

17   AGO's CIDs sought, among other things, information regarding the services "provided or

18   offered to" Washington patients. Dkt. # 4-3 at pp. 13–14 (Interrogatory Nos. 7, 9–11). Given the

19   statements made about APR on Obria's website, the AGO's decision to issue a CID to investigate

20   whether Obria PNW was providing such services to Washingtonians was warranted.

21   Finally, Obria contend that the CIDs were issued in bad faith because the CPA "does not

22   even apply to the free services" that Obria offers. PI Mot. at 13. But as Obria acknowledge in

23   their Complaint, "Plaintiffs bill health plans for reimbursable services when available." Compl.

24   ¶ 65. This can bring Obria's work within the scope of "trade" and "commerce" under the CPA,

25   *see* RCW 19.86.010(2), and the CID issued to Obria PNW sought to understand "all services

26

1    provided or offered to" Washington patients and whether "you have sought reimbursement from

2    any third-party payors for the service." *See* Dkt. # 4-3 at pp. 13–14 (Interrogatory Nos. 7–9).

3         In sum, Obria have not alleged facts sufficient to overcome the presumption that the

4    AGO's investigation is based on legitimate grounds and that the non-self-enforcing CIDs would

5    chill the speech of a person of ordinary firmness.

6         **(2)   Obria's   selective   enforcement   claim   fails   to   show
             discriminatory effect and purpose**

7         Obria's selective enforcement theory fares no better. As a threshold matter, a claim for

8    selective enforcement is premature here, given that courts generally entertain these claims *after*

9    government action, like a prosecution or arrest, has taken place—not the sending of a non-self-

10   enforcing CID. *Cf. Lacey*, 693 F.3d at 920 (selective enforcement may be shown through "actual

11   or threatened arrests, searches and temporary seizures, citations, and other coercive conduct by

12   the police"); *Dique v. N.J. State Police*, 603 F.3d 181, 188 (3d Cir. 2010) (selective enforcement

13   claim will accrue "at the time that the wrongful act resulting in damages occurs," generally when

14   the plaintiff becomes "detained pursuant to legal process"). Thus, Obria's selective enforcement

15   claim fails at the outset. But even if timely, their claim misses its mark.

16        To establish selective enforcement, a plaintiff must demonstrate that (1) the enforcement

17   had a discriminatory effect against plaintiffs as compared to others who were similarly situated

18   in material respects and against whom the law was not enforced, and (2) the selective

19   enforcement was motivated by a discriminatory purpose. *Lacey*, 693 F.3d at 920 (quoting

20   *Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007)); *United

21   States v. Armstrong*, 517 U.S. 456, 465 (1996).[5] This standard is "particularly demanding"

22   because selective enforcement claims "risk invading the 'special province of . . . prosecutorial

23

24        [5] In the Ninth Circuit, challenges to the enforcement of a facially neutral law have generally been classified
25   as selective enforcement equal protection claims rather than as-applied First Amendment claims. *Hoye*, 653 F.3d at
     855. And unlike other Circuits, the Ninth Circuit has not clearly recognized a selective enforcement claim based on
     the First Amendment. But the Ninth Circuit has also recognized that any difference between these two claims is
26   "semantic rather than substantive" and both require a showing of discriminatory purpose. *Id.*

discretion.'" *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1137 (D.C. Cir. 2023) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999)). "The presumption of regularity supports prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that prosecutors have properly discharged their official duties." *Armstrong*, 517 U.S. at 463–64 (cleaned up).

As to the first part of the test, Obria rely heavily on being similarly situated to other "reproductive health-related organizations" who were "overlook[ed]" by the AG in his issuance of CIDs. PI Mot. at 15. But as Obria concede, parties "are similarly situated when their circumstances present *no distinguishable legitimate prosecutorial factors* that might justify making different prosecutorial decisions." *Id*. at 15 (citing *Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (quotation omitted, emphasis added)). Here, Obria focus on Planned Parenthood's data breaches, but as discussed, the AGO's investigation into Obria does not involve data breach concerns. Rather, it is focused on Obria's "practices related to the collection and use of consumer data." Dkt. # 4-2 at p. 2; Dkt. # 4-3 at p. 2. Thus, Planned Parenthood is not similarly situated to Obria. *Cf. Frederick Douglass Found., Inc.*, 82 F.4th at 1138 (cited in PI Mot. at 15) (two groups were similarly situated where the locations of both groups' gatherings were the same, the events were "proximate in time," police officers were present, and there was strong evidence that both groups violated a defacement ordinance).

Obria also fail to satisfy the second prong as they do not plausibly allege discriminatory purpose. In this Circuit, a plaintiff must show that selective enforcement is the result of an intentional policy or practice. *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011); *see also Rosenbaum*, 484 F.3d at 1153. Accordingly, a plaintiff must show that enforcement occurred "because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009) (cleaned up); *see also Wayte v. United States*, 470 U.S. 598, 610 (1985). This is true whether selective enforcement is rooted in the Fourteenth Amendment or the First—a claim of viewpoint discrimination requires a plaintiff to

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

present facts showing that the government suppressed a plaintiff's speech "because of" the plaintiff's ideology, opinion, or perspective. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

Here, Obria allege that AG Ferguson has publicly stated his "hostility toward pro-life pregnancy centers," which establishes intent. PI Mot. at 15. But AG Ferguson's statements in support of reproductive rights do not demonstrate a "hostility" toward pro-life entities or toward religion; this Court recently dismissed claims attempting to show religious animus on similarly flimsy grounds. *See Olympus Spa v. Armstrong*, No. 22-CV-00340-BJR, 2023 WL 7496382, at *3 (W.D. Wash. Nov. 13, 2023) ("Plaintiffs' unsupported arguments" that the Washington Attorney General demonstrated religious animus because of "'highly publicized litigation against those who hold traditional Biblical views . . . ,' are patently frivolous"). Further, as reflected in the letter issued by sixteen AGs that Obria rely upon as evidence of AG Ferguson's "animus" towards them, PI Mot. at 8, 15–16, the letter's statements regarding CPCs were focused on ensuring those centers provide consumers with clear and accurate information about their services. *See* Fraas Decl. Ex. C. Efforts by AGs to ensure consumers receive accurate information is not evidence of hostility. *See generally First Resort*, 860 F.3d at 1278, 1286 (discussing how "[f]alse and misleading advertising by clinics that do not provide abortions, emergency contraception, or referrals to providers of such services has become a problem of national importance"; acknowledging "the threat to women's health posed by their false or misleading advertising"). Thus, Obria's "bald allegations" of hostility are "conclusory and not entitled to be assumed true." *Ashcroft*, 556 at 681 (2009) (citation omitted).

Nor can "intent can also be inferred" from the fact that Obria have been "singled out" when compared to similarly situated entities. PI Mot. at 16. This claim necessarily fails for the reasons explained above. *Supra* at 21.

In sum, Obria allege no facts sufficient to infer that AG Ferguson issued the CIDs here "because of" Obria's "anti-abortion views," as opposed to his belief that Obria may have violated

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   state law through their representations regarding APR's safety and efficacy and/or their handling

2   of patient data. Obria's freedom of speech claim is unlikely to succeed on the merits and must

3   be dismissed.[6]

4           b.      There is no violation of the First Amendment's Free Exercise Clause
                    because the investigatory provisions of the CPA are facially neutral
5                   and generally applied

6           Obria's claim that the CIDs violate the First Amendment's guarantee of free exercise of

7   religion similarly fails. The action they challenge—issuance of CIDs pursuant to the

8   investigative discovery provisions of the CPA, RCW 19.86.110—is facially neutral and

9   generally applicable. The AG's CID authority neither identifies nor singles out any religion or

10  religious practice, and would apply with equal force to any entity the AG investigates for

11  potentially unfair or deceptive conduct.

12          The Free Exercise Clause prevents laws prohibiting the free exercise of religion, but this

13  right "does not relieve an individual of the obligation to comply with a valid and neutral law of

14  general applicability." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990).

15  A neutral law of general application need only survive rational basis review, even when "the law

16  has the incidental effect of burdening a particular religious practice." *Church of the Lukumi*

17  *Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993).

18          As a facially neutral law of general applicability, RCW 19.86.110 easily survives rational

19  basis review. As discussed above, the law authorizes the AG to conduct investigative discovery

20  into alleged consumer protection violations to carry out the CPA's mandate of protecting

21  Washingtonians from unfair and deceptive conduct. By definition, it applies to "any person" who

22  possess documents or information relevant to an investigation. RCW 19.86.110(1). And the AG

23  may seek only non-privileged information that would not be "unreasonable or improper if

24

25

26          [6] Obria's appeal to *State v. TVI, Inc.* is a red herring—an entity's "First Amendment right to advertise their 'lawful activity'" does not provide free rein to mislead or deceive consumers.

1   contained in a subpoena duces tecum." RCW 19.86.110(3). Further, the CIDs are non-self-

2   enforcing and are subject to judicial challenge and review in state court. RCW 19.86.110(9).

3       Obria nevertheless contend that the AG's actions are subject to strict scrutiny. PI Mot.

4   at 19. In this circuit, a neutral, generally applicable law or policy may be subject to strict scrutiny

5   nonetheless in just three narrow circumstances: (1) where a "purportedly neutral generally

6   applicable policy" has a "mechanism for individualized exemptions," (2) where the government

7   treats "comparable secular activity more favorably than religious exercise," or (3) where the

8   government acts in a manner hostile to religious beliefs or inconsistent with the Free Exercise

9   Clause's bar on even "subtle departures from neutrality." *Fellowship of Christian Athletes v. San*

10  *Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 686 (9th Cir. 2023) (citations and internal

11  quotation marks omitted). None of those circumstances applies here.

12      First, Obria argue that strict scrutiny applies because RCW 19.86.100 provides the AG

13  with "discretionary authority" to "target organizations that make statements with which he

14  disagrees" and therefore "invites the government to consider the particular reasons for a person's

15  conduct by creating a 'mechanism for individualized exemptions.'" PI Mot. at 18 (quoting

16  *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1871 (2021)). But RCW 19.86.110 contains no

17  such mechanism. *Cf. Fulton*, 141 S. Ct. at 1871 (standard city contact with foster care agencies

18  explicitly permitted certain exceptions at the "sole discretion" of the city); *Fellowship*, 82 F.4th

19  at 687 (school district policy gave it significant discretion to apply exceptions to its non-

20  discrimination policies). Instead, RCW 19.86.110 is a discovery statute applicable to all

21  consumer protection or antitrust investigations. The discretion inherent in quasi-prosecutorial

22  investigations, and for that matter in *any* attorney work-product decisions such as the scope of

23  pre-filing discovery requests, is not an "exemption" as contemplated by the cases Obria cite.

24  Obria's argument to the contrary is frivolous.

25      Second, Obria argue that RCW 19.86.110 fails the neutrality/general applicability

26  requirement because it "treat[s] any comparable secular activity more favorably than religious

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    exercise." PI Mot. at 18 (quoting *Fellowship*, 82 F.4th at 686). But as discussed above, the statute

2    provides authority for investigative discovery from "any person" relevant to an investigation into

3    a potential CPA violation. The fact that such an entity happens to be a religious organization

4    does not exempt it from investigation into a potential state law violation. *Smith*, 494 U.S. at 879

5    (religious beliefs do not excuse an individual from "compliance with an otherwise valid law

6    prohibiting conduct that the State is free to regulate."). Courts have rejected similar arguments

7    in comparable situations. In *Morningside Church, Inc. v. Rutledge*, for instance, the Arkansas

8    AGO issued a CID to a religious organization related to selling a product that allegedly treated

9    COVID-19. 471 F. Supp. 3d 921, 924–27 (W.D. Mo. 2020). The court rejected the organization's

10   argument "that as long as representations made about a product are based on their claim of a

11   sincerely held religious belief the government has no right whatsoever to test the validity of their

12   representations." *Id*. at 927. The court concluded that "the public interest is served by having

13   consumer protection laws enforced against those who might abuse and misuse the protection of

14   religious freedom under the First Amendment." *Id.* So too here.

15        Again, Obria's sole argument is to point to Planned Parenthood as a comparative entity

16   not investigated by the AGO. But as discussed above, this comparison is inapposite. *Supra* at

17   21. Sweeping (and utterly unsupported) assertions about who the AG has and has not

18   investigated for CPA violations, and why, do not establish an explicit intention to favor secular

19   activity, as First Amendment jurisprudence requires. *Cf. Tandon v. Newsom*, 593 U.S. 61,

20   63–64 (2021) (state's restrictions on private gatherings during the COVID-19 pandemic

21   contained numerous exceptions for secular activities but none for religious gatherings where

22   similar precautions could be taken); *Lukumi*, 508 U.S. at 521 (city could not ban animal sacrifice

23   in a manner that precluded religious practices while exempting other forms of animal killing).

24        Finally, Obria argues that the AGO's issuance of the CID cannot be neutral because of

25   AG Ferguson's purported "hostility" to their "Christian belief[s]." PI Mot. at 19. But Obria point

26   to no statements evincing the AG's hostility to religion, and, as discussed above, *supra* at

21–22, the AG's efforts to ensure that CPCs in the state do not make false or misleading statements regarding their services is not evidence of religious hostility.[7] Instead, AGO news releases are replete with AG Ferguson's work to vigorously protect the religious freedom of all Washingtonians.[8]

Obria thus fail to show that RCW 19.86.110 is anything other than a neutral law of general application subject to rational basis review, which is readily survives.[9] Because there is a legitimate state interest in the AGO investigating potentially unfair or deceptive conduct under the CPA, Obria cannot show they are likely to succeed on their Free Exercise claim. This claim must be dismissed.

### c.   Obria's freedom of association claims are unsupported

While the First Amendment "does not explicitly address associational rights, the Supreme Court has ruled that the First Amendment includes a right of expressive association." *Sullivan v. Univ. of Wash.*, 60 F.4th 574, 579 (9th Cir. 2023). This freedom of expressive association protects the right to "associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and

---

[7] The letter issued by sixteen AGs aimed at ensuring consumers receive clear information about the limitations of the services and staff available at CPCs, *see* Fraas Decl. Ex. C, is a far cry from the cases on which Obria relies (PI Mot. at 17–18). *Cf. Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1729 (2018) (state civil rights agency demonstrated hostility to cake shop owner's religious beliefs by making public comments that (1) the baker's beliefs had no legitimate currency in the public sphere, (2) religion was a common means "to justify all kinds of discrimination throughout history," including slavery and the Holocaust, and (3) "[religion] is one of the most despicable pieces of rhetoric that people can use . . . to hurt others"); *Fellowship of Christian Athletes*, 82 F.4th at 674–76 (public high school demonstrated hostility where teachers on the club approval committee stated that the religious views of the group were "bullshit").

[8] *See, e.g.*, Washington State Office of the Attorney General, News, *Attorney General Ferguson launches Hate Crime Working Group*, https://www.atg.wa.gov/news/news-releases/attorney-general-ferguson-launches-hate-crime-working-group-convenes-first (last visited Jan. 19, 2024) (discussing AGO workgroup designed to combat hate crimes based on religion, amongst other protected classes); Washington State Office of the Attorney General, News, *AG Ferguson investigation leads to Facebook making nationwide changes to prohibit discriminatory advertisements on its platform*, https://www.atg.wa.gov/news/news-releases/ag-ferguson-investigation-leads-facebook-making-nationwide-changes-prohibit (last visited Jan. 19, 2024) (discussing litigation successfully enjoining Facebook from allowing third-party advertisers to exclude religious minorities and other protected groups from seeing their ads); Washington State Office of the Attorney General, News, *AG Ferguson files lawsuit against janitorial services company for exploiting mostly immigrant workers*, https://www.atg.wa.gov/news/news-releases/ag-ferguson-files-lawsuit-against-janitorial-services-company-exploiting-mostly (last visited Jan. 19, 2024) (discussing CPA action against janitorial company that allegedly penalized its franchises for, amongst other things, failing to perform work because of conflicting religious obligations).

[9] Even if Obria could demonstrate that heightened scrutiny applies, it likely would be intermediate, not strict due to the seemingly commercial nature of their speech. *Supra* at 15 n.4.

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC                    25                    ATTORNEY GENERAL OF WASHINGTON
                                                                    Complex Litigation Division
                                                                    800 Fifth Avenue, Suite 2000
                                                                    Seattle, WA 98104-3188
                                                                    (206) 464-7744

the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984). Here, Obria contend that they can establish violation of its free association rights if "*enforcement of the subpoenas will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members'* associational rights." PI Mot. at 20 (quoting *Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988)) (emphasis added). This claim fails for multiple reasons.

First and foremost, Obria's reliance on *Brock* is misplaced because this is *not* a CID enforcement action. As discussed above, following Obria's objections to the CIDs, the AGO and Obria met and conferred regarding the information and materials Obria would provide; Obria objected to certain parts of the CIDs but otherwise substantially complied; and the AGO has not threatened to enforce those portions of the CIDs to which Obria objected. Because the AGO is not seeking to enforce the objected-to portions of the CIDs, this claim is premature. *See supra* at 12-15; *cf. Brock*, 860 F.2d at 348 (explaining that after the plaintiffs refused to comply with the subpoenas, "[t]he Secretary of Labor petitioned the district court to enforce the subpoenas"); *Dole v. Loc. Union 375, Plumbers Int'l Union of Am., AFL-CIO*, 921 F.2d 969, 971 (9th Cir. 1990) (explaining that "[w]hen [the recipients] refused to comply with the subpoenas on first amendment grounds, the Department initiated an action to enforce the subpoenas").

But second, even if this was a subpoena enforcement action—*and it is not*—it is not enough for a plaintiff to merely allege a violation of its associational rights without supporting facts. As the Ninth Circuit has made clear, "[b]are allegations of possible first amendment violations are insufficient to justify judicial intervention into a pending investigation." *McLaughlin v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 880 F.2d 170, 175 (9th Cir. 1989). Instead, "[t]he record must contain 'objective and articulable facts, which go beyond broad allegations or subjective fears.'" *Id.* (quoting *Brock*, 860 F.2d at 350 n.1). "Such evidence may include, for example, declarations from members attesting to the effect of compelled disclosure

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

on their associational rights or the possibility of membership withdrawal as result of compelled disclosure." *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 83 & n.5 (D. Ariz. 2022) (citing and discussing cases in which evidentiary burden was met).

Obria allege no evidence along these lines. The only facts alleged here relate to third-party CIDs issued to three of Obria PNW's business vendors as part of the AGO's investigation. According to the Complaint, (i) certain business vendors "identified in Plaintiffs' responses to the CIDs have received CIDs" related to the AGO's investigation, Compl. ¶ 168; (ii) those vendors were unhappy about the CIDs and "attribute[d] the burden of responding to their own CIDs to their prior association with Plaintiffs," *id.* ¶ 171; and (iii) "Plaintiffs have diminished the work they do with these organizations because of the strain caused by Defendant's CIDs," *id.* ¶ 172. Based on those allegations of "harm," Obria maintain they have alleged a freedom of association claim. PI Mot. at 20–21.

But the "harm" that Obria allege from the issuance of these third-party CIDs is speculative, at best. As the Ninth Circuit has explained, "[t]he cases in which the Supreme Court has recognized a threat to first amendment associational rights, [] have consistently required more than an argument that disclosure [of the subpoenaed information] leads to exposure," and "must demonstrate that exposure either is itself inherently damaging to the organization or will incite other consequences that objectively could dissuade persons from affiliating with the organization" such as "hate mail, property destruction, harassment by government officials, and employment termination." *Dole*, 921 F.2d at 974 (discussing *Brown v. Socialist Workers Comm.*, 459 U.S. 87, 98–100 (1982)). The Complaint here is devoid of any such allegations. The Complaint does not even allege that Obria PNW's business vendors stopped working with it due to its receipt of third-party CIDs; rather it alleges that "*Plaintiffs* have not used the services of certain of those organizations since." Compl. ¶ 113 (emphasis added). Obria PNW's own decision to stop using certain of its business vendors does not establish that the AGO's

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    investigation led to associational harm, when it was Obria PNW's *own actions* that created that

2    harm.

3        Further, to the extent that Obria allege an associational violation with those three

4    business vendors, *see* PI Mot. at 21, this claim must also fail because business contracts, without

5    any goal to join together to express shared beliefs, is not expressive association subject to First

6    Amendment protection. *Sullivan*, 60 F.4th at 580. Freedom of association "applies when

7    individuals have associated to advance shared views, or engaged in collective effort on behalf of

8    shared goals, that would be protected by the First Amendment if pursued individually." *Id.*

9    (cleaned up). Here, Obria allege expressive association with people of "like-minded beliefs,

10   including those on staff and volunteers" and even with "pregnant women and the fathers of their

11   babies," Compl. ¶¶ 162, 165, but the Complaint does not allege expressive association with their

12   "three associated contractual partners." Compl. ¶ 170.

13       Nor does the Complaint allege *facts* from which the Court could infer that the

14   hypothetical production of Obria volunteer and employee names (which, again, is not

15   information the AGO has threatened to seek enforcement of), is the type of "adverse

16   consequence[] that could reasonably dissuade persons from affiliating with it." *Dole*, 921 F.2d

17   at 972; *cf. NAACP v. Alabama*, 357 U.S. 449, 462 (1958) (finding infringement of First

18   Amendment rights where the NAACP showed that "on past occasions revelation of the identity

19   of its rank-and-file members has exposed these members to economic reprisal, loss of

20   employment, threat of physical coercion, and other manifestations of public hostility"). This is

21   particularly true given the confidentiality of Washington CID responses. *See* RCW 19.86.110(7).

22   As numerous courts have found, confidentiality protections weigh against a showing of

23   constitutional infringement. *See Dole*, 921 F.2d at 974 (subpoena recipient failed to establish

24   "that its members legitimately feared retribution by those few governmental employees who

25   would have access to its records"); *McLaughlin*, 880 F.2d at 175 (district court erred in providing

26   protective order where "[n]o showing was made" that government regulations restricting the

1  disclosure of subpoenaed documents would not have protected documents produced in response

2  to the subpoena). While Obria contend that the AGO may one day issue CIDs to some of those

3  individuals and that those individuals may, in turn, cease associating with Obria, *see* Compl.

4  ¶¶ 169, 173–74, those allegations are nothing more than speculation.

5         In sum, Obria fail to provide "objective and articulable facts, which go beyond broad

6  allegations or subjective fear," sufficient to make a prima facie showing of a free association

7  violation. *Brock*, 860 F.2d at 350 n.1. Because "[t]he lack of evidence of a constitutional

8  violation" ends the inquiry, *see Dole*, 921 F.2d at 974, this claim also should be dismissed.

9              **d.    Obria's First Amendment privilege claim fails for the same reason as
                      their association claim**

10

11        Obria's First Amendment privilege claim also fails, because to establish First

12  Amendment privilege, Obria must first show their freedom of association right was violated.

13  *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2010) (discussing the *Brock* prima facie

14  standard). For all of the reasons discussed above, Obria have not met their burden. *Supra* at

15  26–30. And just as with their free association claim, this claim is premature. *Supra* at 12–15; *cf.,

16  e.g.*, *Democratic Nat'l Comm. v. Ariz. Sec'y of State's Off.*, No. CV-16-01065-PHX-DLR, 2017

17  WL 3149914, at *1–2 (D. Ariz. July 25, 2017) (analyzing First Amendment privilege in the

18  context of a motion to compel production of specific documents identified on a privilege log).

19              **e.    Obria's selective enforcement Equal Protection claim must be
                      dismissed for the same reasons as their selective enforcement First
                      Amendment claim**

20

21        For all of the reasons that Obria's First Amendment selective enforcement claim fails, its

22  equal protection selective enforcement claim fails too. *See supra* at 20–23; *Hoye*, 653 F.3d at

23  855 (a selective enforcement claim based on a violation of equal protection under the Fourteenth

24  Amendment is no different from one based on the First Amendment—any difference is

25  "semantic rather than substantive"). Because Obria have not plausibly alleged that enforcement

26

1    of the CPA here had a discriminatory effect and was motivated by a discriminatory purpose,

2    *Lacey*, 693 F.3d at 920, this claim must be dismissed.

3            **2.      Obria's Fourth Amendment claim fails**

4            Obria also cannot show that the CIDs violate the Fourth Amendment. A CID, like any

5    other type of administrative subpoena, comports with the Fourth Amendment where: (1) "the

6    inquiry is within the authority of the agency," (2) "the demand is not too indefinite," and (3) "the

7    information sought is reasonably relevant." *Steele v. State*, 85 Wn.2d 585, 594 (1975) (en banc)

8    (CID issued as part of an investigation into unfair and deceptive practices that complied with

9    this three-prong test was reasonable under the Fourth Amendment); *Reich v. Mont. Sulphur &*

10   *Chem. Co.*, 32 F.3d 440, 448 (9th Cir. 1994) ("[I]n the context of an administrative search, the

11   Fourth Amendment's restrictions are limited: [I]t is sufficient . . . if the inquiry is within the

12   authority of the agency, the demand is not too indefinite and the information sought is reasonably

13   relevant.") (quoting *Morton Salt*, 338 U.S. at 652–53).

14           Obria raises two arguments to claim that the CIDs violate the Fourth Amendment, both

15   of which fail. First, Plaintiffs argue that "the services . . . the Obria Ministry provide[]" fall

16   outside the State's authority to enforce the CPA because the CPA requires a connection to "trade

17   or commerce," and Obria "does not charge patients for their services." PI Mot. at 25; Compl.

18   ¶ 65. But, as discussed above, Obria admits that they "bill health plans for reimbursable services

19   when available," Compl. ¶ 65, which provides a sufficient connection to trade or commerce. *See*

20   *supra* at 19; *see also* RCW 19.86.010(2). Thus, consistent with the Fourth Amendment, the AGO

21   was within its statutory authority to issue the CIDs in this case. *See* RCW 19.86.110(1); *Steele*,

22   85 Wn.2d at 594 ("[T]here is no question but that RCW 19.86.080 and RCW 19.86.110(1) accord

23   to the Attorney General power to investigate possible unfair or deceptive practices.").[10]

24   _____

25           [10] *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007), is factually distinguishable because it
     addresses whether a class of private plaintiffs is in a commercial relationship with the defendant, and its holding
     was called into doubt by the Washington Supreme Court in 2009. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d
26   27, 38–41 (2009) (holding that the CPA does not require a plaintiff to be in a consumer or a business relationship

1   Second, Obria contend that the CIDs exceed the AG's authority under the CPA and thus

2   violate the Fourth Amendment because they seek documents beyond the statute of limitations.

3   But, as discussed above, the State is not subject to a statute of limitations when it enforces the

4   CPA. PI Mot. at 26; *supra* at 4. Thus, this argument also fails.

5       Obria likewise does not and cannot show that the CIDs in this case are impermissibly

6   indefinite or that they are not reasonably relevant to the AGO's investigation. *See Benavidez*,

7   993 F.3d at 1145 ("conclusory allegations of law . . . are insufficient to defeat a motion to

8   dismiss"). Accordingly, Obria's Fourth Amendment argument fails.

9                               *       *       *

10      For all of these reasons, Obria fail to allege a violation of their First or Fourth

11  Amendment rights. Accordingly, these claims must be dismissed.

12  **C.      Obria Are Not Entitled to a Preliminary Injunction**

13      **1.      Obria have not established a likelihood of success on the merits**

14      For the reasons described above, Obria's claims must be dismissed because they cannot

15  show standing, ripeness, or a viable First or Fourth Amendment claim. Accordingly, Obria has

16  not established a likelihood of success on the merits. While this dooms their request for a PI,

17  Obria also fail to show the other requisites for preliminary relief.

18      **2.      Obria cannot show irreparable harm in the absence of a preliminary injunction**

19

20      Obria argue that alleged violations of their constitutional rights establish irreparable

21  harm. PI Mot. at 26–28. They are wrong. Although deprivation of a constitutional right *can*

22  constitute irreparable injury, no such presumption is appropriate where, as here, Obria fail to

23  show a likelihood of success on their claims. *See, e.g.*, *Wise v. Inslee*, No. 2:21-CV-0288-TOR,

24  2021 WL 4951571, at *5 (E.D. Wash. Oct. 25, 2021) (a "presumption of irreparable harm" is

25  with the defendant); *see also Rex – Real Est. Exch., Inc. v. Zillow*, No. C21-0312 TSZ, 2023 WL 4999100, at *2
    (W.D. Wash. Aug. 4, 2023) (recognizing the same). Further, *Romero v. Nw. Area Found.*, 129 F. App'x 337 (9th

26  Cir. 2005), is an unpublished disposition issued before January 1, 2007, which is not precedent and cannot be cited
    to the courts of this circuit. Ninth Circuit Rule 36-3.

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC                    31                    ATTORNEY GENERAL OF WASHINGTON
                                                              Complex Litigation Division
                                                              800 Fifth Avenue, Suite 2000
                                                              Seattle, WA 98104-3188
                                                              (206) 464-7744

inappropriate "where the party seeking injunctive relief fails to demonstrate a likelihood of success on the merits and [] there are serious questions going to the merits of the constitutional claims" (citing cases)); *Rushia v. Town of Ashburnham*, 701 F.2d 7, 10 (1st Cir. 1983) ("[T]he fact that [plaintiff] is asserting First Amendment rights does not automatically require a finding of irreparable injury.").

Because Obria have not shown they are likely to succeed on the merits of their constitutional claims, Obria must demonstrate they are likely to suffer imminent irreparable injury. *See Winter*, 555 U.S. at 20 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction."). They cannot do so. The harm of an ongoing governmental investigation (or even a theoretical enforcement action) is not the type of injury sufficient to end or enjoin an investigation. *See, e.g.*, *Petroleum Expl. v. Pub. Serv. Comm'n of Ky.*, 304 U.S. 209, 220–21 (1938) ("The necessity to expend for the investigation or to take the risk for noncompliance does not justify the injunction. It is not the sort of irreparable injury against which equity protects."); *John Doe Co. v. Consumer Fin. Prot. Bureau*, 235 F. Supp. 3d 194, 203 (D.D.C. 2017) ("Thus, neither potential investigation by the CFPB nor the bringing of an enforcement action present irreparable injuries that the Court is willing to enjoin."). Further, because the "CIDs are not self-enforcing," without an injunction Obria "need not do anything;" if the AGO decides to bring an enforcement action, Obria may raise their "constitutional arguments wherever the [AGO] brings suit." *John Doe Co.*, 235 F. Supp. 3d at 204.

Moreover, Obria's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Miller ex rel. Nat'l Lab. Rels. Bd. v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (citations omitted) (five-month "delay before seeking [injunctive relief] implies a lack of urgency and irreparable harm."); *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (delay of "even only a few months . . . militates against a finding of irreparable harm."). Here, the AGO issued CIDs to Obria in May 2022—nearly *two*

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

*years* ago. Instead of challenging the CIDs, Obria chose to object and voluntarily comply. Now, twenty months later, and with no threat of enforcement by the AGO, Obria seek an injunction from this Court. This long delay undermines their request for preliminary injunctive relief.

### 3.     The balance of equities and public interest weigh strongly against a preliminary injunction

The final two *Winter* factors—the balance of the equities and the public interest—also weigh heavily in the AG's favor. First, Obria will suffer no harm from the denial of their request for preliminary injunctive relief. The timing of this litigation is telling. As noted above, their claims of irreparable injury are belied by their decision not to avail themselves of the statutory mechanism for challenging CIDs in state court, and to instead voluntarily cooperate with the AGO for twenty months before abruptly seeking emergency injunctive relief from this Court. Further, because Obria could raise their constitutional objections if the AGO ever seeks to enforce the objected-to portions of the CIDs, an injunction is not needed at this time.

Second, Obria ignore the irreparable harm their proposed injunction would cause the AG and the public interest by preventing the AGO from fulfilling the function granted to it by the Washington State Legislature. *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *Williams v. Washington*, 554 F.2d 369, 370 (9th Cir. 1977) (recognizing the state's important interest in "protect[ing] its consumers from unfair and deceptive trade practices by prosecuting and penalizing those who violate the Consumer Protection Act."). Courts have long respected the authority of the states to make and enforce their own laws, especially through civil investigations and prosecutions. *Ala. Pub. Serv. Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 351 (1951) ("It is in the public interest that federal courts of equity should exercise their discretionary power to grant or withhold relief so as to avoid needless obstruction of the domestic policy of the states") (cleaned up); *Petroleum Expl.*,

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   304 U.S. at 222–23 ("By the process of injunction the federal courts are asked to stop at the

2   threshold, the effort of the [state agency] to investigate matters entrusted to its care by a statute

3   . . . obviously within the bounds of state authority . . . . [t]he preservation of the autonomy of the

4   states is fundamental in our constitutional system"). Obria seek to conscribe that authority here.

5       While Obria ascribe malicious and unconstitutional motives to the AG, they do so

6   without any evidence of impropriety. Indeed, their "evidence" is nothing more than the AG's

7   alleged differing political views from them on issues of reproductive rights. But granting

8   injunctive relief based on Obria's political rhetoric and *ipse dixit* would subject the AG to a flood

9   of unfounded suits that would undermine his investigatory authority. *See, e.g.*, *Imbler v.*

10  *Pachtman*, 424 U.S. 409, 423 (1976) ("[H]arassment by unfounded litigation would cause a

11  deflection of the prosecutor's energies from his public duties, and the possibility that he would

12  shade his decisions instead of exercising the independence of judgment required by his public

13  trust."); *Wayte*, 470 U.S. at 607–08 (courts are "properly hesitant to examine the decision

14  whether to prosecute" as that would "threaten[] to chill law enforcement by subjecting the

15  prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial

16  effectiveness").

17      In sum, any CID recipient who believes it has been wrongfully issued a CID may seek to

18  set it aside or object to its enforcement. RCW 19.86.110(8)–(9). But the public interest weighs

19  strongly against what Obria seek to do here: circumvent the state court process entirely and have

20  this Court exercise its equitable jurisdiction to enjoin CIDs that Obria have already substantially

21  complied with and that the AGO is not threatening to enforce. Granting an injunction under such

22  circumstances goes strongly against the public interest and should be rejected.

23  **D.    The Court Should Award the AGO Attorney Fees**

24      42 U.S.C. § 1988(b) authorizes the Court to award the prevailing party in a § 1983 action

25  its attorney fees and costs where the action is "unreasonable, frivolous, meritless, or vexatious."

26  *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (citation omitted). An action

1    is frivolous when the result is obvious or the claims are wholly without merit. *Id.* Because Obria's

2    claims are wholly without merit, reasonable attorney fees and costs should be awarded.

### V.    CONCLUSION

4       The Court should grant this Motion to Dismiss and deny Plaintiffs' Motion for

5    Preliminary Injunction.

6       DATED this 22nd day of January 2024.

ROBERT W. FERGUSON
Attorney General

*/s/ Lauryn K. Fraas*
LAURYN K. FRAAS, WSBA #53238
KENDALL SCOTT COWLES, WSBA #57919
ALEXIA DIORIO, WSBA #57280
Assistant Attorneys General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744
Lauryn.Fraas@atg.wa.gov
Kendall.ScottCowles@atg.wa.gov
Alexia.Diorio@atg.wa.gov
*Attorneys for State Defendant*

I certify that this memorandum contains 12,478
words, in compliance with Dkt. # 19.

DEF.'S MOT. TO DISMISS & OPP'N TO
PLS.' MOT. FOR PRELIM. INJ.
NO. 3:23-cv-06093-TMC

35

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744