1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

| | |
|---|---|
| **OBRIA GROUP, INC., and MY CHOICES d/b/a OBRIA MEDICAL CLINICS PNW,** | Civil No.: 3:23-cv-06093-TMC |
| *Plaintiffs,* | **PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| **ROBERT FERGUSON**, in his official capacity as Attorney General for the State of Washington, | NOTE ON MOTION CALENDAR: |
| *Defendant(s).* | **February 29, 2024** |
| | ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 4

I.     This Court has subject matter jurisdiction over this action. ............................ 4

     A.     The Obria Ministry has Article III standing. ........................................... 4

          1.     The Obria Ministry has constitutional standing. ........................ 5

          2.     The Obria Ministry has organizational standing. ....................... 9

          3.     The Obria Ministry has pre-enforcement standing. ................... 10

     B.     The Obria Ministry's claims are ripe. ..................................................... 15

II.     The Obria Ministry is likely to prevail on its claims. ..................................... 18

     A.     The retaliation claim is likely to succeed. ............................................. 18

     B.     The selective enforcement claim is likely to succeed. ........................... 21

          1.     Planned Parenthood is similarly situated. ................................. 22

          2.     The Ministry's speech led to AG Ferguson's CIDs. ................... 24

     C.     The association claim is likely to succeed. ............................................ 24

     D.     The free-exercise claim is likely to succeed. ......................................... 27

     E.     The Fourth Amendment claim is likely to succeed. .............................. 29

III.     The equities favor the Obria Ministry. ......................................................... 31

CONCLUSION ................................................................................................... 32

CERTIFICATE OF SERVICE ............................................................................. 33

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

# TABLE OF AUTHORITIES

**Cases**

*American Beverage Association v. City & County of San Francisco,*
916 F.3d 749 (9th Cir. 2019) ............................................................ 31

*Americans for Prosperity Foundation v. Bonta,*
141 S. Ct. 2373 (2021) ............................................................... 7, 26

*Arizona Right to Life Political Action Committee v. Bayless,*
320 F.3d 1002 (9th Cir. 2003) ............................................................ 4

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................ 24

*Bello-Reyes v. Gaynor,*
985 F.3d 696 (9th Cir. 2021) ...................................................... 19, 21

*Boquist v. Courtney,*
32 F.4th 764 (9th Cir. 2022) ........................................................... 19

*Bray v. Alexandria Women's Health Clinic,*
506 U.S. 263 (1993) ........................................................................ 28

*Brock v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO,*
860 F.2d 346 (9th Cir. 1988) ...................................................... 25, 26

*Browne v. Avvo, Inc.,*
525 F. Supp. 2d 1249 (W.D. Wash. 2007) ......................................... 20

*California v. Heartbeat International, Inc.,*
No. 23CV044940 (Cal. Sup. Ct.) .................................................... 12

*Citizens for Responsibility & Ethics in Washington v. Federal Election
Commission,*
971 F.3d 340 (D.C. Cir. 2020) .......................................................... 7

*Consumer Financial Protection Bureau v. Accrediting Council for
Independent Colleges & School,*
854 F.3d 683 (D.C. Cir. 2017) ......................................................... 29

*Dole v. Arco Chemical Company,*
921 F.2d 484 (3d Cir. 1990) ............................................................ 26

*Dole v. Service Employees Union, AFL-CIO, Local 280,*
950 F.2d 1456 (9th Cir. 1991) ...................................................... 8, 25

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

ii

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965) ........................................................................ 4

*Elrod v. Burns*,
    427 U.S. 347 (1976) ........................................................................ 5

*Exxon Mobil Corporation v. Saudi Basic Industries Corporation*,
    544 U.S. 280 (2005) ...................................................................... 17

*Fazaga v. Federal Bureau of Investigation*,
    965 F.3d 1015 (9th Cir. 2020) ....................................................... 8

*Federal Trade Commission v. American Tobacco Company*,
    264 U.S. 298 (1924) ................................................................ 29, 30

*Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*,
    82 F.4th 664 (9th Cir. 2023) ................................................... 10, 27

*First Choice Women's Resource Centers, Inc. v. Platkin*,
    No. CV2323076MASTJB, 2024 WL 150096 (D.N.J. Jan. 12, 2024),
    *appeal filed*, No. 24-1111 (3d Cir.) ...................................... 3, 16

*First Resort v. Herrera*,
    860 F.3d 1263 (9th Cir. 2017) ..................................................... 14

*Frederick Douglass Foundation, Inc. v. D.C.*,
    82 F.4th 1122 (D.C. Cir. 2023) ................................... 4, 21, 23, 24

*General Finance Corporation v. Federal Trade Commission*,
    700 F.2d 3668 (7th Cir. 1983) ..................................................... 17

*Google, Inc. v. Hood*,
    822 F.3d 212 (5th Cir. 2016) .................................................. 1, 15

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ........................................................................ 9

*Heck v. Humphrey*,
    512 U.S. 477 (1994) ...................................................................... 17

*In re McVane*,
    44 F.3d 1127 (2d Cir. 1995) ......................................................... 29

*Knick v. Township of Scott, Pennsylvania*,
    139 S. Ct. 2162 (2019) ............................................................. 2, 16

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

iii

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Lacey v. Maricopa County,*
    693 F.3d 896 (9th Cir. 2012) ............................................... 21, 22, 24

*Libertarian Party of Los Angeles County v. Bowen,*
    709 F.3d 867 (9th Cir. 2013) ...................................................... 5

*LSO, Ltd. v. Stroh,*
    205 F.3d 1146 (9th Cir. 2000) ..................................................... 4

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .............................................................. 4

*Lyall v. City of Los Angeles,*
    807 F.3d 1178 (9th Cir. 2015) ..................................................... 9

*Major League Baseball v. Crist,*
    331 F.3d 1177 (11th Cir. 2003) ....................................... 1, 9, 17, 29

*Matter of Confidential Consumer Protection Investigation,*
    512 P.3d 904 (Wash. App. Div. 3, 2021) ...................................... 14

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012) ...................................................... 9

*Mendocino Environmental Center v. Mendocino County,*
    192 F.3d 1283 (9th Cir. 1999) ..................................................... 7

*Moore v. California Institute of Technology Jet Propulsion Laboratory,*
    275 F.3d 838 (9th Cir. 2002) .................................................... 13

*NIFLA v. Becerra,*
    138 S. Ct. 2361 (2018) .......................................................... 14

*O'Brien v. Welty,*
    818 F.3d 920 (9th Cir. 2016) .................................................. 7, 18

*Perry v. Schwarzenegger,*
    591 F.3d 1147 (9th Cir. 2010) ............................................... 24, 26

*Pinard v. Clatskanie School District 6J,*
    467 F.3d 755 (9th Cir.2006) ................................................. 18, 21

*Reisman v. Caplin,*
    375 U.S. 440 (1964) ............................................................ 16

*Resolution Trust Corporation v. Walde,*
    18 F.3d 943 (D.C. Cir. 1994) ................................................... 29

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

iv

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Sabra v. Maricopa County Community College District,*
    44 F.4th 867 (9th Cir. 2022) ............................................................. 9

*Schulz v. Internal Revenue Service,*
    413 F.3d 297 (2d Cir. 2005) ............................................................ 17

*Second Amendment Foundation v. Ferguson,*
    No. C23-1554 MJP, 2024 WL 97349  (W.D. Wash. Jan. 9, 2024)............. 3, 6, 8,
                                                                  11, 15, 18

*Smith & Wesson Brands, Inc. v. Attorney General of New Jersey,*
    27 F.4th 886 (3d Cir. 2022) ......................................................... 1, 2, 6

*State v. Brelvis Consulting LLC,*
    436 P.3d 818 (Wash App. 2018) ..................................................... 12, 14

*State v. TVI, Inc.,*
    524 P.3d 622 (Wash. 2023) ............................................................ 3, 14

*State v. TVI, Inc.,*
    No. 17-2-32886-3 SEA (Wash. Super. Aug. 9, 2023)........................... 14

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................. 9, 12, 15

*Tandon v. Newsom,*
    593 U.S. 61 (2021) ........................................................................ 27

*Tingley v. Ferguson,*
    47 F.4th 1055 (9th Cir. 2022) ........................................................... 4

*Twitter, Inc. v. Paxton,*
    56 F.4th 1170 (9th Cir. 2022) ................................................... passim

*United States v. Aguilar,*
    883 F.2d 662 (9th Cir. 1989)....................................................... 22, 23

*Warren v. DeSantis,*
    90 F.4th 1115 (11th Cir. 2024) ...................................................... 19

*Watison v. Carter,*
    668 F.3d 1108 (9th Cir. 2012) ........................................................ 24

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ..................................................... 12, 13

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

v

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................... 18

**Statutes and Rules**

Tex. Bus. & Com. Code § 17.62/ ................................................................ 11

Wash. Civ. P. R. 3 ................................................................................ 6, 11

Wash. Rev. Code Ann. § 19.86.10-920.................................................. passim

**Other Authorities**

*Abortion Access*, Planned Parenthood Action Fund,
    https://www.plannedparenthoodaction.org/issues/abortion ......................... 22

Abortion Policy, American College of Obstetricians and Gynecologists,
    https://www.acog.org/clinical-information/policy-and-position-
    statements/statements-of-policy/2022/abortion-policy (last visited Feb.
    12, 2024). .......................................................................................... 30

Abortion, Wash. State Dep't of Health, https://doh.wa.gov/you-and-your-
    family/sexual-and-reproductive-health/abortion (last visited Feb. 8,
    2024) .................................................................................................. 28

Attorney General Bob Ferguson Media Availability, at 26:44–27:23,
    tvw.org/video/attorney-general-bob-ferguson-media-availability-
    2023041106/?eventID=2023041106 (last visited February 8, 2023)............... 20

Crisis Pregnancy Center Map, https://crisispregnancycentermap.com/ (last
    visited Feb. 8, 2024). ............................................................................ 28

Open Letter from Attorneys General Regarding CPC Misinformation and
    Harm (Oct. 23, 2023)................................................................. 2, 12, 13, 20

*Our Vision*, Options Pregnancy Clinic, https://www.olyloveslife.org/................... 28

Pregnancy Centers Offer Hope for a New Generation, Charlotte Lozier
    Institute (Dec. 15, 2023), https://lozierinstitute.org/wp-
    content/uploads/2023/12/Pregnancy-Center-Update_2022.pdf. ..................... 28

Sara Redd, Asst Professor, Rollins School of Public Health, Emory
    University https://sph.emory.edu/faculty/profile/index.php?FID=sara-
    redd-12709 (last visited Feb. 7, 2024) ...................................................... 30

*Statement of Faith*, Care Net of Puget Sound,
    https://supportcnps.org/statement-of-faith/ ................................................ 28

Plaintiff's Consolidated Response
re: Motion to Dismiss and Motion
for Preliminary Injunction

vi

Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Why We Exist*, POSSIBILITIES WOMENS CENTER,
       https://www.findmypossibilities.com/whyweexist ........................................... 28

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

vii

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

## INTRODUCTION

AG Ferguson would have this Court believe the federal courts routinely reject federal jurisdiction over constitutional challenges to CIDs. Quite the opposite. Twenty years ago, the Eleventh Circuit affirmed a federal injunction against an attorney general's unlawful CIDs. *Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003). And more recently, the Third Circuit asserted jurisdiction over an indistinguishable challenge to an attorney general's demands against a gun manufacturer. *Smith & Wesson Brands, Inc. v. Att'y Gen. of New Jersey*, 27 F.4th 886, 890 & n.1 (3d Cir. 2022). AG Ferguson does not cite either case, but instead asks this Court to follow *Google, Inc. v. Hood*, which held there is no federal jurisdiction to challenge a CID until a state court enforces it. 822 F.3d 212 (5th Cir. 2016). But he omits that the Ninth Circuit expressly found *Google* not "persuasive" and held that a plaintiff *does* have Article III standing to challenge a CID if it causes "objectively reasonable chilling of its speech or another legally cognizable harm." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1178 n.3 (9th Cir. 2022). The Obria Ministry has amply met the Ninth Circuit's standard: it has proffered a robust and detailed factual submission showing the constitutional, organizational, and pre-enforcement harm it has suffered from AG Ferguson's expansive CIDs. The Court's jurisdiction over this challenge is not reasonably in doubt.

The harm that AG Ferguson's hostility toward the Obria Ministry has caused shows exactly why federal courts must be able to adjudicate such challenges. Just like in *Smith & Wesson*, AG Ferguson has discovered "long-dormant regulatory powers" in the Washington Consumer Protection Act (WCPA) "to address circumstances that have not changed." 27 F.4th at 896–97 (Matey, J., concurring). The WCPA regulates representations in trade or commerce, but AG Ferguson invoked it to investigate the Obria Ministry—a religious nonprofit that provides all its services without any charge to patients. And just like in *Smith & Wesson*, his

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

overbroad CIDs are untethered to the topics he says he must investigate, such that "[o]ne might suspect that . . . the whole point" of them is that, "fearing the arrival of subpoenas," publishers and others will "think[] twice before speaking." *Id.* As any small nonprofit would do in these circumstances, the Obria Ministry tried to comply with the CIDs and self-censored its speech about the topics of AG Ferguson's demands. But that only made him more aggressive: he demanded more and more documents and served additional demands on the Ministry's mission-aligned partners. And it caused even more harm: it poisoned those relationships and put the Ministry's work with those partners on hold.

That was only the beginning. AG Ferguson's colleague in California brought suit against an Obria affiliate. And weeks later, AG Ferguson joined with him in an open letter condemning pregnancy centers and pledging enforcement against them under consumer-protection laws. The Ministry read this as any objectively reasonable party would—as a threat of litigation—and filed this action to assert its constitutional rights against this discriminatory treatment. Only then did AG Ferguson claim that the Ministry had "substantially complied," that there was nothing to see here, and that he should be allowed to enforce his CIDs in state court exclusively.

The Court should not let him. Section 1983 exists to police the unconstitutional actions of state officials who discriminate against speakers based on their viewpoint or their religion. The Supreme Court has made clear that Section 1983 does not, as AG Ferguson argues, require an injured plaintiff to litigate in state court before it can seek a federal adjudication of its federal rights. To the contrary, doing so would, as several decisions illustrate, result in losing any right to federal adjudication, which would be barred by preclusion. *Knick v. Twp. of Scott, Pa*, 139 S. Ct. 2162, 2167 (2019); *First Choice Women's Res. Centers, Inc. v. Platkin*, No. CV2323076MASTJB, 2024 WL 150096, at *5 n.7 (D.N.J. Jan. 12, 2024), *appeal filed*, No. 24-1111 (3d Cir.). AG

Ferguson has caused actionable harm to the Obria Ministry's rights, and it is entitled to federal redress now.

And the Ministry is likely to prevail. Though its claims concern a variety of constitutional rights—speech, association, religion, and privacy—and are asserted under several different causes of action, they all revolve around the same course of conduct by AG Ferguson. After publicly taking sides on the hotly debated issue of abortion, he wielded state power to issue burdensome CIDs to chill the protected religious speech on the other side of that debate. He did so despite lacking any statutory basis for a consumer-protection investigation of a nonprofit's free services, he cited no evidence of any wrongdoing by the Ministry, and he refused to investigate possible wrongdoing committed by similar, secular organizations, like Planned Parenthood, that share his views on abortion. What's more, his irrational vitriol against pregnancy centers, which provide free health services to vulnerable women, is thinly disguised hostility toward the Christian, pro-life views that they almost universally share. This is unconstitutional retaliation, selective enforcement, a violation of the freedom of association, a burden on free exercise, and a threat to the Ministry's Fourth Amendment rights. The Court should enjoin it.

This Court's ruling in this case will have ramifications beyond the Ministry. Last year, the Washington Supreme Court rebuked AG Ferguson for using the WCPA to clamp down on protected speech, *State v. TVI, Inc.*, 524 P.3d 622 (Wash. 2023), and a challenge to similar CIDs he issued against gun rights groups is on appeal in the Ninth Circuit, *see Second Amend. Found. v. Ferguson*, No. C23-1554 MJP, 2024 WL 97349, at *4 (W.D. Wash. Jan. 9, 2024) (appeal filed Feb. 8, 2024). If a state official can subject small nonprofits to extravagant document demands and punishing compliance costs and then avoid federal scrutiny while he chills their speech, there is no telling which cause will suffer next. The First Amendment ensures that the government does "not enforce the laws in a manner that picks winners and losers in

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

3

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

public debates." *Frederick Douglass Found., Inc. v. D.C.*, 82 F.4th 1122, 1142 (D.C. Cir. 2023). "It would undermine the First Amendment's protections for free speech if the government could enact a content-neutral law," like the WCPA, "and then discriminate against disfavored viewpoints under the cover of prosecutorial discretion." *Id.* This Court should enjoin AG Ferguson's attempt to do just that.

## ARGUMENT

## I.   This Court has subject matter jurisdiction over this action.

AG Ferguson's CIDs have caused the Obria Ministry multiple forms of Article III injury—constitutional, organizational, and pre-enforcement harms—that are ripe for redress under controlling precedent.

### A.   The Obria Ministry has Article III standing.

Article III's injury requirement demands "'an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). These requirements are not "rigid" in the First Amendment context, which presents "unique standing considerations." *Tingley v. Ferguson*, 47 F.4th 1055, 1066–67 (9th Cir. 2022) (cleaned up). Rather, for First Amendment claims, "the Supreme Court has endorsed . . . a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). "Were it otherwise, 'free expression—of transcendent value to all society, and not merely to those exercising their rights—might be the loser.'" *Id.* (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). If threatened government action "implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000). And if a plaintiff challenges a CID "prior to the CID's enforcement" by a state court, all that

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

4

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

standing requires is an "objectively reasonable chilling of its speech or another legally cognizable harm from the CID." *Twitter*, 56 F.4th at 1178 n.3.

The Obria Ministry has met *Twitter*'s standard several times over. First, and most fundamentally, AG Ferguson's CIDs have chilled the Ministry's constitutional rights of speech, religion, association, and Fourth Amendment rights in ways that are tangible, documented, and beyond reasonable dispute. Second, AG Ferguson's CIDs have caused organizational harm to the Obria Ministry by diverting its resources from its mission into complying with the CIDs. And third, AG Ferguson has put the Obria Ministry in the crosshairs of threatened enforcement that, unlike the CIDs in *Twitter* and *Google*, comes with a presumption of penalties. Standing is plain.

### 1.   The Obria Ministry has constitutional standing.

AG Ferguson's CIDs have inflicted direct, irreparable harm on three of the Obria Ministry's First Amendment freedoms: speech, association, and religion. "[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury," *Libertarian Party of L. A. Cnty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013), and "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Thus, as *Twitter* explained, a showing of constitutional harm under a retaliation framework "is commonly satisfied by a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression." 56 F.4th at 1174 (quotation omitted). The Obria Ministry has made that showing for each of its three First Amendment claims and has also established standing for its Fourth Amendment claim.

A plaintiff has standing to challenge a CID based on harm to free speech if it shows "objectively reasonable chilling of its speech" from the CID. *Id.* at 1178 n.3. It is easy to see that for a small nonprofit like the Obria Ministry, choosing to stop speaking is a reasonable response to receiving a broad demand for vast troves of

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

5

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

largely confidential information. Especially so where AG Ferguson threatened both an enforcement action and sanctions, Dkt.4-2 at 27, which, as explained further in Section I.A.3, presumptively include attorneys' fees and other expenses. RCW 19.86.110(9); Wash. Civ . P. R. 37(a)(4). The message sent by these CIDs was clear: give us everything you have or suffer the consequences.

The Third Circuit considered a similar subpoena challenge by a for-profit company in *Smith & Wesson* and concluded that "[t]he District Court had jurisdiction" over the plaintiff's federal constitutional claims. 27 F.4th at 890 & n.1 (3d Cir. 2022). As in that case, "fearing the arrival of subpoenas" may lead speakers to "think[] twice" before opening their mouths. 27 F.4th at 896–97 (Matey, J., concurring). In fact, "[o]ne might suspect that is the whole point" of serving such subpoenas. *See id.* So the chill on the Obria Ministry's speech here was objectively reasonable.

Plus, the record in this case amply shows the CID "actually chilled" the Ministry's speech. *Cf. Twitter*, 56 F.4th at 1175; *Second Amend. Found.*, 2024 WL 97349, at *4; Dkt.1 ¶¶ 119–23. While Obria PNW has never received a request or referred a patient for abortion pill reversal, it "has previously spoken about APR and would like to more prominently publicize [its] availability to assist pregnant women who wish to stop a chemical abortion and continue their pregnancies." Dkt.1 ¶¶ 118–19. Yet as a direct result of AG Ferguson's investigation, Obria PNW "has not made any further public statements about APR due to fear of reprisal" from AG Ferguson. *Id.* ¶ 120. But for that investigation, the Obria Ministry "would prepare a brochure of materials on the safety and efficacy of APR to be distributed on social media, at its clinics, and elsewhere." *Id.* And "in an effort to limit [its] potential exposure to reprisal from [AG Ferguson] for advertising [its] services, including APR, Obria PNW has discontinued operating its own website" and "instead relies upon the Obria Group to host a website listing its services." *Id.* ¶ 121–22.

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

6

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

AG Ferguson tries to minimize this harm by arguing that Obria PNW is still making those statements about APR. But his attempt to do so only reinforces the chilled speech. The statements he cites are statements on the *national* Obria website for Obria PNW, Dkt.21 at 9-10, and they are not the same statements that Obria PNW previously made (and abandoned) on its own website. As AG Ferguson's exhibits show, the Obria Group hosts an Obria PNW page on the Obria Group's website. *See* Dkt.23-1; Dkt. 23-2; *accord* Obria Pacific Northwest, obria.org/washington/. To avoid further targeting by AG Ferguson, Obria PNW no longer maintains its own website. Dkt.1 ¶ 121.

AG Ferguson argues that this does not show any chill to speech by the Obria Group, which hasn't taken down its website or information about APR. Dkt.21 at 16. This is mistaken: a joint effort by Obria PNW and the Obria Group to modify and coordinate their speech because of the CIDs is a chilling effect as to both. And in any event, AG Ferguson's objection is irrelevant because the person-of-ordinary-firmness "test is generic and objective." *O'Brien v. Welty*, 818 F.3d 920, 933 (9th Cir. 2016). That is "[b]ecause it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (cleaned up).

**Harm to associational freedom.** In his CIDs and following deficiency letters, AG Ferguson demanded that the Ministry identify and provide information about the individuals and organizations that have associated with it in its lawful activities, which would include both donors and volunteers. *See* Dkt.4-11 at 3. This attempt at "compelled disclosure" of such sensitive internal information about a nonprofit's donors and other associations is a per se harm to its protected associations. *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021); *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 971 F.3d 340, 347 (D.C. Cir. 2020).

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

7

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

Again, the record here shows these CIDs have already chilled the Obria Ministry's protected associations. One of the Ministry's mission-aligned vendors, a faith-based provider of search-engine marketing and optimization, was advised by his attorneys "that he needed to allow the dust to settle on Obria PNW before continuing to provide services to them." Sussman Decl. ¶ 4 (quotations omitted). That led to the vendor pausing all work for Obria PNW for several months. *Id.* Far from being a "conclusory allegation of harm," *Second Amend. Found.*, 2024 WL 97349, at *5, the Ninth Circuit has held such evidence "suggest[s] an impact on . . . members' associational rights." *Dole v. Serv. Emps. Union, AFL-CIO, Loc. 280*, 950 F.2d 1456, 1460 (9th Cir. 1991) (*"Dole II"*) (cleaned up). In *Dole II*, a union proffered statements from two of its members explaining that their "knowledge that their comments would be subject to scrutiny by the government" led them to diminish their associational activities. *Id.* The Ninth Circuit said "[i]t goes without saying" that those individuals "no longer [felt] free to express their views on controversial issues," which "is precisely the sort of 'chilling'" of expression and association that the First Amendment guards against. *Id.* The same is true here.

***Harm to religious freedom.*** The harm that the CIDs have caused to the Obria Ministry's faith-based speech and associations necessarily also harms its free exercise of religion as to the same messages. As the Obria Ministry has alleged, its pro-life speech and mission are an outgrowth of its basic Christian beliefs. Dkt.1 ¶¶ 2, 48, 149. And so government threats of enforcement with respect to a religious, pro-life message pose a burden on that religious observance. The Ninth Circuit has recognized "intentional discrimination" in government enforcement based on religion infringes on First Amendment rights even when the intrusion is intangible—for example, where it involves government surveillance based on religion. *Fazaga v. Fed. Bureau of Investigation*, 965 F.3d 1015, 1058 (9th Cir. 2020), *rev'd on other grounds*, 595 U.S. 344 (2022). "Regardless of the magnitude of the burden imposed," if the

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

8

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

government's purpose "is to infringe upon or restrict practices *because* of their religious motivation," it violates the First Amendment unless it can satisfy strict scrutiny. *Id.* (quotation omitted). Here, where AG Ferguson's actions are overt rather than covert, they pose a much more readily apparent burden on the Ministry's free exercise of its religion that satisfies Article III's standing requirement.

***Harm to Fourth Amendment rights.*** Finally, the Ministry has also experienced harm to its Fourth Amendment right to privacy in its papers and effects—that is, the right to be free from unreasonable searches—that gives it standing to sue. *Major League Baseball*, 331 F.3d at 1180–81; U.S. Const. amend. IV. Although the Ministry does not seek damages for its work in preparing the documents it has produced to date, it seeks an injunction that would spare it from any further document production. *See* Dkt.4 at 3, 24. It has "possessory rights over the property searched"—here, the private, sensitive documents that AG Ferguson has demanded in his deficiency letters and that it has not yet produced. *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1186 (9th Cir. 2015). And as the Ninth Circuit has held, the threat of imminent further harm to those rights also furnishes standing. *Melendres v. Arpaio*, 695 F.3d 990, 998 (9th Cir. 2012).

## 2.    The Obria Ministry has organizational standing.

This harm to the Ministry's constitutional rights has also inflicted practical harm to the organization that gives it an independent basis for Article III standing. The Supreme Court has recognized that organizations have standing when government action requires them to "divert significant time and resources" from their mission into needs of compliance. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149,165; *accord Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). Thus, "an organization has direct. standing to sue" if the government's conduct "has frustrated its mission and caused it to divert resources in response to that frustration of purpose." *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 879 (9th Cir. 2022)

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

9

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

(quotation omitted). This diversionary injury includes "[l]ost money and staff time spent responding to a challenged government action," which "are directly redressable and . . . vest direct organizational standing." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 683 (9th Cir. 2023) (en banc). So if an organization "will continue to devote significant time and resources" in response to the challenged action, its prospective challenge is ripe for adjudication. *Id.*

That is exactly what has happened here: AG Ferguson's unlawful CIDs saddled the Ministry with an enormous cost and compliance burden that has drained its resources and taken its focus off its pro-life mission. *See* Dkt.1 ¶ 9; Sussman Decl. ¶ 6. And complying with what AG Ferguson has continued to demand in deficiency letters would be an even greater disruption. Sussman Decl. ¶ 7. The law thus confers standing to challenge that injury.

### 3. The Obria Ministry has pre-enforcement standing.

Apart from the harms that have already occurred, the Obria Ministry also has pre-enforcement standing based on harm that AG Ferguson has threatened. As the *Twitter* court explained, standing in the pre-enforcement context turns on whether the plaintiff has "an actual or well-founded fear" of enforcement by the defendant. 56 F.4th at 1174 (quotation omitted). So for a case like this one that challenges a CID, the pre-enforcement standing inquiry addresses three factors: (1) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings" to enforce the CID; (2) "whether the plaintiffs have articulated a concrete plan to violate" the CID's demand; and (3) "the history of past prosecution or enforcement" of such matters. *Id.* (quotation omitted). All three of these factors favor a finding of standing here.

***AG Ferguson has threatened enforcement.*** AG Ferguson says the Ministry does not "allege [he] has threatened an enforcement action to compel production of any objected-to materials." Dkt.21 at 5. To the contrary, that is exactly what the

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

10

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

Ministry alleges and exactly what the record shows. Dkt.1 ¶ 201. In the *only* bold text of AG Ferguson's CID, he stated directly that "**[t]he Attorney General is authorized to enforce this demand"** and failing to obey it "**shall subject you to sanctions as provided in RCW 19.86.110.**" Dkt.4-2 at 27. This threat highlights an important distinctive of Washington law: while the Texas CIDs in *Twitter* were not self-enforcing, Washington CIDs carry penalties for non-compliance simultaneous with judicial enforcement. This distinction, not addressed by *Second Amendment Foundation*, 2024 WL 97349, at *4, is dispositive for pre-enforcement standing.

The Ninth Circuit held in *Twitter* that the Texas CIDs there were "not self-enforcing" because "Twitter never faced any penalties for its refusal to comply with the CID" until a state court enforced them. 56 F.4th at 1176 (citing Tex. Bus. & Com. Code § 17.62(b), (c)). Rather, the prospect of penalties under Texas law comes only if a court enters an enforcement order and then the CID recipient fails to comply with it. Tex. Bus. & Com. Code § 17.62(c). Because of that, any harm from complying with the Texas CIDs was "self-inflicted" because compliance was "voluntary." *Twitter*, 56 F.4th at 1176.

Not so for Washington's consumer-protection enforcement scheme, which is much more extreme. Rather than just sanctioning disobedience of an enforcement order, Washington sanctions *disobedience of the CIDs themselves*. If a "person fails to comply with any civil investigative demand" and the AG moves to enforce, a Washington state court "may impose such sanctions as are provided for in the civil rules for superior court with respect to discovery motions." RCW 19.86.110(9). And the sanctions the civil rules impose are presumptively mandatory. The enforcing court "*shall*"—not *may*—award "the moving party the reasonable expenses incurred in obtaining the order, including attorney fees," unless the CID recipient shows its opposition was substantially justified or some other equitable circumstance. Wash. Civ. P. R. 37(a)(4) (emphasis added). AG Ferguson has requested such fees in

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

11

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

Washington state court, which has granted them even on appeal where the CID recipient "did not produce documents or answer interrogatories in response to a CID [the court] determined to be valid." *State v. Brelvis Consulting LLC*, 436 P.3d 818, 833 (Wash App. 2018), *amended on reconsideration* (Mar. 12, 2019). So it can hardly be said that one who produces documents in response to a CID backed by such exorbitant sanctions threats does so "voluntarily." Dkt.21 at 5.

Washington's presumption of sanctions with enforcement matters: *Twitter* recognized standing in similar situations where, at the time of any enforcement action, the plaintiff "could have faced a large fine." 56 F.4th at 1177 (citing *White v. Lee*, 227 F.3d 1214, 1222 (9th Cir. 2000)). And the Supreme Court has held that the "combination" of threatened administrative action to be followed by criminal judicial proceedings "suffices to create an Article III injury." *Driehaus*, 573 U.S. at 166. The same is equally true here.

Plus, AG Ferguson went even further with his threats. When the Obria Ministry began producing documents—which, unlike *Twitter*, had not "already been available to the public," 56 F.4th at 1176—AG Ferguson doubled down on his demands by sending deficiency letters. Dkt.4-11 at 2. And even after the Obria Ministry turned over what it hoped would be its final production, *see* Dkt.4-13, 4-14, AG Ferguson made an even bigger threat. He joined an open letter against pregnancy centers led by California AG Rob Bonta, who just weeks before had filed a consumer protection action against an Obria affiliate in California. *California v. Heartbeat Int'l, Inc.*, No. 23CV044940 (Cal. Sup. Ct.). The letter suggested that similar actions were soon to follow from the other state signatories. *See* Open Letter from Attorneys General Regarding CPC Misinformation and Harm (Oct. 23, 2023), perma.cc/3SDW-9EW2. Invoking the authority to "enforce[e] . . . consumer protection laws," AG Ferguson and his co-signatories accused pregnancy centers of "misleading consumers" and pledged to "continue to take numerous actions aiming to mitigate the

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

12

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

harmful effects of [their] misinformation." *Id.* at 1, 8. With AG Ferguson endorsing a letter by an attorney general who had just sued an Obria affiliate, there was little way to read his actions other than as a threat of imminent litigation.

Thus, this case is more like *White* than it is like *Twitter*. In *White*, Washington state "directed the plaintiffs under threat of subpoena to produce all their publications regarding [a specific] project, minutes of relevant meetings, correspondence with other organizations, and the names, addresses, and telephone numbers of persons who were involved in or had witnessed the alleged discriminatory conduct." 227 F.3d 1214, 1229 (9th Cir. 2000). Though Washington "ultimately decided not to pursue either criminal or civil sanctions," that did not prevent the court from looking "through forms to the substance of government conduct." *Id.* at 1228 (cleaned up). "Informal measures, such as the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation, can violate the First Amendment also." *Id.* (cleaned up); *cf. Moore v. Calif. Inst. of Tech. Jet Propulsion Lab'y*, 275 F.3d 838, 848 (9th Cir. 2002) (holding that, while threats against an employee were never carried out, his having to continually defend himself against them was "reasonably likely to deter" his speech). The Ninth Circuit thus concluded that "the type of investigation conducted and the manner in which the individual defendants carried out their functions more than" met the relevant legal standard. *White*, 227 F.3d at 1228. Here too, these "extraordinarily intrusive and chilling measures" during an extended investigation establish standing. *Id.* at 1237–38.

***The Ministry has no plans to comply with ongoing demands.*** There is no question that the Obria Ministry has no plans to take further action to comply with what AG Ferguson claims is required of its document production. He never backed off those demands—instead, he joined a multi-state letter pledging additional enforcement against pregnancy centers. *See* Open Letter, *supra*. And his convenient litigation statement that the Ministry "substantially complied" with his requests goes

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

13

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

against his aggressive claims in the deficiency letters and his commitment to further enforcement. Dkt.21 at 1.

**AG Ferguson has conducted robust WCPA enforcement.** AG Ferguson actively enforces CIDs under the WCPA: he files enforcement actions, prosecutes them on appeal, and seeks attorneys' fees for his trouble. *See, e.g.*, *Brelvis*, 436 P.3d at 833; *Matter of Confidential Consumer Prot. Investigation*, 512 P.3d 904, 915 (Wash. App. Div. 3, 2021). Even here, he seeks attorneys' fees for the Ministry's decision to challenge his CIDs in federal court. Dkt.21 at 34–35.

Plus, this would not be the first case where AG Ferguson tried to use the WCPA to prosecute protected speech. He recently brought an enforcement action claiming that the charitable practices of the thrift-store chain Value Village were "commercial speech" and took the issue all the way to the Washington Supreme Court. *TVI, Inc.*, 524 P.3d 622. He lost, conclusively, *id.* at 634, being ordered to pay Value Village $5.7 million in attorneys' fees after taking a "dismissive stance" against its First Amendment rights, *State v. TVI, Inc.*, No. 17-2-32886-3 SEA, slip op. at 18–19 (Wash. Super. Aug. 9, 2023). And yet here he's gone a step further by claiming that the Obria Ministry—which unlike Value Village doesn't charge patients for *anything*—is subject to the WCPA and may actually be engaged in "commercial speech." Dkt.21 at 14 n.4.[1] Given this enforcement history, the Obria Ministry reasonably sought to avoid the years-long state-court investigation and litigation that Value Village faced by asserting its federal First Amendment rights in this Court to nip the problem in the bud. Under *Twitter*, *White*, and *Driehaus*, it has standing to do so.

---

[1] To call the ministry's speech "commercial," AG Ferguson relies on *First Resort v. Herrera*, 860 F.3d 1263 (9th Cir. 2017). But *NIFLA v. Becerra*, 138 S. Ct. 2361 (2018), overruled *First Resort*'s key premises by recognizing that pregnancy centers engage in core protected speech. In any event, to the extent *First Resort* remains valid in any respect, it is inapplicable: AG Ferguson is investigating pro-life speech to patients who do not pay for any services, while *First Resort* concerned pregnancy center contracts with search-engine-marketing vendors to market their services. 860 F.3d at 1276.

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

14

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

**B.      The Obria Ministry's claims are ripe.**

For all the same reasons, this Court should reject AG Ferguson's contention that the Ministry's claims are not ripe. The Ministry has satisfied "the constitutional component of ripeness" by demonstrating an injury in fact that is "'concrete and particularized'" and "'actual or imminent.'" *See Second Amend. Found.*, 2024 WL 97349, at *3 (quoting *Twitter*, 56 F.4th at 1173). And to the extent that the Supreme Court continues to recognize a prudential aspect of ripeness despite the federal courts' "virtually unflagging" obligation to exercise their jurisdiction, *see Driehaus*, 573 U.S. at 167, the Ministry has met that standard too.

AG Ferguson tries to defeat prudential ripeness by arguing that this controversy is not sufficiently definite and that the Obria Ministry will suffer no harm from a denial of federal adjudication. Dkt.21 at 11-12. Yet this is not, as AG Ferguson suggests, an action to enjoin an inchoate "investigation," but rather a request for a preliminary injunction to stop enforcement of a specific pleading: the CIDs. And the centerpiece of AG Ferguson's argument against prudential ripeness—that no state court has yet enforced the CIDs—is deeply flawed. Not only is it contrary both to Ninth Circuit precedent and to Washington law, but it presents a Catch-22 that falls apart on its own terms. The Court should reject it for five reasons.

*First*, relying on the Fifth Circuit's decision in *Google*, AG Ferguson says that a challenge to CIDs that "are non-self-executing" is not ripe "absent a judicial order" in a state-court enforcement action where the plaintiff "'could raise its objections'" under the federal constitution. Dkt.21 at 13 (quoting *Google*, 822 F.3d at 225). But the Ninth Circuit in *Twitter* specifically rejected the Fifth Circuit's holding on this point. It stated that it did "not find the Fifth Circuit's decision in *Google* persuasive" because the Fifth Circuit ignored the possibility of present constitutional harm from "chilling of its speech . . . *even prior to the CID's enforcement.*" 56 F.4th at 1178 n.3 (emphasis added). And that is exactly what the Obria Ministry has shown here.

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

15

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Second*, the CID enforcement rationale of *Google*—and of *Twitter*—does not apply to Washington law. As explained above, unlike the CIDs in those cases, where no penalties attached unless a CID recipient disobeyed a court order to comply, Washington's CID regime imposes presumptive mandatory penalties simultaneously with enforcement. *See supra* Section I.A.3. That imminent threat of sanctions makes the Ministry's challenge ripe for redress now. *Cf. Twitter*, 56 F.4th at 1177.

*Third*, accepting *Google*'s view of ripeness leads to an intractable Catch-22 that would irreparably harm the Ministry. If the Ministry had to wait to file a federal challenge until after a state-court enforcement adjudication, that same enforcement adjudication would likely be res judicata as to any federal objections to the CID. That is just what the *First Choice* decision that AG Ferguson cites held in granting sua sponte dismissal: "if a plaintiff's claims in federal court are not ripe until after a state court has ruled on the enforceability of a subpoena, res judicata principles will likely bar a plaintiff from filing a claim in federal court pertaining to the state-court enforced subpoena." 2024 WL 150096, at *5 n.7. Thus, a federal constitutional challenge "*may seldom if ever be ripe* for adjudication in federal court." *Id.* (emphasis added). But the Supreme Court has rejected this absurd "preclusion trap" theory that state-court litigation may both ripen and doom a federal lawsuit. *Knick*, 139 S. Ct. at 2167. And such a "Catch-22" is contrary to Congress's grant of federal jurisdiction over state enforcement action in section 1983, which does not require "exhaustion of state remedies." *Id.* Yet AG Ferguson's theory would apply it equally here.

*Fourth*, *Google* is based on a flawed comparison of challenges to *state* adminis-trative subpoenas with challenges to *federal* administrative subpoenas. Under Congress's unified federal administrative scheme, initial administrative challenges provide an "adequate remedy at law," so courts reject litigants' attempt to skip the administrative process and file in federal court at the outset. *Reisman v. Caplin*, 375 U.S. 440, 443, 449–50 (1964); s*ee also Schulz v. I.R.S.*, 413 F.3d 297, 30104 (2d Cir.

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

16

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

2005) (reading federal statutory scheme as consistent with due process); *Gen. Fin. Corp. v. F.T.C.*, 700 F.2d 366, 368 (7th Cir. 1983) (enforcing Congress's prescribed method for reviewing agency action). In contrast, there is no unified scheme connecting state administrative proceedings challenges in federal court, and there is no exhaustion rule that demands starting in the state administrative system before going to federal court. *Heck v. Humphrey*, 512 U.S. 477, 480 (1994). In fact, if a litigant tried to challenge a state-court adjudication in federal district court, it would be barred both by preclusion and the *Rooker-Feldman* doctrine. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). *Google*'s ripeness rationale for administrative subpoenas thus conflicts with the entire federal judicial scheme.

*Fifth*, AG Ferguson's past enforcement practice shows that his suggestion that the Ministry can litigate its constitutional objections in state court is illusory. He says the Ministry could "raise constitutional objections if the AGO ever moves to enforce the CIDs," Dkt.21 at 10, but he fails to say the same if a CID recipient files a state-court challenge to a CID. RCW 19.86.110(8). That's because, when another litigant agreed to refile its federal challenges to a CID in state court, AG Ferguson just removed that action to federal court. *Second Amend. Found.*, 2024 WL 97349, at *2. And once in federal court, he successfully argued that the federal claims he had urged to be filed in state court were not ripe. *Id.* Though the Ministry submits that the dismissal in that case was erroneous for the reasons noted above, it shows how AG Ferguson's aggressive litigation strategy precludes any meaningful opportunity to raise these issues affirmatively in state court. As the Eleventh Circuit explained in similar circumstances, this means that only one action "could yield the desired result": a federal lawsuit to enjoin the unlawful CIDs. *Major League Baseball*, 331 F.3d at 1180–81.

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

17

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

## II.    The Obria Ministry is likely to prevail on its claims.

The Obria Ministry "is likely to succeed on the merits" of its claims as required for a preliminary injunction, *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), which necessarily means it has pled "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *O'Brien* , 818 F.3d at 933 (9th Cir. 2016) (cleaned up). Its claims based on harm to its First Amendment rights, while stated under different causes of action, all challenge AG Ferguson's unlawful CIDs. After stating his open hostility to pregnancy centers, he has invoked consumer-protection law to serve broad investigatory demands on these Christian nonprofits whose speech he disagrees with, while wholly ignoring known problems with Planned Parenthood, his pro-abortion ally. And in this Court, he has been unwilling—or unable—to offer any rational explanation for his decision to continue targeting the Ministry with such baseless and overbroad demands, bolstering the conclusion that the Obria Ministry is likely to succeed on its claims.

### A.    The retaliation claim is likely to succeed.

"Otherwise lawful government action," such as service of a CID, "may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." *O'Brien*, 818 F.3d at 932. A retaliation claim requires a plaintiff to show three elements: (1) it "was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Id.* (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir.2006)). Critically, "[o]nce a plaintiff has made [that] showing, the burden shifts to the government to show that it 'would have taken the same action even in the absence of the protected conduct.'" *Id.* (quoting *Pinard*, 467 F.3d at 770). Thus, while AG

Ferguson notes that retaliation requires that animus be the but-for cause of the action, Dkt.21 at 16, he omits that this is *his* burden to refute once a plaintiff has made this three-part showing. *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022) (confirming that this "burden-shifting approach" remains the law); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 702 (9th Cir. 2021) (labeling this "the default rule for First Amendment retaliation claims").

These three elements of retaliation are met here. As to the first, AG Ferguson does not dispute that the Obria Ministry is engaged in constitutionally protected religious, pro-life speech. Dkt.1 ¶ 119. As to the second, the Ministry has amply established above the chill that naturally follows from AG Ferguson's CIDs. That leaves only the third element. But AG Ferguson essentially concedes that the Ministry's Christian, pro-life speech was a substantial or motivating reason for those CIDs, and AG Ferguson makes no attempt to show he would have done the same thing but for that speech.

For one thing, the CIDs state, and AG Ferguson concedes, that he is investigating the Ministry's "representations relating to Abortion Pill Reversal," which is a lawful procedure in Washington. Dkt.4-2 at 2; Dkt.4-3 at 2; Dkt.21 at 18, 21–22. The Eleventh Circuit has held that "the third prong [was] satisfied" based on a similar concession. *Warren v. DeSantis*, 90 F.4th 1115, 1128 (11th Cir. 2024). What's more, AG Ferguson "has a long and well-documented zeal for abortion" and has "made the liberalization of laws and regulations relating to abortion a central focus of his policy advocacy and political persona while in office." Dkt.1 ¶¶ 80, 82. He has called the Supreme Court's decision in *Dobbs* "outrageous," "awful," "shameful," and "radical." *Id.* ¶ 88. He has publicly vowed to "fight" for abortion rights. *Id.* ¶ 91. He has made clear that he takes sides on this issue, and he takes sides against the Ministry.

Plaintiff's Consolidated Response
re: Motion to Dismiss and Motion
for Preliminary Injunction

19

Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

Beyond that, AG Ferguson has made inflammatory public statements about pregnancy resource centers like the Obria Ministry. *See* Dkt.1 ¶ 80 (highlighting his "particular animus toward pregnancy resource centers like those operated by Plaintiffs"). He said it is "insidious" that pregnancy resource centers are purportedly not required to comply with HIPAA and that women believe their information will be protected but that it "is most certainly not the case."[2] And the vast majority of his open letter with the California attorney general is committed to his objection that pregnancy centers do not provide abortion, stating that anything but is not "Actual Reproductive Healthcare." Open Letter, *supra*, at 3. That letter itself shows where he is coming from, since the sources it cites come almost entirely from pro-abortion advocates who call pregnancy resource centers "insidious" and "designed to deceive." *See generally id.* There is thus little doubt that what distinguishes the Obria Ministry from AG Ferguson's allies at Planned Parenthood—its Christian, pro-life expression—is a substantial motivating factor in his decision to serve the Ministry with CIDs.

In response, AG Ferguson does little to defend his invocation of the WCPA— which regulates "trade" and "commerce"—to investigate a nonprofit that provides all its services for free. RCW 19.86.020. Citing no authority, he claims that the statute applies because the Ministry bills insurance where it is available. Dkt.21 at 30. But this ex post facto attempt to justify his actions fails: the CIDs do not seek information about any representations the Ministry makes to insurers. And for good reason—the court in *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249 (W.D. Wash. 2007), rejected the notion that the collection of advertising revenue made a free service subject to the

---

[2] Attorney General Bob Ferguson Media Availability, at 26:44–27:23, tvw.org/video/attorney-general-bob-ferguson-media-availability-2023041106/?eventID=2023041106 (last visited February 8, 2023). At least as applied to the Obria Ministry, that's wrong. The Obria Ministry is required to and does comply with HIPAA. Dkt.1 ¶ 71-72.

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

WCPA. This Court should also reject a construction of the statute that would make it govern every relationship based on tangential economic activity.

Nor does AG Ferguson provide any reason to suspect the Ministry of wrongdoing—instead he demurs that he is "not required to provide targets with the evidentiary basis for [his] investigations." Dkt.21 at 17. But while he may not be required to do so as a matter of Washington law, he must do so to meet his burden in response to a properly pled retaliation claim. Once the Obria Ministry plausibly alleged "that retaliation for [its] speech was *a motive*" for the CIDs, the burden shifted to AG Ferguson to "demonstrate that [he] would have taken the same action even in the absence of the protected conduct." *Bello-Reyes*, 985 F.3d at 702 (cleaned up) (emphasis added). Importantly, that requires him to "show more than that [he] *could* have" taken the same action. *Pinard*, 467 F.3d at 770 (cleaned up). Rather, it requires him to show "through evidence that [he] *would* have" even without the Ministry's speech. *Id.* (cleaned up). He has not even tried to make that showing, but has instead invoked an alleged "presumption" that his "investigation is based on legitimate grounds." *See* Dkt.21 at 17, 19. But the First Amendment recognizes no such presumption as a defense to this retaliation claim. That claim is likely to succeed.

**B.    The selective enforcement claim is likely to succeed.**

The same facts that show AG Ferguson's unlawful retaliation also support the Ministry's selective enforcement claim. Because an "executive cannot selectively enforce the law in a way that violates the Constitution," courts may "review selective enforcement claims to assess whether the executive's choice of [enforcement] targets infringes on constitutional rights." *Frederick Douglass*, 82 F.4th at 1137. This claim does not require a prosecution: it "may be shown through a variety of . . . coercive conduct." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012). It requires only two elements: (1) enforcement with "discriminatory effect," *id.*, meaning "others

Plaintiff's Consolidated Response
re: Motion to Dismiss and Motion
for Preliminary Injunction

21

Alliance Defending Freedom
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

similarly situated" were not subjected to the same enforcement, *United States v. Aguilar*, 883 F.2d 662, 705 (9th Cir. 1989); and (2) that the enforcement was "based on an impermissible motive." *Id*. The Ministry is likely to succeed on both.

### 1.   Planned Parenthood is similarly situated.

To show a discriminatory effect, a plaintiff only has to "allege some facts, either anecdotal or statistical, demonstrating that similarly situated defendants could have been [enforced against], but were not." *Lacey*, 693 F.3d at 920 (cleaned up). That is easy to see here: AG Ferguson has targeted the Ministry's pro-life practices out of unsupported concern about "practices related to . . . consumer data," Dkt.4-2 at 2, but Planned Parenthood has had multiple major, well-publicized breaches of patient data. Dkt.1 at 12 n.5.  Instead of investigating them, he does press conferences with them.

AG Ferguson does not dispute that Planned Parenthood is, in effect, the ideological doppelganger of the Obria Ministry. Both organizations provide much the same set of medical services to pregnant women—e.g., pregnancy testing, STD/STI testing, breast and pelvic examinations and cancer screenings, and adoption referrals. Dkt.1 ¶ 138. But there is one glaring difference: the Obria Ministry does not provide abortions, which are contrary to its Christian beliefs, Dkt.1 ¶¶ 33, 51, 64, while Planned Parenthood calls abortion "an essential part of sexual and reproductive health care." *Abortion Access*, PLANNED PARENTHOOD ACTION FUND, https://www.plannedparenthoodaction.org/issues/abortion. Thus, the Obria Ministry and Planned Parenthood are similarly situated but for their differing views on abortion.

Further, while AG Ferguson has never cited any evidence that the Obria Ministry has misused or mishandled patient data, Planned Parenthood "has had several large, recent, and well-publicized exposures of consumer data without their clients' consent." Dkt.1 ¶ 78. Those data breaches have caused "sensitive patient

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

22

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

information . . . to be shared with some of the largest technology companies in the world." *Id.* And yet AG Ferguson has not issued similar CIDs relating "to Planned Parenthood, its Washington affiliates, any of the 46 abortion clinics in Washington, or any individual or entity that refers for abortions or advocates for increased availability of abortions." *Id.* ¶ 117.

AG Ferguson mainly argues Planned Parenthood is not similarly situated because the "investigation into Obria does not involve data breach concerns." Dkt.21 at 20. It involves "practices related to collection and use of consumer data." *Id.* (quoting Dkt. 4-2 at 2; Dkt. 4-3 at 2). But AG Ferguson does not explain why that's a distinction that makes a difference.

For one thing, by "consumer data," AG Ferguson means "patient data." Dkt.21 at 22. So Planned Parenthood's patient-data breaches should raise similar concerns about protecting patient privacy. For another, if his point is simply that he is investigating the Obria Ministry for suspected intentional mishandling of patient data—as opposed to Planned Parenthood's negligent mishandling of patient data— that distinction is meaningless absent any evidence suggesting the Obria Ministry has ever engaged in such intentional wrongdoing. No such evidence appears on the face of the complaint. Nor has AG Ferguson proffered any in his motion to dismiss and response to the motion for a preliminary injunction.

On this record, Planned Parenthood's history of negligently mishandling patient data makes it a more likely culprit for intentionally mishandling patient data than the Obria Ministry. Planned Parenthood "represent[s] the perfect control group because [it] present[s] a similar," if not greater, threat to patient privacy, but it does "not engage in the expression" that the Obria Ministry claims motivated this investigation. *Aguilar*, 883 F.2d at 707. And AG Ferguson's "lopsided prosecutorial response" to the two groups' handling of patient data "suggest[s] improper selective enforcement." *Frederick Douglass*, 82 F.4th at 1138.

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

23

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

### 2.   The Ministry's speech led to AG Ferguson's CIDs.

To show discriminatory intent, a plaintiff must show the defendant took some enforcement action against it "on the basis of an impermissible ground," such as the exercise of constitutional rights. *Lacey*, 693 F.3d at 922. Again, the Obria Ministry has made that showing here. As explained above, the complaint plausibly alleges that AG Ferguson chose to investigate the Obria Ministry because of its pro-life speech. *See supra* at Section II.A. AG Ferguson dismisses the reasonable inferences drawn from that evidence as "conclusory" and "bald allegations." Dkt.21 at 21 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). Far from it—"[b]ecause direct evidence of retaliatory intent rarely can be pleaded in a complaint," circumstantial evidence from which such intent "can be inferred" will support a claim for selective enforcement. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Frederick Douglass*, 82 F.4th at 1140-42. Rather, his overt hostility to pregnancy centers, his open support of Planned Parenthood, the lack of any consumer nexus for his investigation, and the absence of any non-discriminatory explanation do not require a large inferential leap to a finding of an improper ground. The Obria Ministry is likely to succeed on this claim, too.

### C.   The association claim is likely to succeed.

AG Ferguson's CIDs also infringe on the Obria Ministry's "freedom to associate with others for the common advancement of political beliefs and ideas," which "lies at the heart of the First Amendment." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1152 (9th Cir. 2010). A "plaintiff can establish" a violation of its expressive-association rights by showing that the government's enforcement actions "'will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights.'" Dkt.4 at 21 (quoting *Brock v. Loc. 375, Plumbers Int'l*

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

24

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

1  *Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988)). And as with a retaliation

2  claim, if the Ministry makes that showing, "the evidentiary burden will then shift to

3  the government." *Brock*, 860 F.2d at 350.

4        For an association claim, if "an actual chill" has already occurred, "[t]here is

5  no requirement that" the chill "be objectively based." *Dole II*, 950 F.2d at 1460. The

6  "inquiry ends when the practical effect of the government's actions has been

7  determined." *Id.* That chill has occurred here: after the Ministry identified certain of

8  its mission-aligned partners in its CID responses, AG Ferguson served those partners

9  with their own investigative demands. Dkt.1 ¶ 112. The CIDs negatively impacted

10  the Ministry's association with "mission-aligned" vendors who shared its "faith-based

11  pro-life views" and goal of promoting the Ministry's "mission to create a unified

12  national brand of pro-life health clinics." Sussman Decl. ¶ 3. Those mission-aligned

13  vendors included a "company that provides marketing services to women-led

14  companies and nonprofit organizations; a business that provides clients with website

15  design and search engine optimization; and a Christian marketing agency." Dkt.1

16  ¶ 112. The vendors expressed displeasure at being caught up in the investigation,

17  Dkt.1 ¶ 113, and one decided, on the advice of counsel, to "hold off on working" on a

18  project for Obria PNW to give time for the "dust to settle" after he and his company

19  got hit with a CID. Sussman Decl. ¶ 4.

20        AG Ferguson tries to characterize this associational harm as "speculative."

21  Dkt.21 at 27. To the contrary, this case involves "an actual chill" from the CIDs that

22  has already occurred. *Dole II*, 950 F.2d at 1460. So to the extent the Attorney General

23  argues that the fears of those who have been chilled by his investigation already

24  "must be objectively reasonable, [he] misapprehends the law." *Id.* And while "[t]here

25  is no requirement that" the chill "be objectively based," *id.*, it is objective here—

26  indeed, it should be no surprise that the threat of being subject to such CIDs has led

27  small, Christian pro-life businesses to take extra precautions in their speech and

28

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

25

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

their relationships.  Quite naturally, this overbroad investigation can be expected to "incite . . . consequences that objectively could dissuade persons from affiliating with the organization." *Dole v. Loc. Union 375, Plumbers Int'l Union of Am., AFL-CIO*, 921 F.2d 969, 974 (9th Cir. 1990) ("*Dole I*"). They already have.

AG Ferguson tries to downplay these associational harms by highlighting "the confidentiality of Washington CID responses." Dkt.21 at 28. "The mere assurance that private information will be narrowly rather than broadly disseminated, however, is not dispositive." *Perry*, 591 F.3d at 1160 n.6. And that's especially true where, as here, it's not the risk of exposure to the broader public that underlies the main concerns of associational harm, but "the consequences that would flow from *any* disclosure" of the confidential and personal information demanded by the CIDs "to the government or any government official." *Id.*

Because the Ministry has shown this harm to association, the burden shifts to AG Ferguson to justify his infringement on First Amendment rights. *Brock*, 860 F.2d at 350. Following the Supreme Court's decision in *Bonta*, 141 S. Ct. 2373 (2021), that means AG Ferguson has to *at least* show he can satisfy "exacting scrutiny" to justify any compelled disclosure of identifying information of groups and individuals that have expressively associated with the Obria Ministry. *See id.* at 2382–83 (plurality opinion of three justices endorsing exacting scrutiny); *id.* at 2391–92 (concurring opinion of two justices explaining they would *at least* apply exacting scrutiny). For all other information AG Ferguson seeks to compel, he at least has the burden to satisfy the similar standard enunciated in *Brock*. 860 F.2d at 350.

Under either test, AG Ferguson cannot make the required showing based on the information contained on the face of the complaint. Indeed, he has not even tried. So this Court should deny his motion to dismiss. He also has not shown that he is *likely* to make the required showing to justify his demand for the information the Obria Ministry has not already turned over in the more than 1500 pages of documents

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

26

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

it has submitted. Compl. ¶ 116. Accordingly, the Obria Ministry is likely to succeed on the merits of this claim.

### D.     The free-exercise claim is likely to succeed.

AG Ferguson argues that the Ministry has failed to overcome the presumptive validity of laws of general applicability and show that strict scrutiny applies to its free-exercise claims. But the record above establishes two of the circumstances the Ninth Circuit has recognized where a law must meet strict scrutiny: (1) if it treats "comparable secular activity more favorably than religious exercise"; or (2) if it acts in a manner hostile to religion or violates the prohibition of even "subtle departures from neutrality." *Fellowship of Christian Athletes*, 82 F.4th at 686. And since AG Ferguson does not even attempt to show that his CIDs meet strict scrutiny, the Ministry is likely to succeed on this claim.

*First*, AG Ferguson's CIDs are not neutral because they treat Planned Parenthood's comparable secular activity more favorably than the Ministry's religiously motivated medical services. State action will "trigger strict scrutiny under the Free Exercise Clause" if it "treat[s] *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (quotation omitted). And "whether two activities are comparable for purposes of the Free Exercise Clause must be judged against the asserted government interest that justifies the regulation at issue." *Id.* Here, where the asserted interest is in protecting consumers, AG Ferguson's enforcement powers actually apply to Planned Parenthood, which charges patients fees for services, but not to the Ministry, which provides all services for free. Yet he has not taken any action against Planned Parenthood despite its well-publicized data breaches and has instead served CIDs on the Ministry. That is not neutral as to the Obria Ministry's Christian pro-life speech, and that non-neutral treatment warrants strict scrutiny.

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

27

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

*Second*, AG Ferguson's actions against pregnancy centers have been overtly hostile to religion. It is no answer that his attacks do not mention Christianity directly: "Some activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993). Here, AG Ferguson's opposition to pregnancy centers is irrational—he offers no explanation for opposing organizations that provide free goods such as diapers, baby clothes, and car seats, and services including ultrasounds, parenting classes, and lactation consulting to nearly a million people a year valued at almost half a billion dollars.[3] Plus, pregnancy centers are almost exclusively Christian. *Id.* So just as "[a] tax on wearing yarmulkes is a tax on Jews," *Bray*, 506 U.S. at 270, an attack on pregnancy centers is an attack on Christians. Indeed, the State of Washington provides a map to help its citizens "avoid . . . pregnancy centers,"[4] which identifies 46 pregnancy centers in Washington, 44 of which are publicly and expressly Christian.[5] The State's desire that its citizens avoid these organizations that are overwhelmingly and publicly Christian is strong evidence of impermissible hostility to religion.

AG Ferguson's CIDs are not neutral and he does not contend they meet strict scrutiny. So the Ministry is likely to prevail.

---

[3] *Pregnancy Centers Offer Hope for a New Generation*, CHARLOTTE LOZIER INSTITUTE (Dec. 15, 2023), https://lozierinstitute.org/wp-content/uploads/2023/12/Pregnancy-Center-Update_2022.pdf.

[4] Abortion, Wash. State Dep't of Health, https://doh.wa.gov/you-and-your-family/sexual-and-reproductive-health/abortion (last visited Feb. 8, 2024) (citing Crisis Pregnancy Center Map, https://crisispregnancycentermap.com/ (last visited Feb. 8, 2024)).

[5] *See, e.g., Our Vision*, OPTIONS PREGNANCY CLINIC, https://www.olyloveslife.org/; *Statement of Faith*, CARE NET OF PUGET SOUND, https://supportcnps.org/statement-of-faith/; and *Why We Exist*, POSSIBILITIES WOMEN'S CENTER, https://www.findmypossibilities.com/whyweexist.

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

28

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

### E.     The Fourth Amendment claim is likely to succeed.

The broad investigatory powers conferred by state consumer-protection statutes are bounded by the Fourth Amendment. Justice Holmes explained a century ago that "[a]nyone who respects the spirit as well as the letter of the Fourth Amendment" understands that it does not permit the government to "direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime." *Fed. Trade Comm'n v. Am. Tobacco Co.*, 264 U.S. 298, 305–06 (1924). Thus, the validity of a government investigation under the Fourth Amendment depends on whether it is supported by an adequate basis in the law and is within "the agency's jurisdiction." *Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Sch.*, 854 F.3d 683, 689 (D.C. Cir. 2017) (cleaned up). As explained above, AG Ferguson has failed to show that the WCPA even applies to the Obria Ministry. *See supra* at Section I.A.3. And even if it did, he has proffered no evidentiary basis for suspecting that the Ministry has violated the law, much less a basis for his broad demand for all of its sensitive internal papers. The Ministry is thus likely to prevail on its Fourth Amendment challenge.

In every context, the Fourth Amendment demands an evidentiary basis for a search. That is true just as well for a civil investigatory subpoena: "[i]t is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up." *Am. Tobacco*, 264 U.S. at 306. As the Eleventh Circuit rightly acknowledged in allowing a federal Fourth Amendment challenge to CIDs, "[t]he level of proof required of the investigative agency must suggest something more than a fishing expedition, and something less than probable cause." *Major League Baseball*, 331 F.3d 1177, 1187 (11th Cir. 2003) (quotation omitted). The agency must have "specific grounds for its suspicion of liability." *In re McVane*, 44 F.3d 1127, 1140 (2d Cir. 1995); *accord Resol. Tr. Corp. v. Walde*, 18 F.3d 943, 949 (D.C. Cir. 1994).

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

29

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

AG Ferguson offers next to nothing to meet this standard—instead, he says he is "not required to." Dkt.21 at 17. But if an investigative demand is challenged under the Fourth Amendment, "a ground must be laid and the ground and the demand must be reasonable." *Am. Tobacco*, 264 U.S. at 306. Here, asked to explain how the Obria Ministry threatens Washington consumers by offering free services to pregnant women and new mothers, AG Ferguson only offers a pair of articles that oppose abortion pill reversal. Dkt.21 at 4. Neither help him show that his CIDs are anything but a speech-driven crusade against pregnancy centers: one article is from a new assistant professor whose bibliography and professional activities almost exclusively consist of policy advocacy for unrestricted abortion, and the other is an advocacy piece from a professional association that lists as its first policy statement its "commit[ment] to protecting and increasing access to abortion."[6] These are not bases for suspicion, they are evidence of bias.

Further, even if AG Ferguson had some basis to suspect a violation of the WCPA, his investigative demands are grossly overbroad. The *stated* bases of his investigation are "possible past or current . . . unfair or deceptive . . . marketing" and "unfair acts or practices related to . . . consumer data." Dkt.4-2 at 2. Even if these bases were legitimate, they could not plausibly warrant his demand for the identities of the Ministry's accountants, bookkeepers, and tax preparers, *id.* at 12; its banking information, *id.*; the identities of all volunteers, *id.*; its donor information, *id.* at 19, 21; thirteen years of complete, unredacted notices, agendas, and minutes of all board meetings, *id.* at 20; all its tax forms, schedules, and attachments, *id.* at 21; employee pension and retirement account contributions, *id.* at 22; and more. The phrase

---

[6] Sara Redd, Asst Professor, ROLLINS SCHOOL OF PUBLIC HEALTH, EMORY UNIVERSITY, https://sph.emory.edu/faculty/profile/index.php?FID=sara-redd-12709 (last visited Feb. 7, 2024); Abortion Policy, AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS, https://www.acog.org/clinical-information/policy-and-position-statements/statements-of-policy/2022/abortion-policy (last visited Feb. 12, 2024).

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

30

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

"without limitation" appears 40 times in the CID to the Obria Group and 29 times in the CID to Obria PNW. Dkt. 4-2 and 4-3. This fishing expedition casts a very wide net indeed. And it violates the Fourth Amendment.

## III. The equities favor the Obria Ministry.

Without an injunction, Obria's constitutional, organizational, and enforcement injuries will continue or increase, while AG Ferguson will merely have to wait longer for documents that he waited years to ask for.

As explained above, AG Ferguson's CIDs "offend Plaintiffs' First Amendment rights by chilling protected speech." *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 757 (9th Cir. 2019). Even "a colorable First Amendment claim" shows "that they likely will suffer irreparable harm" absent an injunction. *Id.* at 758. And "[t]he fact that Plaintiffs have raised serious First Amendment questions compels a finding that the balance of hardships tips sharply in Plaintiffs' favor." *Am. Beverage Ass'n*, 916 F.3d at 758 (cleaned up). The Ninth Circuit is also clear that the public interest favors injunctions to prevent constitutional harms: "We have consistently recognized the significant public interest in upholding First Amendment principles. Indeed, it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (cleaned up)

AG Ferguson asks this Court to hold against the Obria Ministry the fact that they unsuccessfully tried for nearly two years to satisfy his demands. Dkt.21 at 33. But the timing of this litigation only highlights huge disparities of power between a small, faith-based nonprofit and Washington's chief legal officer flexing his authority and resources. The Obria Ministry instituted this action because all indications showed his investigation would become a prosecution at any moment. So while AG Ferguson now conveniently claims that the Obria Ministry had "substantially complied" with his CIDs, *see* Dkt.21 at 2, 5, 12, 26, 34, nothing in the pre-litigation record suggested this was his position.

PLAINTIFF'S CONSOLIDATED RESPONSE
RE: MOTION TO DISMISS AND MOTION
FOR PRELIMINARY INJUNCTION

31

ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(202) 393-8690

1    Finally, there is no merit to AG Ferguson's claim that irreparable harm will

2 befall *him* if this Court temporarily delays enforcement of his long-dormant

3 consumer-protection powers over free services. He seeks to protect the public from

4 harms *of which no one has complained.* Dkt.21 at 33. He claims to need these

5 documents now—why he does not say—even though Obria PNW has openly served

6 expectant mothers in Washington for four decades. Dkt.1 ¶ 35. But mere delay is not

7 irreparable harm. The balance of equities thus tips sharply in favor of the Ministry.

8 **CONCLUSION**

9    The Court should deny AG Ferguson's motion to dismiss and grant a

10 preliminary injunction against his enforcement of the CIDs.

11 * * * *

12    I certify that this memorandum contains 10,418 words, in compliance with the

13 Court's December 11, 2023 Order.

14    Respectfully submitted this 12th day of February, 2024.

15

16 | | */s/ Lincoln Davis Wilson* |

Nathaniel L. Taylor, Wa. Bar No. 27174
Abigail St. Hilaire, Wa. Bar No. 48194
ELLIS, LI & MCKINSTRY PLLC
1700 7th Ave Suite 1810
Seattle, WA 98101
Telephone: 206-682-0565
ntaylor@elmlaw.com
asthilaire@elmlaw.com

Kristen K. Waggoner, Wa. Bar No. 27790
Lincoln Davis Wilson, Wa. Bar No. 53764
Timothy A. Garrison (admitted pro hac vice)
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
kwaggoner@ADFLegal.org
lwilson@ADFLegal.org
tgarrison@ADFLegal.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 12, 2024, I caused a true and correct copy of the foregoing document to be served via ECF upon all counsel of record.

DATED: February 12, 2024.　　　　　　　*/s/ Lincoln Davis Wilson*
　　　　　　　　　　　　　　　　　　　Lincoln Davis Wilson