The Honorable Tiffany M. Cartwright

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| OBRIA GROUP, INC. and MY CHOICES d/b/a OBRIA MEDICAL CLINICS PNW,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>ROBERT FERGUSON, in his official capacity as Attorney General for the State of Washington,<br><br>　　　　　　　　Defendant. | NO. 3:23-cv-06093-TMC<br><br>DEFENDANT'S MOTION TO DISMISS THIRD SUPPLEMENTAL COMPLAINT<br><br>NOTED FOR: OCTOBER 7, 2024 |

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION .................................................................................................. 1

3

II.     BACKGROUND .................................................................................................... 2

4

        A.  Statutory Background ................................................................................ 2

5

        B.  Factual and Procedural Background .......................................................... 3

6

III.    LEGAL STANDARD ........................................................................................... 5

7

IV.     ARGUMENT ........................................................................................................ 6

8

        A.  Obria Have Not Suffered an Article III Injury ......................................... 6

9

            1.  Obria fail to allege an injury in fact from the non-self-enforcing CIDs ............ 7

10

                a.  Obria have not alleged chilled speech ...................................... 8

11

                b.  Obria have not alleged associational harm ............................... 10

12

            2.  Obria's Alleged Insurance Rate Increase Was Not Caused by the AGO
                and Cannot Be Redressed by an Injunction or Declaration Against the

13

                AGO ........................................................................................... 11

14

                a.  Obria's alleged insurance injury does not satisfy causation .................... 12

15

                b.  Obria's alleged insurance injury is not redressable ................. 15

16

        B.  The Complaint Does Not Plead a Constitutional Violation.................... 16

17

            1.  Obria fail their burden to allege First Amendment retaliation ....................... 16

18

                a.  A person of ordinary firmness would not be chilled by
                    non-self-enforcing CIDs ......................................................... 17

19

                b.  Obria's allegations do not establish retaliatory motive ........... 18

20

            2.  Obria's freedom of association claims are unsupported .................. 20

21

            3.  Obria's First Amendment privilege claim is similarly deficient .................... 22

22

            4.  Obria's Fourth Amendment claim fails for multiple reasons.......................... 22

23

V.      CONCLUSION ................................................................................................... 24

24

25

26

## I.    INTRODUCTION

As the State's chief law enforcement officer, the Washington State Attorney General has broad authority to investigate potential violations of the Consumer Protection Act (CPA), RCW 19.86. To that end, the Washington Legislature specifically created the Consumer Protection Division of the Attorney General's Office (AGO) and empowered it to issue Civil Investigative Demands (CIDs) to any person or entity who may have documents or information relevant to an investigation of potential CPA violations. In May 2022, the Consumer Protection Division began investigating Plaintiffs (collectively Obria) for potential CPA violations, and served them with non-self-enforcing CIDs regarding their representations to Washington patients about "Abortion Pill Reversal" (APR) as well as their collection and use of patient data. Although Obria initially objected to the CIDs, they ultimately cooperated with the AGO's investigation and voluntarily responded.

More than a year and a half after receiving the CIDs, and well after completing their responses, Obria filed suit in this Court to challenge the AGO's requests for information and documents. But, as the Ninth Circuit has made clear in two recent decisions, allegations that First Amendment rights were chilled by the mere receipt of non-self-enforcing CIDs are insufficient to establish injury in fact. *See Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50 (9th Cir. 2024); *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022). Likewise, under Article III standards, Obria's vague assertions that their voluntary compliance with non-self-enforcing CIDs harmed their free speech and associational rights do not establish injury in fact.

Apparently recognizing that such allegations do not cause constitutional injury, Obria filed a series of Supplemental Complaints claiming that their recent unilateral disclosure of the now two-year-old CIDs to a private insurer caused them to incur an increased insurance rate. Based on this alleged harm by a third party, Obria seek to invoke this Court's limited Article III jurisdiction and request a declaration that the CIDs violated Obria's constitutional rights and a permanent injunction enjoining the Consumer Protection Division from ever investigating their

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

practices in the future. Obria cannot plausibly allege that the AGO caused their third-party insurer's independent ratemaking decisions, or that the prospective relief they seek here will require their insurer to decrease their rate. Additionally, Obria's Third Supplemental Complaint fails to allege facts from which this Court could plausibly infer that the AGO violated Obria's constitutional rights through the issuance of non-self-enforcing CIDs.

Obria's requests are untenable. This case should be dismissed with prejudice.

## II.  BACKGROUND

### A.  Statutory Background

Consumer protection law is a "a field traditionally regulated by the states." *Gen. Motors Corp. v. Abrams*, 897 F.2d 34, 41 (2d Cir. 1991). State "[l]aw-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).

To that end, since 1961, Washington's Legislature has authorized the Attorney General (AG) to issue CIDs under the state CPA "[w]henever the [AG] believes that any person (a) may be in possession, custody, or control of any [materials], which he or she believes to be relevant to the subject matter of an investigation of a possible violation of [the CPA]..., or (b) may have knowledge of any information which the [AG] believes relevant to the subject matter of such an investigation." RCW 19.86.110(1); 1961 Wash. Sess. Laws, ch. 216, § 11, 1959. The CPA is to be "liberally construed...to protect the public and foster fair and honest competition." RCW 19.86.920.

While the CPA establishes broad enforcement authority, CID recipients have correspondingly broad procedural rights. A CID must disclose the "the alleged violation" and "general subject matter" of the investigation. RCW 19.86.110(2)(a). A CID cannot make a request that would be "unreasonable or improper" under the civil rules, nor may it require the disclosure of privileged material. RCW 19.86.110(3)(a)-(b). With limited exceptions, the AGO must also keep CID responses confidential. *See* RCW 19.86.110(7).

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Any recipient may seek to modify or set aside a CID in Washington superior court for "good cause[,]" generally within twenty days of receiving the CID. RCW 19.86.110(8). Further, Washington CIDs are not self-enforcing. Instead, the AGO must file an enforcement petition if the recipient fails to respond or cooperate. RCW 19.86.110(9). Only a state court can enforce compliance with a CID. *Id.*

Finally, in the event a CID enforcement action or a petition to set aside or modify a CID is filed, the state court, after considering a recipient's objections to the CID, may impose discretionary fees and costs on the non-prevailing party. RCW 19.86.110(8)-(9); Wash. Civ. R. 37(a)(4).

## B.    Factual and Procedural Background

More than two years ago, the AGO issued non-self-enforcing CIDs to Obria seeking information about potential CPA violations in the marketing of services to Washington consumers. Dkt. #43 (Third Compl.) ¶¶ 101-02. Specifically, the CIDs sought information about Obria's "marketing, advertising, and other representations...to Washington consumers" about "Abortion Pill Reversal," and Obria's "collection and use of consumer data." *Id.* ¶ 103.

According to the American College of Obstetricians and Gynecologists (ACOG), the nation's leading association of physicians providing health care for women, "[c]laims regarding abortion 'reversal' treatment are not based on science and do not meet clinical standards." Fraas Decl. Ex. A. ACOG explains that APR procedures "are unproven and unethical," because the limited studies into the procedures have had serious scientific flaws, "including no ethics approval, no control group, under-reporting of data, and no reported safety outcomes." *Id.* As ACOG further explains, "[f]acts are important, especially concerning myths and misinformation that can cloud the truth about abortion care," and "[t]here is no scientific evidence or data to prove that medication abortion 'reversal' is effective." Fraas Decl. Ex. B.

After Obria received the CIDs in May 2022, their counsel sought additional time from the AGO to meet and confer and, if necessary, challenge the CIDs. *See* RCW 19.86.110(8). Obria

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    ultimately objected to the CIDs while voluntarily providing interrogatory responses and several

2    document productions. *See* Third Compl. ¶¶ 109-10; 114-16. Obria's last production occurred

3    in June 2023. *Id.* ¶¶ 114-16. Since that production, the AGO has not requested additional

4    documents or information from Obria. *See generally id.*

5        The AGO also issued third-party CIDs to three of Obria's vendors who provided them

6    marketing, website design, and search engine optimization services. *Id.* ¶ 111. Obria allege that

7    these entities "reached out to Plaintiffs and expressed their dismay and displeasure" after

8    receiving the CIDs. *Id.* ¶ 113. Obria do not allege that any of these entities stopped doing business

9    with them because of the CIDs; instead, the Complaint alleges that *Obria* stopped working with

10   some of those entities. *Id.* ¶¶ 111-13 ("*Plaintiffs* have not used the services of certain of those

11   organizations since"). Obria does not allege that the AGO sent any additional third-party CIDs—

12   including to any insurer—or that the AGO ever publicized its investigation of Obria.

13       Obria filed this lawsuit at the end of 2023, seeking a preliminary injunction enjoining

14   any future hypothetical enforcement of the May 2022 CIDs, a final injunction granting the same

15   relief, and a declaration that the CIDs violate Obria's constitutional rights. Dkt. #1 ¶¶ A-C. The

16   AGO moved to dismiss, and the parties completed briefing and oral argument in February 2024.

17       On March 22, 2024, with the parties' motions still pending, Obria filed a Notice of

18   Supplemental Information, stating that "Obria PNW received notice that its insurance agency is

19   presently unable to secure an underwriter to renew and extend an essential insurance policy"

20   purportedly due to Obria's disclosure of the AGO's nearly two-year-old CIDs. *See* Dkt. #32 at

21   1. On March 28, Obria moved for leave to file a supplemental complaint alleging that their insurance

22   changes were "a direct result of...[being] presently subject to Defendant's CIDs." Dkt. #33. The

23   AGO opposed Obria's Motion as futile. Dkt. #34.

24       While the AGO's opposition was pending, Obria's counsel moved a second time to

25   supplement the Complaint with additional insurance allegations, specifically that "Obria PNW's

26   insurance agency ultimately obtained replacement coverage through a different underwriter, but,

because of the pendency of Defendant's CIDs, it was at a cost more than seven times higher than the premiums for the same insurance coverage prior to the commencement of Defendant's investigation." *See* Dkt. #37. In response to Obria's purported dilemma, the AGO provided Obria with a letter confirming that it had closed the investigation and would take no further action to enforce the CIDs. Dkt. #38-1. Specifically, while the AGO generally "does not issue formal notice to a target when it closes an investigation," it made "an exception" to "provide certainty as to the status of this investigation" for Obria's use with their carrier. *Id.* The letter confirmed that the Division had "closed its investigation into the potential [CPA] violations set forth in the May 19, 2022 Civil Investigative Demands" and the "related third-party CIDs issued in 2022 to certain of Obria's vendors," and that "[n]o further responses to the CIDs, or those issued to Obria's vendors, are necessary." *Id.*

Per the parties' procedural agreement, on June 21, 2024, Obria filed their Third Supplemental Verified Complaint, adding the new insurance allegations and removing three claims (selective enforcement/viewpoint discrimination, free exercise of religion, and equal protection). Dkt. #43 (Third Compl.). Without leave of Court or AGO consent, Obria also changed their Prayer for Relief to seek "[a] declaratory judgment that Defendant's civil investigative demands violated the constitutional provisions set forth above" and "[a] permanent injunction prohibiting Defendant from resuming his investigation or enforcement against Plaintiffs in violation of those constitutional provisions." *Id.* at 29.

### III.   LEGAL STANDARD

The AGO moves to dismiss this case under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). In a factual challenge, such as the one made here, "the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 (9th Cir. 2023)

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   (quotation omitted). On a factual 12(b)(1) challenge, "no presumptive truthfulness attaches to

2   plaintiff's allegations," and, unlike a Rule 56 motion, "the existence of disputed material facts

3   will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

4        Dismissal under Rule 12(b)(6) may be based on a lack of a cognizable legal theory or the

5   absence of sufficient facts supporting this theory. *See Davidson v. Kimberly-Clark Corp.*,

6   889 F.3d 956, 965 (9th Cir. 2018). Although the Court must accept as true the Complaint's

7   well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an

8   otherwise proper Rule 12(b)(6) motion. *Benavidez v. County of San Diego*, 993 F.3d 1134, 1145

9   (9th Cir. 2021). The Court may consider "matters of public record" without converting the

10   motion into one for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995)

11   (citation omitted).

## IV.    ARGUMENT

13        Obria's Third Complaint must be dismissed. As demonstrated below, Obria's claims are

14   non-justiciable and should be dismissed for lack of standing under Rule 12(b)(1). In addition,

15   viewed under Rule 12(b)(6), Obria's allegations are legally and factually deficient and their

16   claims should be dismissed for those reasons, as well.

### A.    Obria Have Not Suffered an Article III Injury

18        The Constitution limits federal courts' jurisdiction to actual "cases" and "controversies."

19   U.S. Const. art. III, § 2. The justiciability doctrine of standing implements this requirement.

20   *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (quotations omitted). Founded on

21   separation of powers principles, standing limits federal court jurisdiction to cases where the

22   Plaintiff can demonstrate: "(1) an injury in fact, (2) a sufficient causal connection between the

23   injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a

24   favorable decision." *Id.* at 157-58 (cleaned up). These requirements are "an essential and

25   unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of*

26   *Wildlife*, 504 U.S. 555, 560 (1992). "A plaintiff must demonstrate standing for each claim" and

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

"each form of relief." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (citation omitted). As the plaintiffs invoking federal jurisdiction, Obria bear the burden of establishing each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. At the pleading stage, a plaintiff facing a factual 12(b)(1) challenge bears the burden of establishing a justiciable controversy by a preponderance of the evidence. *San Diego Cnty. Credit Union*, 65 F.4th at 1029. However, "at the summary judgment stage, a plaintiff must offer evidence and specific facts demonstrating each element of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) (cleaned up).

Obria attempt to invoke this Court's Article III jurisdiction under three different theories of injury: (1) chilled speech from receipt of the non-self-enforcing CIDs; (2) associational harm from receipt of the same CIDs; or (3) an increased insurance premium imposed by a non-party insurer purportedly based on Obria's disclosure of the non-self-enforcing CIDs. Based on the evidence currently available in this case, Obria have failed to carry their burden.[1]

### 1.   Obria fail to allege an injury in fact from the non-self-enforcing CIDs

An injury in fact requires "an invasion of a legally protected interest that is (a) concrete and particularized[,] and (b) actual or imminent, not conjectural or hypothetical." *Twitter*, 56 F.4th at 1173 (quoting *Lujan*, 504 U.S. at 560). In two recent opinions, the Ninth Circuit found vague allegations of chilled First Amendment rights based on receipt of non-self-enforcing CIDs insufficient to establish injury in fact. Obria's equally vague assertions that their free speech and associational rights were harmed by receipt of non-self-enforcing CIDs likewise fail.

---

[1] The AGO asked Obria for information on their insurance rate increase, but Obria declined to provide it "prior to discovery." *See* Dkt. #33 at 4.

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

### a.     Obria have not alleged chilled speech

2       In *Twitter v. Paxton*, Twitter sought to enjoin the Texas Office of the Attorney General

3   from enforcing a CID and continuing an investigation Twitter claimed was unlawful retaliation

4   for its protected speech. 56 F.4th at 1172. The Ninth Circuit affirmed dismissal of the suit

5   because "Twitter has not suffered an Article III injury because the CID is not self-enforcing."

6   *Id.* at 1176.[2] The Ninth Circuit reasoned that, under Texas law, the AG cannot unilaterally

7   sanction non-compliance with the CID. *Id.* Rather, the AG must "petition for an order of the

8   court to enforce the CID" and "serve the recipient with the petition," at which point "the state

9   court can conduct hearings to determine whether to order enforcement." *Id.* Thus, the Ninth

10  Circuit determined that "enforcement is no rubber stamp" and "to the extent Twitter argues that

11  any actions it has taken in response to the CID create an Article III injury, those injuries are

12  self-inflicted because the actions were voluntary." *Id.*[3] Against this backdrop, Twitter's vague

13  assertions that its ability to freely make content decision was "impeded" and that it was forced

14  to "weigh the consequences" of the AG's investigation before taking action were too indefinite

15  to support injury in fact. *Id.*

16      The Ninth Circuit reached the same conclusion regarding a plaintiff's alleged First

17  Amendment chill in response to a demand for documents just last month in *SPU*. There, the

18  Ninth Circuit reasoned that, "[l]ike the CID in *Twitter*, the [Washington AG]'s request for

19  documents carries no stick: SPU would not face sanctions for ignoring it." 104 F.4th at 57. Given

20  this "[c]rucial[]" fact, [SPU]'s vague assertion that its First Amendment rights were chilled by

21  the "cloud of government investigation" was insufficient to establish an Article III injury. *Id.*

22

---

23      [2] *Twitter* was decided on constitutional ripeness grounds, but the "the constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." 56 F.4th at 1173.

24      [3] *Twitter* recognizes in dicta that a CID recipient could hypothetically suffer injury in the form of chilled speech, even prior to a non-self-enforcing CID's enforcement. 56 F.4th at 1158 n.3. However, *Twitter's* holding that the injuries alleged in response to the non-self-enforcing CIDs in that case did not suffice strongly suggests that establishing objectively reasonable chill in response to non-self-enforcing CIDs prior to enforcement would be an

25  incredibly high bar. This is consistent with *SPU*, which affirmed *Twitter's* determination in a similar non-self-enforcing document request context. Here, given the significant procedural protections provided to CID recipients, RCW 19.86.110(8)-(9), Obria's voluntary compliance with the CIDs, and the absence of credible allegations or

26  evidence of objectively reasonable chill, Obria cannot meet that high bar.

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    Just as in *Twitter*, for SPU "[t]o complain about the CID in this posture is to speculate about

2    injuries that have not and may never occur." *Id.*

3        As in *Twitter* and *SPU*, the CIDs the AGO sent to Obria were not self-enforcing. Indeed,

4    under Washington's CPA, only a court can require CID compliance. RCW § 19.86.110(9); *supra*

5    at 2-3. This means that if Obria had chosen not to respond to the CIDs, the AGO would have had

6    to file a CID enforcement action, Obria would have been able to raise their objections, and it

7    would have been up to the Court as to whether or not to enforce the CIDs. *Id.* Thus, here, as in

8    *Twitter*, "enforcement is no rubber stamp." *Twitter*, 56 F.4th at 1176. And as in *Twitter*, "to the

9    extent [a plaintiff] argues that any actions it has taken in response to the CID create an Article

10   III injury,"—as Obria has done here—"those injuries are self-inflicted because the actions were

11   voluntary." *Id.*

12       Notably, Obria's allegations of chilled speech are even less substantial than those found

13   lacking in *Twitter* and *SPU*. Here, Obria allege three things: (1) that Obria PNW has discontinued

14   operating its own website due to fear of reprisal from the AGO; (2) that, because of the AGO's

15   investigation, Obria PNW has ceased making public statements about APR; and (3) that both

16   plaintiffs would prepare a brochure regarding "the safety and efficacy of APR" but for the

17   AGO's investigation. Third Compl. ¶¶ 120-22. Each of these allegations are illusory.

18       First, as Obria admit, Obria PNW has not discontinued its online presence. *Id.* ¶ 121.

19   Rather, like other Obria Group affiliates, Obria PNW now simply relies on Obria Group to host

20   its website needs. *Id.* ¶ 122; Fraas Decl. Ex. C. In practice, this means that Obria PNW is listed

21   among Obria's other clinic locations on a joint website. Choosing to change website hosts

22   cannot, in itself, be an Article III injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 340 (2016)

23   (plaintiff must "clearly…allege facts demonstrating" an injury in fact that is "real," and not

24   "abstract").

25       Nor do Obria allege that *Obria Group* has ceased making public statements about APR.

26   *Id.* ¶¶ 120-23. Indeed, the joint Obria website—which explicitly encompasses Obria PNW—

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

prominently displays APR information, including an APR hotline and FAQ page, addressing topics such as "[o]ur success rate," "[c]osts of treatment," and "possible side effects" of APR. Fraas Decl. Ex. D. Obria PNW's decision to shift statements regarding APR from an Obria PNW website, hosted by Obria PNW, to an Obria PNW website, hosted by the Obria Group, simply does not amount to chilled speech. *See Twitter*, 56 F.4th at 1175 (finding no concrete injury in fact where Twitter "ha[d] not alleged how, exactly, [being forced to 'weigh the consequences' of an ongoing investigation] affect[ed] its speech"). In light of the evidence, Obria's allegation that *Obria PNW* has ceased making public statements about APR becomes, at best, meaningless, and at worst, false and misleading. *See* Fraas Decl. Exs. C-E.

Given Obria's demonstrable continued speech on the purported "safety and efficacy of APR" through Obria Group's website, Obria's allegation that "Plaintiffs would prepare a brochure on the safety and efficacy of APR" but for the AGO's investigation is not credible. Third Compl. ¶ 120. An injury "need not be tangible," but it cannot be "too indefinite" or abstract; it "must actually exist." *Twitter*, 56 F.4th. at 1175 (citation omitted). Here, Obria's allegations amount to changing their website hosting arrangements and failing to print as a brochure statements they make online. This is not evidence of injury or chilled speech.

### b. Obria have not alleged associational harm

Nor do Obria's alleged associational harms from the receipt of CIDs satisfy injury in fact. Obria allege that, because of the "strain" caused by the CIDs, they stopped working with certain vendors. Third Compl. ¶ 152; *see also id.* ¶¶ 121-23 (alleging that Obria PNW canceled certain website-related vendors after moving to an Obria Group-hosted website, allegedly because it feared reprisal from the AGO). These allegations fail. To the extent Obria terminated contracts based on their—or their vendors—receipt of non-self-enforcing CIDs, those injuries "are self-inflicted because the actions were voluntary." *Twitter*, 56 F.4th at 1176.

While Obria purport to blame the AGO for Obria PNW's decision to "reduce[] or eliminate[] its contracts with vendors who provide their website hosting, search engine

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

optimization, and other marketing-related services," Third Compl. ¶¶ 121-23, Obria PNW's digital-consolidation with Obria is touted on Obria Group's website as a means for local clinics to increase their online presence. Specifically, the Obria Group promotes what it terms the "Obria model," which "offers well-established, local resource centers a unified movement to expand their effectiveness in reaching men and women." Fraas Decl. Ex. E. Obria Group explains that "[t]he average local clinic has little to no digital presence, limited websites, no app technology, and limited digital communications," but "[b]y joining the Obria network, local resource centers can benefit from our digital outreach strategy." *Id.* Thus, Obria PNW's attempt to claim its decision to pursue digital consolidation with Obria as an associational injury attributed to the AGO's CIDs is, at best, too abstract to support standing.

Finally, Obria's bald allegation that other "individuals or entities associated with Plaintiffs," may one future day end or limit their association with Obria because of the more than two-year-old CIDs (CIDs with which Obria voluntarily complied) is patently inadequate to establish standing. Third Compl. ¶¶ 149, 153, 165. In her sworn declaration, Obria CEO Janice "River" Sussman submits that one vendor did cease working with Obria PNW after receiving a third-party CID. Dkt. #25-1 at 2-3. However, the vendor did so for a "period of several months" that long-ago ended. *Id.* If anything, the absence of any specific allegation on this issue confirms that it is simply speculation.

### 2.  Obria's Alleged Insurance Rate Increase Was Not Caused by the AGO and Cannot Be Redressed by an Injunction or Declaration Against the AGO

Tacitly acknowledging that their initial allegations fall short of Article III injury, Obria now assert that the independent decision of Obria PNW's undisclosed insurer in March 2024 to increase Obria PNW's rates for an unspecified policy, purportedly based on the AGO's investigation, provides standing. Third Compl. ¶¶ 124-28. It does not. This harm resulted from the independent actions of Obria PNW and its insurer; it is not traceable to the AGO and

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  prospective relief against the AGO cannot redress it.[4] Obria's newest attempt to establish

2  standing fails.

### a.   Obria's alleged insurance injury does not satisfy causation

4  To establish causation, plaintiffs must show an injury "fairly traceable to the challenged

5  action of the defendant, and not the result of the independent action of some third party not

6  before the court." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d

7  738, 748 (9th Cir. 2020) (citation omitted); *Murthy v. Missouri*, 144 S. Ct. 1972, 1992 n.8 (2024)

8  ("The whole purpose of the traceability requirement is to ensure that in fact, the asserted injury

9  was the consequence of the defendants' actions, rather than of the independent action of a third

10  party." (citation omitted)). "[W]here a causal relation between injury and challenged action

11  depends upon the decision of an independent third party…'standing is not precluded, but it is

12  ordinarily substantially more difficult to establish.'" *California v. Texas*, 593 U.S. 659, 675

13  (2021) (quoting *Lujan*, 504 U.S. at 562).

14  For a plaintiff to establish an Article III injury based on the decision-making of a

15  third-party, the plaintiff must generally show that the defendant exerted a "determinative or

16  coercive effect on the third-party conduct that directly cause[d] the injury." *WildEarth*

17  *Guardians v. U.S. Forest Serv.*, 70 F.4th 1212, 1217 (9th Cir. 2023) (citation omitted); *e.g.*,

18  *Williams v. Sisolak*, No. 22-16859, 2024 WL 194180, at *2 (9th Cir. Jan. 18, 2024) ("When

19  plaintiffs raise claims based on government action or inaction, they must sufficiently allege that

20  government defendants' actions exert a determinative or coercive effect on the third-party

21  conduct that directly causes their injury." (cleaned up), *cert. denied sub nom. Williams v.*

22  *Lombardo*, No. 23-1138, 2024 WL 3014535 (U.S. June 17, 2024)); *see also California*, 593 U.S.

23  at 661 ("Where a standing theory rests on speculation about the decision of an independent third

24

25  ───────────────

26  [4] Under the *Ex Parte Young* doctrine, plaintiffs may only sue the AG in his official capacity for prospective injunctive relief related to an ongoing violation of federal law. *See generally Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997).

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC                    12                    ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  party...the plaintiff must show *at the least* 'that third parties will likely react in predictable

2  ways.'" (emphasis added) (citation omitted).

3  Two recent circuit court cases are instructive. In *WildEarth*, environmental organizations

4  sued the U.S. Forest Service, which regulates livestock grazing, after the Washington State

5  Department of Fish and Wildlife exercised its discretion to kill wolves involved in livestock

6  attacks. 70 F.4th at 1214-16. Plaintiffs alleged that the Service had violated various federal

7  environmental statutes by failing to modify grazing management to mitigate wolf-livestock

8  conflicts that resulted in the lethal removal of wolves by the state. *Id.* While Plaintiffs contended

9  that they had standing to sue the Forest Service because the Service's grazing decisions were a

10  "substantial factor motivating" the state's decision to lethally remove wolves, the Ninth Circuit

11  found this theory of causation lacking. *Id.* at 1217-18. Specifically, the Court explained that

12  "[b]ecause the Forest Service does not regulate or participate in lethal removal, we cannot say

13  the agency has a 'determinative or coercive effect' on the harmful conduct of the Department of

14  Fish and Wildlife." *Id.* at 1218 (citation omitted). This was fatal to the plaintiffs' theory of

15  standing. *Id.*

16  This principle is further illustrated by *Turaani v. Wray*, upon which the Ninth Circuit

17  relied in *WildEarth*. *Turaani*, 988 F.3d 313 (6th Cir. 2021); *see also WildEarth*, 70 F.4th at 1217

18  (citing and quoting *Turaani*). In *Turaani*, a potential firearm buyer, Khalid Turaani, brought an

19  action against the FBI after an FBI agent expressed concerns about Turaani to a gun dealer and

20  the gun dealer then subsequently refused to sell a gun to Turaani (telling the plaintiff that he had

21  received a visit from the FBI, and while he could "technically" complete the sale, he was not

22  comfortable doing so). *Id.* at 315. The Sixth Circuit held that these facts were insufficient to

23  establish standing because the FBI's actions did not have a "causal connection" to the plaintiff's

24  injury, explaining that "unless the defendant's actions had a 'determinative or coercive effect'

25  upon the third party, the claimant's quarrel is with the third party, not the defendant." *Id.* at 316

26  (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)). The court explained that the FBI agent's

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   "[p]assing along information" to the gun dealer "is a distant cry from forcing action," and

2   concluded that because the FBI agent did not "compel [the gun dealer's] chosen course of

3   conduct, we are left only with the kind of attenuated causal chain that fails to meet Article III's

4   requirements." *Id.* at 317.

5         Like in *WildEarth* and *Turaani*, Obria's attempt to hold the AGO accountable for the

6   ratemaking decision of Obria PNW's third-party insurer likewise fails. Here, all the AGO is

7   alleged to have done is to issue non-self-enforcing CIDs to investigate potential violations of

8   state law in May 2022 to Obria. The AGO is not alleged to "regulate or participate" in the

9   ratemaking decisions of Obria PNW's insurer. *WildEarth*, 70 F. 4th at 1218. Nor did the AGO

10   "cajole, coerce, [or] command" Obria PNW's insurer's conduct. *Turaani*, 988 F.3d 316. Notably,

11   the AGO is not alleged to have had any contact whatsoever with Obria PNW's insurer. *See* Third

12   Compl. ¶¶ 124-28. And even if the Court assumes for purposes of this motion to dismiss that

13   Obria PNW's insurer required it to pay a higher premium than it would have paid absent the

14   AGO's investigation, that is not enough to establish causation: "the government must do more,

15   say by establishing a 'command' of the third party's actions," and such allegations are wholly

16   lacking here. *Turaani*, 988 F.3d at 317 (citation omitted); *see also WildEarth*, 70 F.4th 1217-18

17   (reviewing cases where plaintiffs established standing to challenge government action even

18   though the injury was inflicted by a third party and finding the government defendant generally

19   either "had authority to regulate the third party" or had "participated in the third party's harmful

20   conduct").

21         Notably, the facts here stand in sharp contrast to cases where a change to a plaintiff's

22   insurance coverage *was* determined to have been commanded by state action. In *Cedar Park*

23   *Assembly of God v. Kreidler*, for example, the Ninth Circuit held that a plaintiff church had

24   standing to bring a Free Exercise claim against the Washington State Insurance Commissioner

25   and Governor based on its inability to obtain insurance that did not include abortion coverage

26   due to enactment of a new statute. 860 F. App'x 542, 543 (9th Cir. 2021) (mem.) (unpublished).

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    In holding that the complaint had plausibly alleged an injury in fact that was "fairly traceable"

2    to the state, the court explained that it was "*due to* the enactment of SB 6219" that plaintiff's

3    health insurer "stopped offering a plan with abortion coverage restrictions." *Id.* at 543 (emphasis

4    added). Thus, Cedar Park had standing to sue the State because its injury was caused by the *state*

5    *law's* direct impact on the actions of its insurer—not an independent decision of its insurer. In

6    *Skyline Wesleyan Church*, the Ninth Circuit likewise held plaintiffs had standing where there

7    was "a direct chain of causation from the [defendant agency]'s *directive requiring* seven insurers

8    to change their coverage, to Skyline's insurer's doing so, to Skyline's losing access to the type

9    of coverage it wanted." 968 F.3d at 748 (emphasis added).

10          Both *Cedar Park* and *Skyline* are examples of "the defendant's actions produc[ing] injury

11    through their determinative or coercive effect upon the action of someone else." *Id.* at 749

12    (citation omitted). Here, by contrast, there are no similar facts. In sum, because the AGO has

13    taken no action to exert a "'determinative or coercive effect'" on Obria PNW's undisclosed

14    insurer, Obria's alleged causal chain is too speculative to satisfy Article III. *WildEarth*, 70 F.4th

15    at 1217 (citation omitted); *see generally Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019)

16    ("[M]ere speculation about the decisions of third parties" does not suffice to establish standing);

17    *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 385 (2024) ("The causation

18    requirement precludes speculative links—that is, where it is not sufficiently predictable how

19    third parties would react to government action or cause downstream injury to plaintiffs.").

20          **b.      Obria's alleged insurance injury is not redressable**

21          For all the reasons that causation fails, redressability fails too. Causation and

22    redressability are often "two sides of the same coin." *Ctr. for Biological Diversity v.*

23    *Export-Import Bank of the U.S.*, 894 F.3d 1005, 1012 n.2 (9th Cir. 2018) (citation omitted). To

24    establish redressability, "plaintiffs must show that the relief they seek is both (1) substantially

25    likely to redress their injuries; and (2) within the district court's power to award." *Juliana v.*

26    *United States*, 947 F.3d 1159, 1170 (9th Cir. 2020). Obria cannot establish redressability given

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   that "[w]hether [Obria PNW]'s claims of economic injury would be redressed by a favorable

2   decision in this case depends on the unfettered choices made by independent actors not before

3   the courts and whose exercise of broad and legitimate discretion the courts cannot presume either

4   to control or to predict." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989). Whether to renew

5   an insurance policy and what rate to charge is undoubtedly within the "broad and legitimate"

6   discretion of its insurer. *Id.* Asking this Court to speculate about how an independent actor may

7   react and exercise its ratemaking discretion in the event that this Court issues an injunction and

8   declaratory relief here is "too uncertain to satisfy the redressability prong of federal standing

9   requirements." *Id.*; *see also Cutler v. U.S. Dep't of Health & Human Servs.*, 797 F.3d 1173, 1184

10  (D.C. Cir. 2015) (holding it was "purely speculative whether an order in this case would alter or

11  affect the non-party insurers' decision" where Plaintiff's canceled insurance policy was "the

12  result of the actions of his private insurer").

13       Obria cannot carry their burden to prove standing.[5]

14  **B.      The Complaint Does Not Plead a Constitutional Violation**

15       Even if this Court considers Obria's claims justiciable (and they are not), Obria fail to

16  plausibly allege that the non-self-enforcing CIDs violated their constitutional rights. Their claims

17  must be dismissed under Fed. R. Civ. P. 12(b)(6) because (i) Obria fail to show the CIDs were

18  substantially motivated by retaliation; (ii) Obria's freedom of association and First Amendment

19  privilege were not implicated; and (iii) the CIDs did not run afoul of the Fourth Amendment.

20       **1.      Obria fail their burden to allege First Amendment retaliation**

21       Obria fail their burden of pleading First Amendment retaliation. *See Boquist v. Courtney*,

22  32 F.4th 764, 778 (9th Cir. 2022). A plaintiff must plausibly plead that (1) they "engaged in

23  _____

24       [5] To the extent Obria seek to prevent the AGO from *ever* investigating them again, even for unrelated
    violations, they seek an advisory opinion that cannot be granted. *See generally Lujan*, 504 U.S. at 560 (injury in
    fact must be actual or imminent, not conjectural or hypothetical); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126
25  (9th Cir. 2009) ("A claim is fit for decision if the issues raised are primarily legal, do not require further factual
    development, and the challenged action is final."). That type of relief is foreclosed by their Complaint, which is
    based on receiving a CID, and where the AGO has not taken further investigative steps. *See Smith & Wesson Brands,
26  Inc. v. Att'y Gen. of N.J.*, 105 F.4th 67, 78 n.9 (3d Cir. 2024) (dismissing argument that "investigation" is distinct
    from "subpoena" because the AG had not taken investigative steps outside of issuing a subpoena).

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC                          16                  ATTORNEY GENERAL OF WASHINGTON
                                                                        Complex Litigation Division
                                                                        800 Fifth Avenue, Suite 2000
                                                                        Seattle, WA 98104-3188
                                                                        (206) 464-7744

constitutionally protected activity"; (2) the defendant's actions would "chill a person of ordinary firmness from continuing to engage in the protected activity"; and (3) the protected activity was a "substantial or motivating factor in [the d]efendant's conduct." *Sampson v. County of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020) (citation omitted). In a quasi-prosecutorial context such as this, courts presume that a prosecutor has legitimate grounds for their actions. *See Hartman v. Moore*, 547 U.S. 250, 263 (2006). Obria have not established a prima facie case.

### a.   A person of ordinary firmness would not be chilled by non-self-enforcing CIDs

Assuming (without conceding) Obria's speech on APR is constitutionally protected, the Complaint must also plausibly allege that a non-self-enforcing CID would "chill a person of ordinary firmness from continuing to engage in the protected activity." *Sampson*, 974 F.3d at 1019. Those facts are lacking here.

As discussed above, Washington has robust procedural protections for CID recipients, so a recipient of ordinary firmness would not be chilled from further speech. *Supra* at 2-3; RCW 19.86.110(8) (CID recipient may seek immediate judicial review of a CID); RCW 19.86.110(9) (only a court may enforce a CID). This is demonstrated by Obria's own conduct, as they have continued to speak about APR over the last two years. *Supra* at 9-10.

Those limited cases where courts have held that a government's investigation constituted retaliation involved much more extreme facts than issuing a CID. *See, e.g.*, *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 868 (9th Cir. 2016) (citations omitted) (discussing cases where government's retaliatory conduct chilled speech by "threatening or causing pecuniary harm"; "withholding a license, right, or benefit"; "prohibiting the solicitation of charitable donations"; "detaining or intercepting mail"; and "conducting covert surveillance of church services"); *White v. Lee*, 227 F.3d 1214, 1222, 1227, 1229 (9th Cir. 2000) (actionable retaliation where government officials demanded plaintiffs cease their speech and litigation efforts, advised them they had broken the law, threatened legal action and exorbitant fines up to $100,000, and

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

claimed in news media that plaintiffs had violated the law). As the *Twitter* district court explained, government-investigation retaliation claims are generally only actionable in cases involving substantial fines, arrest, or loss of child custody. *See Twitter, Inc. v. Paxton*, No. 21-cv-01644-MMC, 2021 WL 1893140, at *4 (N.D. Cal. May 11, 2021) (discussing cases). Obria's allegations are a far cry from those cases. Because the receipt of a non-self-enforcing CID would not chill a person of ordinary firmness, Obria fail to state a retaliation claim.

### b.     Obria's allegations do not establish retaliatory motive

Even if Obria could establish that a non-self-enforcing CID would chill a person of ordinary firmness, Obria fail to plausibly plead that retaliating against their "pro-life messaging" was the "substantial or motivating factor" in the investigation. *See Lacey v. Maricopa County*, 693 F.3d 896, 917 (9th Cir. 2012) (plaintiff must establish "the elements of retaliatory animus as the cause of injury") (quoting *Hartman*, 547 U.S. at 260).

First, Obria's only claimed factual support—AG Ferguson's public statements regarding reproductive rights—does not establish retaliatory motive. *See* Third Compl. ¶¶ 80-100. Attorneys General are elected officials and are not required "to maintain viewpoint-neutrality." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024) (quoting *Matal v. Tam*, 582 U.S. 218, 234 (2017)); *Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 710 n.29 (S.D.N.Y. 2018) ("[a]s public officials the AGs 'have an obligation to speak out about matters of public concern'" and inferring discrimination from those statements "would put elected [AGs] in a straight-jacket relative to their public comments") (citation omitted). AG Ferguson's statements supporting reproductive rights are not evidence of animus.

Second, Obria complain that the AGO's investigation had no "stated evidentiary support." Third Compl. ¶ 136. But the AGO is not required to provide investigation targets with an evidentiary basis; the AGO need only state "the alleged violation" and "the general subject

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

matter" of the investigation. RCW 19.86.110(2)(a).[6] Here, the AGO provided both in the CIDs. *See* Dkt. #4-2 at 2; Dkt. #4-3 at 2. Not providing Obria with more information than is required by state law is not retaliation. Nor is it enough to overcome the presumption that the AG has legitimate grounds to investigate potential CPA violations. *Hartman*, 547 U.S. at 263.

Third, Obria allege that the AG demonstrated retaliatory animus by ignoring "well-established violations by pro-abortion groups." Third Compl. ¶ 136; *id.* ¶¶ 78, 117 (noting "data breaches at Planned Parenthood"). To establish a similarly-situated comparator was treated differently, Obria must show that the "circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1137 (D.C. Cir. 2023); *see also Ballentine v. Tucker*, 28 F.4th 54, 62 (9th Cir. 2022) (establishing a comparator requires objective evidence). Obria identify no comparator that is similarly situated in all relevant respects.

As discussed above, the AGO issued CIDs to Obria to investigate possible "unfair or deceptive acts and practices with respect to the marketing, advertising, and other representations concerning services provided to Washington consumers" as well as "unfair acts or practices related to the collection and use of consumer data." Third Compl. ¶ 103. While Obria allege that Planned Parenthood had "well-publicized incidents of data breaches," *id.* ¶ 117, they do not allege that Planned Parenthood also made potentially unfair or deceptive representations regarding the services they offer patients. This distinction alone could justify a prosecutor making different investigatory decisions with respect to Obria and Planned Parenthood.

As to what a true comparator would look like, *Ballentine* is instructive. There, two different groups "chalked" and "engage[d] in anti-police speech" at the same courthouse and "at the same time," while only one group was arrested. 28 F.4th at 62. Similarly, in *Frederick*

---

[6] As discussed below, the CPA also does not require the AGO to receive a complaint before investigating nor does it require probable cause. *Infra* at 23.

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *Douglass Foundation*, two different groups protested publicly, saying "in one instance that

2    'Black Lives Matter,' and in the other that 'Black Pre-Born Lives Matter,'" and again, only one

3    group was arrested. 82 F.4th at 1138. In both cases, the gathering locations were the same, the

4    events were "proximate in time," police officers were present, and both groups likely violated

5    the same law. *Id.*; *Ballentine*, 28 F.4th at 62. Obria have not satisfied their burden to identify a

6    comparator that is similarly situated in all material respects. Obria's retaliation claim must be

7    dismissed.

8          **2.**      **Obria's freedom of association claims are unsupported**

9          Freedom of expressive association protects the right to "associate for the purpose of

10    engaging in those activities protected by the First Amendment—speech, assembly, petition for

11    the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609,

12    618 (1984). To state a claim, a plaintiff must demonstrate they engage in expressive association

13    "to pursue 'a wide variety of political, religious, cultural, or social purposes.'" *Sullivan v. Univ.*

14    *of Wash.*, 60 F.4th 574, 579 (9th Cir. 2023) (citation omitted). Further, to plausibly allege that

15    this right has been violated through the issuance of a CID, a plaintiff must make a prima facie

16    showing that "enforcement of the subpoenas will result in (1) harassment, membership

17    withdrawal, or discouragement of new members, or (2) other consequences which objectively

18    suggest an impact on, or 'chilling of,' the members' associational rights." *Dole v. Loc. Union*

19    *375, Plumbers Int'l Union of Am., AFL-CIO*, 921 F.2d 969, 971 (9th Cir. 1990) (quoting *Brock*

20    *v. Loc. 375, Plumbers Int'l Union of Am., AFL-CIO*, 860 F.2d 346, 350 (9th Cir. 1988)). Obria

21    has failed to do so here.

22          As a threshold matter, Obria's claim is defective at the outset because they are not facing

23    CID *enforcement*. *Cf. Brock*, 860 F.2d at 348 (petition to enforce subpoena); *Dole*, 921 F.2d at

24    971 (action to enforce subpoenas). These cases are inapposite here where the AGO is not and

25    has never sought to enforce the CIDs.

26

DEFENDANT'S MOTION TO DISMISS          20          ATTORNEY GENERAL OF WASHINGTON
THIRD SUPPLEMENTAL COMPLAINT                 Complex Litigation Division
NO. 3:23-cv-06093-TMC                        800 Fifth Avenue, Suite 2000
                                      Seattle, WA 98104-3188
                                      (206) 464-7744

Instead, the only facts alleged to support Obria's claim relate to three of Obria PNW's business vendors. Third Compl. ¶ 123. According to Obria, (i) certain business vendors "identified in Plaintiffs' responses to the CIDs have received CIDs" from the AGO, *id.* ¶ 148; (ii) those vendors "attribute[d] the burden of responding to their own CIDs to their prior association with Plaintiffs," *id.* ¶ 151; and (iii) "Plaintiffs have diminished the work they do with these organizations because of the strain caused by Defendant's CIDs," *id.* ¶ 152. These facts fail to state a claim for two reasons.

First, business associations, without any goal to join together to express shared beliefs, do not engage in expressive association subject to First Amendment protection. *Sullivan*, 60 F.4th at 580; *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1194 (9th Cir. 1988) (The First Amendment "does not protect every communication or every association"). While Obria allege expressive association with people of "like-minded beliefs, including those on staff and volunteers" and even with "pregnant women and the fathers of their babies," Third Compl. ¶¶ 142, 145, the Complaint does *not* allege expressive association with their vendors or their insurers. *Id.* ¶¶ 150-154. Without expressive association, there is no First Amendment violation.

Second, and as discussed above, the supposed "chill" that Obria allege from the third-party CIDs is speculative, at best. *Supra* at 7-10. Obria do not even allege that Obria PNW's business vendors stopped working with it from third-party CIDs; rather they allege that "*Plaintiffs* have not used the services of certain of those organizations since." Third Compl. ¶ 113 (emphasis added). Notwithstanding that nearly two years have passed since the AGO served CIDs, *see* Dkt. #4-10, the Third Complaint is wholly devoid of "objective and articulable facts, which go beyond broad allegations or subjective fears." *Dole*, 921 F.2d at 972 (quoting *Brock*, 860 F.2d at 350 n.1). For this reason as well, this claim fails.

At bottom, Obria's voluntary decisions to end or curtail business relationships are insufficient to suggest the AGO violated Obria's freedom of association. Because "[t]he lack of

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    evidence of a constitutional violation" ends the inquiry, *see Dole*, 921 F.2d at 974, this claim

2    should be dismissed.[7]

3        **3.    Obria's First Amendment privilege claim is similarly deficient**

4        Obria's First Amendment privilege claim also fails, because Obria must first show their

5    freedom of association right was violated. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th

6    Cir. 2010). For all of the reasons discussed above, Obria have not met their burden. *Supra* at 20-

7    21. Further, this claim fails as the AGO has not and is not seeking to enforce the two-year-old

8    CIDs.

9        **4.    Obria's Fourth Amendment claim fails for multiple reasons**

10       Obria's Fourth Amendment claim should likewise be dismissed. In the context of an

11   administrative subpoena, "the Fourth Amendment's restrictions are limited.'" *Reich v. Mont.*

12   *Sulphur & Chem. Co.*, 32 F.3d 440, 444-45 (9th Cir. 1994) (citations omitted). A CID comports

13   with the Fourth Amendment where: (1) "the inquiry is within the authority of the agency," (2)

14   "the demand is not too indefinite," and (3) "the information sought is reasonably relevant."

15   *Morton Salt Co.*, 338 U.S. at 652; *see also Steele v. Washington ex rel. Gorton*, 537 P.2d 782,

16   788 (Wash. 1975) (en banc). Obria raise several arguments to claim that the CIDs violate the

17   Fourth Amendment, all of which fail.

18       *First*, this claim fails because the AGO is not seeking enforcement of the CIDs, nor has

19   Obria availed themselves of the procedural protections provided by state law. In a CID

20   enforcement action, "the Fourth Amendment is available to the challenger as a defense," *United*

21   *States v. Sturm, Ruger & Co.*, 84 F.3d 1, 3 (1st Cir. 1996), and a CID recipient may also seek

22   judicial review if it believes the AGO has "arbitrarily serve[d] a [CID]." *Steele*, 537 P.2d at 788-

23   89; RCW 19.86.110(8). Given Obria's ample opportunities to obtain judicial review of the

24

25

26       ---
         [7] To the extent that Obria allege a general fear among their members that they might one day receive a
         CID, that is not the type of "adverse consequence" required for a First Amendment claim. *Dole*, 921 F.2d at 972.

CIDs—which they chose not to invoke, even after being given additional time by the AGO to do so—their claim of a Fourth Amendment violation falls flat.

*Second*, Obria contend that the CIDs were not "based on a complaint or any reason to suspect that Plaintiffs have information relating to a violation" of the CPA. Third Compl. ¶ 172. But the CPA does not require the AGO to receive a complaint before opening an investigation. *See generally* RCW 19.86 (AG may "restrain prohibited acts" regardless of receiving a consumer complaint); *see also Reich*, 32 F.3d at 444-45 (discussing broad agency investigatory power). Further, the Washington Supreme Court has made clear that probable cause is not required to send a non-self-enforcing CID under the CPA. *See Steele*, 537 P.2d at 788-89.

*Third*, Obria argue that the CPA does not apply to them because "they are not engaged in relevant trade or commerce." Third Compl. ¶ 176.[8] This is a legal allegation that is simply wrong: Obria admit that they "bill health plans for reimbursable services when available." Third Compl. ¶ 65. This is trade or commerce—there is no privity requirement in the CPA. *See* RCW 19.86.010(2). The AGO was within its statutory authority to issue CIDs. *See* RCW 19.86.110(1); *Steele*, 537 P.2d at 788 ("[T]here is no question but that RCW 19.86.080 and RCW 19.86.110(1) accord to the [AG] power to investigate possible unfair or deceptive practices.").

*Fourth*, Obria contend that the CIDs exceeded the AG's authority because they sought documents beyond the statute of limitations. Third Compl. ¶ 174. There is no statute of limitations for CPA actions brought by the State. *See* RCW 4.16.160.

*Fifth*, Obria allege that the CID interrogatories and requests for production "have no rational relation" to the AGO's investigation, are "not particular," and are overbroad and overlong. Third Compl. ¶¶ 173, 179-80. Not so. The CIDs are sufficiently definite as they do not include a "general or undis-criminating [sic] request for all business records" but rather specify

---

[8] Obria also allege that because they do not provide APR, the CPA does not apply to their statements about the service. Third Compl. ¶ 176. But Obria advertise APR on their website, so this assertion falls flat, particularly in the investigatory context.

DEFENDANT'S MOTION TO DISMISS
THIRD SUPPLEMENTAL COMPLAINT
NO. 3:23-cv-06093-TMC

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    the types of records and information sought "with reasonable clarity." *Steele*, 537 P.2d at 788.

2    The information sought was reasonably relevant to the AGO's investigation of potentially unfair

3    and deceptive acts and practices. Indeed, the CIDs were sufficiently specific to allow Obria to

4    respond to them, and Obria have not plausibly alleged otherwise. *See Benavidez*, 993 F.3d at

5    1145 ("conclusory allegations of law…are insufficient to defeat a motion to dismiss").

6         Accordingly, Obria's Fourth Amendment argument fails.

7                                    **V.     CONCLUSION**

8         For the foregoing reasons, the Attorney General's motion to dismiss should be granted.

9         DATED this 22nd day of July 2024.

10                                       ROBERT W. FERGUSON
                                         Attorney General
11
                                         *s/ Lauryn K. Fraas*
12                                       LAURYN K. FRAAS, WSBA #53238
                                         KENDALL SCOTT COWLES, WSBA #57919
13                                       ALEXIA DIORIO, WSBA #57280
                                         ERIC S. NEWMAN, WSBA #31521
14                                       Assistant Attorneys General
                                         800 Fifth Avenue, Suite 2000
15                                       Seattle, WA 98104-3188
                                         (206) 464-7744
16                                       Lauryn.Fraas@atg.wa.gov
17                                       Kendall.ScottCowles@atg.wa.gov
                                         Alexia.Diorio@atg.wa.gov
18                                       Eric.Newman@atg.wa.gov
19                                       *Attorneys for Defendant*

20                                       I certify that this memorandum contains 8,284
                                         words, in compliance with Dkt. #42.
21

22

23

24

25

26